1
2
3
4
5

Linda Bondi Morrison, Esq., SBN 210264
TRESSLER LLP
2 Park Plaza, Suite 1050
Irvine, California 92614
Telephone:  (949) 336-1200
Facsimile:  (949) 752-0645
E-Mail:      lmorrison@tresslerllp.com

6
7

Attorneys for Plaintiff CLEAR BLUE SPECIALTY INSURANCE COMPANY

8
9
10
11

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

12
13
14
15
16
17
18
19
20
21
22

| | |
|---|---|
| CLEAR BLUE SPECIALTY INSURANCE COMPANY,<br><br>                    Plaintiff,<br><br>        v.<br><br>OZY MEDIA, INC., SAMIR RAO, CARLOS WATSON, MARC LASRY, and LIFELINE LEGACY HOLDINGS, LLC,<br><br>                    Defendant. | Case No. 5:21-cv-8764<br><br>**CLEAR BLUE SPECIALTY INSURANCE COMPANY'S COMPLAINT FOR RESCISSION, DECLARATORY RELIEF, AND INTERPLEADER** |

23
24
25
26
27

        Plaintiff Clear Blue Specialty Insurance Company ("Clear Blue"), by and through its undersigned counsel, hereby files its Complaint for Rescission and Declaratory Relief against Defendants Ozy Media, Inc. ("Ozy"), Samir Rao, Carlos Watson, Marc Lasry, and LifeLine Legacy Holdings, LLC ("LifeLine"), and states as follows:

28

1

**INTRODUCTION**

1.      Clear Blue brings this action for a declaration that the insurance policy numbered AX01-3274-01 ("the Policy") issued by Clear Blue to Ozy is rescinded or otherwise void *ab intio*.  Alternatively, Clear Blue seeks a declaration that Clear Blue owes no duty to reimburse the costs of defense or indemnify Defendants Ozy, Rao, Watson, and/or Lasry under the Policy.  Alternatively, to the extent the Court finds Clear Blue is not entitled to a declaration that (i) the Policy is rescinded or otherwise void *ab initio* or (ii)  that Clear Blue does have such a duty to reimburse defense costs or indemnify the insureds, Clear Blue requests the Court to order the applicable policy limits to be deposited into the Court and for the Defendants to interplead and litigate their respective rights to such  insurance funds and to release Clear Blue from any further liabilities or obligations under the Policy.

**PARTIES**

2.      Clear Blue is an insurance company domiciled, organized and existing under the laws of the State of North Carolina with its principal place of business in Charlotte, North Carolina.

3.      Ozy is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of California.

4.      Upon information and belief, Samir Rao is a citizen of the State of California.

5.      Upon information and belief, Carlos Watson is a citizen of the State of California.

6.      Upon information and belief, Marc Lasry is a citizen of the State of New York.

7.      LifeLine is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in the State of California. Upon information and belief, LifeLine's sole member is LifeLine Family Heritage Fund Management, LLC ("LifeLine Family"), a limited liability company

2

organized under the laws of the State of Delaware with its principal place of business in the State of California. Upon information and belief, LifeLine Family's sole member is LifeLine Holdings, Inc., a corporation organized and existing under the laws of the State of California with its principal place of business in the State of California.

8.     LifeLine instituted the lawsuit from which this action in part arises against Clear Blue's putative insureds, pending in the United States District Court for the Northern District of California, titled *LifeLine Legacy Holdings, LLC v. Ozy Media and Samir Rao,* Case No. 5:21-cv-7751 (the "LifeLine Litigation"). LifeLine may be affected by the relief sought in this declaratory relief action, and on that basis, Clear Blue has named it as a necessary party.

9.     To the extent additional entities or individuals seek coverage under the Policy, Clear Blue reserves the right to add them as defendants or interpleader defendants at a later date.

## **JURISDICTION**

10.     Clear Blue files this action in the United States District Court for the Northern District of California on the basis of diversity of citizenship.

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C §1332(a)(1) because there is complete diversity between Clear Blue and the Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12.     Clear Blue files this action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202 and Federal Rule of Civil Procedure 57, to resolve an actual controversy between Clear Blue and the Defendants as to whether the policy issued by Clear Blue to Ozy was *void ab initio* or should be otherwise rescinded, and whether Clear Blue owes a duty to defend and indemnify Defendants with respect to a lawsuit filed by LifeLine and certain governmental investigations concerning Ozy and Rao.

13.     Clear Blue also maintains this action for Interpleader under 28 U.S.C. § 1355 and/or Federal Rule of Civil Procedure 22 which permit stakeholders such as Clear Blue to join in a lawsuit claimants that may expose it to double or multiple liability and require them to interplead.

14.      Fed. R. Civ. Pro. 22(a)(1) provides, in part: "Joinder for interpleader is proper even though: (A) the claims of the several claimants, or the titles on which their claims depend, lack a common origin or are adverse and independent rather than identical; or (B) the plaintiff denies liability in whole or in part to any or all of the claimants."

**VENUE**

15.     Venue is proper in the United States District Court for the Northern District of California under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated in this district, as Ozy's principal place of business is located in the Northern District of California.

**DIVISIONAL ASSIGNMENT**

16.     Pursuant to Civil L.R. 3-2, this action should be assigned to the San Jose Division as a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated in Santa Clara County, as Ozy's principal place of business is located in Mountain View, California.

**GENERAL FACTUAL ALLEGATIONS**

17.     On or about February 2, 2021, Ozy's Chief Executive Officer, Carlos Watson, participated in a conference call with representatives of Goldman Sachs and a person purporting to be a YouTube executive who reported on Ozy's success on the YouTube platform and YouTube's support of Ozy's leadership, which discussion was done to support Ozy's pursuit of financial investment from Goldman Sachs.

18.     Watson later acknowledged that the individual fraudulently purporting to be the YouTube Executive was Ozy's Chief Operating Officer, Samir Rao.  Both Watson and Rao knew during such conference call that the impersonation was deceptive and fraudulent.

19.     Once Goldman Sachs became aware of Rao's deception, it declined to invest in Ozy.

20.     Upon information and belief, various governmental agencies thereafter began investigations into Ozy's and Rao's actions.

21.     After the February 2, 2021 conference call, Ozy, Watson, and Rao continued to seek new investment and successfully located new investment funds from LifeLine and other investors, which included executed Series C Stock Purchase Agreements and Series D Stock Purchase Agreements with such.

22.     Upon information and belief, Ozy, Watson, and Rao failed to disclose either Rao's fraudulent deception of Goldman Sachs or the subsequent government investigations to prospective investors.

23.     On or about September 25, 2021, the New York Times published an article disclosing details of the Goldman Sachs conference call.

### Ozy's Application For Coverage

24.     On or about August 5, 2021, well after the February Goldman Sachs call, Ozy, through wholesale insurance broker CRC and retail insurance broker Newfront/ABD, submitted an application for insurance to Clear Blue's Managing General Agent, Embroker Insurance Services LLC ("Embroker"), seeking a Directors & Officers ("D&O"), Employment Practices Liability, and Fiduciary Liability policy to replace an expiring policy issued by QBE Insurance.

25.     In support of its application for insurance with Clear Blue, Ozy submitted to Clear a copy of the insurance renewal application Ozy had submitted to QBE - titled "The Solution" Renewal Application dated August 3, 2021 (the "Renewal Application").

26.     The Renewal Application was signed by Rao and submitted by Ozy's Chief of Staff, Suzee Han.

27.     The Renewal Application contains financial statement information from the current and prior year including current assets, total assets, current liabilities, total liabilities, revenue, net income, and cash flow from operations.

28.     The Renewal Application contains a "Material Change" Section that reads:

> If there is any material change in the answers to the questions in this Application before the policy inception date, the applicant must immediately notify the Insurer in writing, and any outstanding quotation may be modified or withdrawn.

29.     The Renewal Application contains the following "Fraud Warning" applicable to California residents:

> Notice to California residents: "For your protection California law requires the following to appear on this form. *Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison*."

30.     The Renewal Application requires the following attachments for Directors and Officers Liability coverage:

      a.     Most recent annual financial report with notes

      b.     Interim financial statements

      c.     List of all subsidiaries including: nature of operations, percentage ownership, and whether such subsidiaries are foreign or domestic

      d.     List of Directors with corporate affiliations

31.     In addition to the Renewal Application, Ozy submitted a "Management Liability Application" to Embroker acting as Clear Blue's insurance agency (the "Embroker Application").  A copy of the Embroker Application is attached as Exhibit "A".

32.     The Embroker Application was signed on September 1, 2021, by Rao.

33.     In the "Company Profile" Section of the Embroker Application, the 2020 total revenue and 2021 total revenue Ozy reported was materially different than its actual revenues for those years.

34.     Under the Section of the Embroker Application entitled "Your Business," Ozy reported the total amount of funding raised to date (including debt) that was materially different than the amount actually raised.

35.     In the Embroker Application, Ozy identified three separate investment fund-raising rounds that did not reflect the amounts actually raised.

36.     The Section of the Embroker Application entitled "Past Litigation" asks "Has your company or any person proposed for coverage been the subject of or been involved in any of the following during the past 3 years?":

      a.     Anti-trust litigation.

      b.     Civil, criminal or administrative proceeding alleging violation of any federal or state securities laws.

      c.     Initiated a bankruptcy or anticipates going bankrupt in the next year.

37.     Ozy answered "No" to each of these questions in the Embroker Application.

38.     The Embroker Application contains the following "Fraud Prevention – General Warning" provision, in part:

> The undersigned authorized agents of the person(s) and entity(ies) proposed for this insurance declare that to the best of their knowledge and belief, after reasonable inquiry, the statements made in this Application and in any attachments or other documents submitted with this Application are true and complete. The undersigned agree that this Application and such attachments and other documents shall be the basis of the insurance policy should a policy providing the requested coverage be issued; that all such materials shall be deemed to be attached to and shall form a part of any such policy; and that the Company will have relied on all such materials in issuing any such policy.

39.     The Embroker Application contains the following "Warranty: Prior Knowledge of Facts, Circumstances, or Situations" provision, in part:

> The undersigned authorized owner, partner, director, or officer represents and warrants on behalf of the Named Insured and all persons/ entities for whom insurance is being sought that to the best of his/her knowledge and belief after diligent inquiry, the statements set forth herein and attached hereto are true. It is understood that the statements in this Application, including material submitted to or obtained by the underwriter, are material to the acceptance of the risk and relied upon by the underwriter. **The Insureds further agree that in the event of any material misrepresentation or omission in the Application, including materials submitted to or obtained by the underwriter, this Policy <u>shall</u> <u>be</u> <u>voided</u>.**
>
> **Any fact, circumstance or situation not disclosed above shall be excluded from coverage.** The undersigned agrees that if the information supplied on this Application changes between the date of this Application and the effective date or the insurance; that he/she will immediately notify the Insurer of such changes, and the Insurer may withdraw or modify any outstanding quotations or authorizations or agreements to bind the insurance.  (Emphasis added.)

40.     On August 27, 2021, based on the Embroker Application and information provided with the Renewal Application as underwritten by Embroker, Clear Blue issued its quote for D&O insurance coverage to Ozy (the "Quote").

41.     The Quote contains the following proviso:

> This indication of terms and conditions for coverage is subject to modification or withdrawal if Embroker or any of its representatives becomes aware of any new, corrected or updated information relating to any Claim or other risk exposure which may affect or change the underwriting evaluation of any proposed Insured and Embroker in their sole discretion, determines that the terms of this indication of terms and conditions for coverage are no longer appropriate.

### The Policy

42.     Clear Blue issued an "Embroker Growth Package" Policy providing directors and officers coverage to Ozy, effective from August 25, 2021, to August

8

25, 2021, policy number AX01-3274-01 (the "Policy"). A true and correct copy of the Policy is attached hereto as Exhibit "B" and incorporated by reference.

43.     The Policy contains the following relevant policy language:

*In consideration of the payment of the premium and in reliance upon the statements made and information furnished to us in the **Application**, and subject to all of the terms and conditions of this Policy (including all endorsements attached hereto), we and you agree as follows:*

***

*II. Definitions*

*A.  "**Application**" means all written materials and information, including signed applications and any information attached thereto, incorporated therein, submitted, or made available by or on behalf of you to us in connection with underwriting of this Policy. The **Application** is deemed attached to and incorporated into this Policy.*

***

*VIII.     Defense of Claims*

   *A. Duty to Defend*

      *1. We do not assume any duty to defend. It is Your duty to defend any claim.*

      *2. You have the right to tender the defense of the **Claim** to Us, which shall be exercised in writing by you on behalf of all **Insureds** to Us at the time notice of a **Claim** is first provided pursuant to the "**Claim** and Potential **Claim** Notices" section of this Policy. This right shall terminate if not exercised within forty-five (45) days of the date the **Claim** is first made against the **Insured**.*

      *3. Further, from the date the **Claim** is first made against You to the date when We accept the tender of the defense of such **Claim**, You shall take no action, or fail to take any required action, that prejudices any of the*

*Insured's or Our rights with respect to such **Claim**. The assumption of the defense of the **Claim** shall be effective upon written confirmation sent thereof by Us to You. Once the defense has been tendered, You shall have the right to effectively associate with Us in the defense and negotiation of any settlement of a **Claim**; provided however, We shall not be obligated to defend such **Claim** after the Policy Limit of Liability or any applicable Coverage Part Limit of Liability has been exhausted.*

4. *If You do not tender the defense, then it shall be Your duty and not Our duty to defend the **Claim** covered under such **Coverage Part**.*

*** 

## XIV. Application

*You represent and acknowledge that the statements and information contained in the **Application** are true, accurate, and complete, and are the basis of this Policy and are to be considered incorporated into and constituting a part of this policy.*

*This Policy is issued in reliance upon the truth and accuracy of the **Application**.*

*If the **Application** contains misrepresentations or omissions that materially affect the acceptance of the risk or the hazard assumed by Us, this Policy shall be void ab initio and shall not afford coverage for any Insured who knew on the inception date of this Policy the facts that were not truthfully disclosed in the **Application**, whether or not the Insured knew the **Application** contained such misrepresentation or omission.*

*For the purpose of determining coverage, knowledge possessed by:*

1. *Any **Team Member** shall not be imputed to any other **Team Member**; and*
2. *The **Insured Organization's** Chief Executive Officer, functionally equivalent, or anyone signing the **Application** shall be imputed to all **Insureds** other than **Team Members**.*

***

## XVII. Rescission

We shall not have the right to rescind this Policy or any Coverage Part for any reason other than as set forth in Section XIV above.

***

## XXIV. Determination of Jurisdiction for Punitive Damage Awards

The insurability of such punitive, exemplary or multiple damages, civil penalties shall be determined under the internal laws of any applicable jurisdiction most favorable to the **Insured**, including without limitation the jurisdiction in which we, the Insured, this Policy or such Claim is located. With respect to:

1. Judgments in which punitive, exemplary or multiplied damages are awarded;

2. Fines, penalties or taxes incurred by **Team Members** under Section 2(g) 2(B) of the Foreign Corrupt Practices Act, as amended and Section 308 of the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7246(a)); or

3. Any amounts which may be considered uninsurable under the law pursuant to which this Policy is construed, coverage provided by this Policy shall be determined under the internal laws of any applicable jurisdiction most favorable to the Insured, including without limitation the jurisdiction in which the Company, the Insured, this Policy or such **Claim** is located or has a substantial relationship.

***

## I. Insuring Agreements

## A. Non-Indemnifiable Directors & Officers Liability

We will pay **Non-Indemnifiable Loss** on behalf of the **Insured** resulting from a **Claim** first made against the **Insured** during the **Policy Period** or any

11

*applicable Extended Reporting Period and reported to Us pursuant to the terms of this **Policy**, for a **Wrongful Act** by the **Insured**.*

B. ***Indemnifiable Directors & Officers***

*We will pay **Loss** on behalf of the **Insured** that such **Insured** has indemnified the **Team Members** resulting from a **Claim** first made against the **Team Members** during the **Policy Period** or any applicable Extended Reporting Period and reported to Us pursuant to the terms of this Policy, for a **Wrongful Act** by the **Team Members**.*

C. ***Entity Liability***

*We will pay **Loss** on behalf of the **Insured** resulting from a **Claim** first made against such **Insured** during the **Policy Period** or any applicable Extended Reporting Period and reported to Us pursuant to the terms of this Policy, for a **Wrongful Act**.*

***

**II. Definitions**

A. *"**Claim**" means any:*

    *1. Written demand against the **Insured** for monetary damages or non-monetary or injunctive relief, including a written request to toll or waive a statute of limitations or engage in any alternative dispute resolution*

    *2. Notice of violation, notice of charges, indictment, arrest, or extradition warrant summons, civil or criminal complaint, demand for arbitration, request for injunction, order to show cause, or other similar pleading or charging document*

    *3. Administrative, regulatory or criminal proceeding commenced by the return of an indictment, information or similar pleading;*

    *4. Regarding Insuring Agreements A and B, **Inquiry** against a **Team Member** commenced by such **Team Member's** receipt of such **Inquiry** (regardless of whether the law enforcement or government investigative authority*

*conducting such **Inquiry** has identified the **Wrongful Act** being investigated);*

5. *Civil, criminal, administrative or regulatory investigation of an **Insured** by a government or regulatory authority or agency, which is commenced by the filing or issuance of a notice of charges, target letter, Wells Notice, an **Insured's** receipt of a subpoena, formal investigative order, civil investigative demand, search warrant or other similar request or document identifying such **Insured** as a person or entity against whom a proceeding described in (2) or (3) above may be brought; or*

6. *Solely for purposes of Insuring Agreement D, any **Derivative Demand**.*

\*\*\*

E. *"**Defense Costs**" means that part of **Loss** consisting of expenses, including attorneys' fees and experts' fees, incurred in the investigation, defense or appeal of a **Claim**. **Defense Costs** include the premium for any appeal, attachment or similar bond, provided that we have no obligation to issue such bond.*

*   **Defense Costs** does not include any compensation, benefit expenses, or any of the **Insured's** overhead.*

*   Regarding any **Claim** that is an **Inquiry**, **Defense Costs** means **Inquiry Costs** only.|*

\*\*\*

K. *"**Inquiry**" means:*

1. *A civil, criminal, administrative, or regulatory investigation or Inquiry of a **Team Member** commenced by the **Team Member's** receipt of a subpoena, Wells Notice, target letter (within the meaning of Title 9, §11.151 of the U.S. Attorney's Manual), formal order of investigation, civil investigative demand, notice of charges, order to show cause, search warrant, S.E.C.*

*Form 1661 or 1662, or other similar document, or the functional or foreign equivalent thereof;*

2. *A written request or demand of a **Team Member** by a **Regulatory Body** for an interview, meeting, sworn testimony or documents in connection with the business of the **Insured Organization**, or in connection with such **Team Member** in his or her capacity as such;*

3. *A written request or demand of a **Team Member** by the **Insured Organization** (including its board of directors or any committee of its board of directors) for an interview, meeting, sworn testimony or documents in connection with: (a) a **Derivative Demand**, or (b) an investigation of the **Insured Organization** by a **Regulatory Body**.*

***Inquiry** does not include any routine or regularly scheduled regulatory or internal supervision, inspection, compliance, review, examination, production or audit, industry sweep, including any request for mandatory information from a **Regulatory Body**, conducted in a **Insured Organization's** and/or **Regulatory Body's** normal review or compliance process or any subpoena received by You as a nonparty witness.*

L. *"**Inquiry Costs**" means reasonable costs, charges, fees and expenses incurred by a **Team Member** in connection with the preparation for or response to an **Inquiry**. **Inquiry Costs** does not include any:*

1. *Compensation or benefits of any **Team Member**; or*

2. *Costs of complying with any formal or informal discovery request or production request seeking documents, records or electronic information that are in our possession or any third-party.*

M. *"**Insured**" means:*

1. *With respect to Insuring Agreement A and E, **Team Members**.*

2. *With respect to all other Insuring Agreements B, C, D, and F, the **Insured Organization**.*

N. *"Loss"* means the amount that an **Insured** *is legally obligated to pay resulting from a* **Claim**, *including damages, settlements, judgments, pre- and post-judgment interest,* **Defense Costs**, *and* **Investigation Costs**.

*Loss also specifically includes:*

1. *Any reasonable fees and expenses of any attorney representing any party who has brought a* **Claim** *against the* **Insured** *where such fees and expenses are awarded pursuant to a covered judgment against the* **Insured** *or a covered settlement (consented to by us, which consent shall not be unreasonably withheld or denied) to which you are a party;*

2. *Regarding Insuring Agreement A, damages under Section of the Securities Exchange Act of 1934, as amended; and*

3. *Civil fines or civil penalties incurred by* **Team Members** *under Section 2(g) 2(B) of the Foreign Corrupt Practices Act, as amended and Section 308 of the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7246(a)).*

*Loss, other than* **Defense Costs**, *does not include:*

a) *Fines, penalties and taxes, other than those set described in Subsection 3. of this Definition;*

...

d) *Costs incurred by the* **Insured** *to comply with an order for non-monetary relief, including declaratory and injunctive relief, or with any agreement to provide such relief; or e) Any amount which is uninsurable under the law pursuant to which this Policy is construed; provided that we will not assert that the portion of any settlement or judgment in a* **Claim** *arising from an initial or subsequent public offering of your securities constitutes uninsurable* **Loss** *due to the alleged violations of Sections 11 or 12 of the Securities Act of 1933 as amended (including alleged violations of Sections 11 or 12 of the Securities Act of 1933 by a* **Controlling Person** *pursuant to Section 15 of the Securities Act of 1933).*

CLEAR BLUE SPECIALTY INSURANCE COMPANY'S
COMPLAINT FOR RESCISSION, DECLARATORY RELIEF, AND INTERPLEADER

O. *"**Non-Indemnifiable Loss**" means any **Loss** incurred by **Team Members** that the **Insured Organization** has not indemnified.*

*\*\*\**

S. *"**Team Member**" means any:*

1. ***Executive**; or*
2. *Employee.*

T. *"**Wrongful Act**" means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty by:*

1. *A **Team Member** in their capacity as such or in an **Outside Capacity**;*
2. *A Team Member in their capacity as a **Controlling Person** or as a **Selling Shareholder**;*
3. *With respect to Insuring Agreement C, the **Insured Organization**; or*
4. *Any matter Claimed against a **Team Member** solely by reason of their serving in such capacity, including service in an **Outside Capacity**.*

*\*\*\**

**IV. Exclusions**

*For the purpose of determining the applicability of any Exclusion set forth in this Exclusions Section, the **Wrongful Act** or knowledge of any **Team Member** shall not be imputed to any other **Team Member**, and only the **Wrongful Act** or knowledge of the **Chief Executive Officer** or functionally equivalent of the **Insured Organization** shall be imputed to the **Insured Organization**.*

*We shall not be liable under this **Coverage Part** to pay any Loss on account of that portion of any **Claim** made against You:*

**B. Prior Notice**

*Based upon, arising out of, or attributable to any fact, circumstance, or **Wrongful Act** that, before the inception date of this Policy, was the subject of any notice given and accepted under any prior directors and officers liability or comparable insurance Policy;*

16

### D. Contractual Liability

*Based upon, arising out of, or attributable to any actual or alleged liability of the **Insured Organization** under any written contract or agreement, except to the extent that the **Insured Organization** would have been liable in the absence of such contract or agreement; provided however, that this exclusion shall not apply to any such **Claim** brought or maintained, directly or indirectly, by one or more securities holders of the **Insured Organization** in their capacity as such, shall not be attributable to any breach of contract or agreement specifying the terms of the **Insured Organization's** engagement of an **Independent Contractor** and shall be applicable only to Insuring Agreement C.*

### H. Personal Profit & Illegal Conduct

*For any personal profit, remuneration, or financial advantage to which You are not legally entitled; or For any willful violation of any law, statute or regulation, or any deliberately fraudulent or criminal act, error, or omission committed by You; If evidenced by a final and non-appealable adjudication adverse to You in the underlying action.*

*For the purpose of applying these Personal Profit & Illegal Conduct exclusions:*

*1. the **Wrongful Act**, knowledge of, or facts pertaining to any **Team Member** shall not be imputed to any other **Team Member**; and*

*2. only the **Wrongful Act** by the **Chief Executive Officer** or functionally equivalent of any **Insured Organization** shall be imputed to an **Insured Organization**.*

44.     The Policy provides a $1 million coverage limit for each of the following Insuring Agreements: A. Non-Indemnifiable Directors & Officers Liability Coverage, B. Indemnifiable Directors & Officers Coverage, C. Entity

1  Liability Coverage, subject to a $25,000 per claim retention under Coverages B and
2  C.

3  ### *LIFELINE* LITIGATION AND GOVERNMENT INVESTIGATIONS

4      45.    On October 4, 2021, LifeLine filed a complaint against Ozy and Rao in
5  the LifeLine Litigation alleging violations of federal securities laws, violation of the
6  California Corporations Code, and fraud by concealment arising out of the failure of
7  Ozy and Rao to disclose material information while seeking investment from
8  LifeLine.

9      46.    The LifeLine Complaint alleges that at the time LifeLine entered into
10  its stock purchase agreements for its investment in Ozy, Ozy and Rao "were fully
11  aware that only a short time prior thereto, Defendant Rao engaged in unlawful and,
12  more specifically, fraudulent conduct and that Goldman Sachs had discovered the
13  impersonation and, as a result refused to proceed with its investment in the company
14  and that governmental agency investigations of the company's and Rao's actions
15  had been initiated." LifeLine Complaint, ¶ 21.

16      47.    The LifeLine Complaint seeks rescission of the stock purchase
17  agreements, the return of its $2.25 million investment, compensatory damages,
18  reasonable attorneys' fees, pre-judgment interest, expert fees, court costs, and
19  punitive damages.

20      48.    In addition to the LifeLine Complaint, Ozy and Rao have also been
21  served with subpoenas for documents from the Securities and Exchange
22  Commission in its investigation of Ozy's and Rao's conduct.

23      49.    Ozy and Rao have additionally been served with subpoenas to appear
24  before a federal grand jury in connection with their actions in these matters.

25      50.    On or about October 20, 2021, Ozy and Rao provided Clear Blue with
26  notice of the claims asserted in the LifeLine Complaint and the investigative
27  subpoenas and sought coverage under the Policy.

28  / / /

CLEAR BLUE SPECIALTY INSURANCE COMPANY'S
COMPLAINT FOR RESCISSION, DECLARATORY RELIEF, AND INTERPLEADER

51.     On October 7, 2021, attorneys for Ozy's former Chairman of its Board of Directors, Marc Lasry, sought coverage under the Policy for his individual defense costs incurred for his participation in the governmental investigations into Ozy.

## CLEAR BLUE'S RESCISSION NOTICE

52.     By letter dated October 6, 2021, based on the facts and information in its possession at such time, Clear Blue through its agency Embroker sent Ozy a Notice of Cancellation of the Policy, for material omission/misrepresentation in the application and returned all premium paid for the Policy pursuant to Cal. Civ. Code § 1691. Pursuant to the terms of the Notice of Cancellation and Cal. Civ. Code§ 1691, the Policy was rescinded and rendered void *ab initio*, as if no insurance policy had ever issued to Ozy.

53.     Upon information and belief, Ozy, Rao, Watson and/or Lasry dispute Clear Blue's rescission of the Policy and assert that Clear Blue is required by the Policy to provide coverage for these claims.

## FIRST CAUSE OF ACTION

(For Declaratory Relief That The Policy Is Rescinded)

54.     Clear Blue hereby incorporates and realleges paragraphs 1 through 53 as though fully set forth herein.

55.     When applying for coverage under the Policy, Ozy misrepresented certain material facts to Clear Blue, including (a) Ozy misrepresented the prior year and current year revenue; (b) Ozy misrepresented the timing and amount of fundraising and investment; (c) Ozy misrepresented that it had not been the subject of any civil, criminal, or administrative proceedings alleging violation of federal or state securities laws in the prior 3 years; and (d) Ozy misrepresented that it had no intention of filing for bankruptcy in the next year.

/ / /

/ / /

56.    When applying for coverage under the Policy, Ozy concealed certain material facts from Clear Blue that it knew or should have known it was required to disclose, including but not limited to information relating to the deception and attempt to defraud investors by Rao's impersonation of a YouTube executive and its failure to advise other potential investors of the deception and subsequent governmental investigations.

57.    The facts misrepresented and/or concealed by Ozy were material to the risk insured by the Policy.

58.    Had Ozy provided accurate information on the Renewal Application and the Embroker Application and/or disclosed to Clear Blue the facts surrounding Rao's deception in the conference call with Goldman Sachs, the lack of full disclosure to potential and actual investors, and the ensuing governmental investigations, Clear Blue would have refused to issue the Policy, or at least made further inquiry and required Ozy to provide additional information, and included in the Policy language limiting the risk covered under the Policy or charged an increased premium.

59.    Based on the above, Clear Blue desires a judicial determination that the Policy is rescinded, voided in full, or otherwise *void ab initio*.

## SECOND CAUSE OF ACTION

(Alternatively, For Declaratory Relief That Clear Blue Has
No Duty To Reimburse the Defense Costs of Ozy, Rao, Watson or Lasry)

60.    Clear Blue hereby incorporates and realleges paragraphs 1 through 53 as though fully set forth herein.

61.    An actual controversy has arisen and now exists between Clear Blue and the Defendants in that Clear Blue contends it owes no obligation to reimburse the defense of Ozy, Rao, or Lasry against the governmental investigations and the *LifeLine* Litigation and Ozy, Rao, and Lasry contend that Clear Blue is obligated under the terms of the Policy to reimburse their defense costs.

62.    To the extent this Court finds the Policy remains in effect, Clear Blue desires a judicial determination that Clear Blue owes no obligation to reimburse the defense costs of Ozy, Rao, or Lasry against the governmental investigations, the *LifeLine* Litigation, and any other claims relating to or arising out of the Goldman Sachs conference call or misrepresentations made by Ozy or any of its executives in 2021.

### THIRD CAUSE OF ACTION

(Alternatively, For Declaratory Relief That Clear Blue Has

No Duty To Indemnify Ozy, Rao, Watson or Lasry)

63.    Clear Blue hereby incorporates and realleges paragraphs 1 through 53 as though fully set forth herein.

64.    An actual controversy has arisen and now exists between Clear Blue and Ozy in that Clear Blue contends it owes no duty to indemnify Ozy, Rao, Watson or Lasry for any losses incurred in connection with the governmental investigations and the *LifeLine* Litigation and Ozy, Rao, Watson and Lasry contend that Clear Blue is obligated under the terms of the Policy to indemnify them.

65.    To the extent this Court finds the Policy remains in effect, Clear Blue desires a judicial determination that Clear Blue owes no duty to indemnify Ozy, Rao, Watson, or Lasry against the governmental investigations, the *LifeLine* Litigation, and any other claims relating to or arising out of the Goldman Sachs conference call or misrepresentations made by Ozy or any of its executives in 2021.

### FOURTH CAUSE OF ACTION

(Alternatively, For Interpleader Against All Defendants)

66.    Clear Blue hereby incorporates and realleges paragraphs 1 through 53 as though fully set forth herein.

67.    To the extent this Court finds the Policy remains in effect and affords coverage for the claims referenced above, Ozy, Rao, Watson, and Lasry have each made conflicting demands upon Clear Blue as to the payment of insurance benefits

1   under the Policy.

2       68.    Although Clear Blue denies liability for the Defendants' claims, these

3   claims are conflicting and may expose Clear Blue to double or multiple liability.

4       69.    Under Federal Rule of Civil Procedure 22 and/or 28 U.S.C. § 1335,

5   Clear Blue desires that this Court order the Defendants to interplead and litigate their

6   respective rights to the insurance benefits, if any, under the Policy.

7       70.    Upon a finding of liability and upon direction of the Court, Clear Blue

8   will tender its policy limits to the Court.

9       71.    Upon the tendering of its limits, Clear Blue seeks an order discharging

10   it from any liabilities on account of the claims made by the Defendants and

11   restraining each of the Defendants from prosecuting or instituting any action against

12   Clear Blue.

13

14                     **PRAYER**

15   WHEREFORE, Clear Blue prays for judgment as follows:

16       1.     The insurance policy numbered AX01-3274-01 issued by Clear Blue to

17             Ozy is rescinded, voided in full, or otherwise *void ab initio*;

18       2.     A declaration that Clear Blue owes no duty to reimburse the defense

19             costs of Ozy, Rao, Watson, or Lasry or other future claimants with

20             respect to any governmental investigations of Ozy;

21       3.     A declaration that Clear Blue owes no duty to reimburse the defense

22             costs of Ozy or Rao with respect to the lawsuit styled *LifeLine Legacy*

23             *Holdings, LLC v. Ozy Media and Samir Rao*, No. 5:21-cv-7751 in the

24             Northern District of California;

25       4.     A declaration that Clear Blue owes no duty to indemnify Ozy, Rao,

26             Watson, or Lasry or any future claimants with respect to any

27             governmental investigations of Ozy;

28

CLEAR BLUE SPECIALTY INSURANCE COMPANY'S
COMPLAINT FOR RESCISSION, DECLARATORY RELIEF, AND INTERPLEADER

5.    A declaration that Clear Blue owes no duty to indemnify Ozy or Rao with respect to the lawsuit styled *LifeLine Legacy Holdings, LLC v. Ozy Media and Samir Rao*, No. 5:21-cv-7751 in the Northern District of California;

6.    Alternatively, an order directing Clear Blue to interplead the applicable policy limits to the Court and directing the Defendants to interplead and litigate their respective claims to such Policy proceeds, discharging Clear Blue from any further obligations or liability on account of the claims of the Defendants on the Policy, and enjoining the Defendants from prosecuting or instituting any actions against Clear Blue on their respective current or future claims with respect to the Policy;

7.    For recovery of its costs of suit herein; and

8.    For such other relief as the Court herein deems just and proper.

Dated:  November 11, 2021            TRESSLER LLP

                          By:    /s/Linda Bondi Morrison
                                 Linda Bondi Morrison, Esq.
                                 Attorneys for Plaintiff

CLEAR BLUE SPECIALTY INSURANCE COMPANY'S
COMPLAINT FOR RESCISSION, DECLARATORY RELIEF, AND INTERPLEADER