DELAHUNTY & EDELMAN LLP
William J. Edelman (SBN 285177)
wedelman@delawllp.com
Patrick R. Delahunty (SBN 257439)
pdelahunty@delawllp.com
4 Embarcadero Center, Suite 1400
San Francisco, CA, 94111
(415) 891-6210

Co-Counsel for Defendants Ozy Media, Inc.,
and Carlos Watson

HOGUET NEWMAN REGAL & KENNEY, LLP
Bradley J. Nash (*admitted pro hac vice*)
bnash@hnrklaw.com
Emily Hogan Long (*pro hac vice pending*)
ehogan@hnrklaw.com
60 E. 42nd Street, 48th Floor
New York, NY 10165
(212) 689-8808

Co-Counsel for Defendants Ozy Media, Inc.,
and Carlos Watson

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CLEAR BLUE SPECIALTY INSURANCE COMPANY,<br><br>                    *Plaintiff*,<br><br>        -against-<br><br>OZY MEDIA, INC., SAMIR RAO, CARLOS WATSON, MARC LASRY, AND LIFELINE LEGACY HOLDINGS, LLC,<br><br>                    *Defendants*. | Case No: 5:21-cv-8764-EJD<br><br>Hon. Edward J. Davila<br>Court 4, 5th Floor<br><br>Date:  December 8, 2022<br>Time: 9:00 a.m.<br><br>**NOTICE OF MOTION AND MOTION FOR A PRELIMINARY INJUNCTION OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, AND ORDER GRANTING A STAY** |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on December 8, 2022, at 9:00 a.m. or as soon thereafter as may be heard by the Honorable Edward J. Davila, in Courtroom 4 on the 5th Floor of the San Jose Federal Courthouse, Defendants and Counterclaim-Plaintiffs Ozy Media, Inc. and Carlos Watson (together, the "Insureds") will and hereby respectfully do move the Court for (1) a preliminary injunction, or in the alternative, an award of partial summary judgment, directing Counterclaim-Defendant Clear Blue Specialty Insurance Company ("Clear Blue") to advance the Insureds' defense costs in connection with  four related underlying proceedings (a securities fraud action, a Delaware advancement proceeding, an SEC investigation, and a grand jury investigation); and (2) a stay of all discovery in this action, pending the resolution of the underlying proceedings.

Clear Blue should be ordered to advance defense costs pursuant to the express advancement provision of the insurance policy it issued to Ozy.  A preliminary injunction is appropriate because: (1) the Insureds have a high likelihood of success on their claim for advancement defense costs; (2) the Insureds face irreparable harm if they are unable to fund the defense of the underlying proceedings; and (3) the balance of equities and public policy considerations tip decisively in favor of the Insureds.

Finally, all discovery should be stayed pending the resolution of the underlying proceedings. The merits of Clear Blue's declaratory judgment action are inextricably intertwined with the merits of the underlying proceedings, and the Insureds would be severely prejudiced if Clear Blue were permitted to join forces with the Insureds' litigation adversaries and with government investigators, rather than funding Clear Blue's defense of the proceedings against it.

The Insureds' Motion is based on this Notice of Motion and Memorandum of Points and Authorities submitted herewith, Plaintiff's Complaint, the Declarations of Kevin J. O'Brien and Bradley J. Nash, and other such matters that the Court may consider.

Respectfully Submitted,
HOGUET NEWMAN REGAL &
KENNY, LLP

/s/ *Bradley J. Nash*

_____
Bradley J. Nash
Emily Hogan-Long
Co-Counsel for Defendants, OZY
MEDIA, INC. and CARLOS WATSON

# **TABLE OF CONTENTS**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD ..................................................ii

TABLE OF AUTHORITIES ...........................................................................................v-vi

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................1

I.     PRELIMINARY STATEMENT ...............................................................................1

II.    FACTUAL BACKGROUND ..................................................................................5

   A.  Ozy's D&O Policy ............................................................................................5

   B.  The Underlying Proceedings...............................................................................8

   C.  Clear Blue Purports to Cancel the Policy and Then Files This Action Seeking The
      Inconsistent Remedy of Rescission .......................................................................9

   D.  Clear Blue's Discovery Demands ........................................................................11

   E.  The Insureds' Mounting Defense Costs and the Status of the Underlying
      Proceedings ...................................................................................................12

III.   ARGUMENT .....................................................................................................13

   A.  The Court Should Issue a Preliminary Injunction Ordering Clear Blue To Advance
      Defense Costs As They Are Incurred....................................................................13

     1.  The Insureds Are Likely to Succeed on the Merits of Their Claim for Advancement .. 14

     2.  Clear Blue's Failure to Advance Defense Costs Will Cause the Insureds
        Irreparable Harm ...................................................................................18

     3.  The Balance of Equities Tips Overwhelmingly in Favor of Insureds ...........................19

     4.  An Injunction Is In The Public Interest ....................................................................19

   B.  In The Alternative, The Court Should Award Partial Summary Judgment to the
      Insureds on the Issue of Advancement of Defense Costs .............................................20

   C.  The Court Should Enter a Stay of Discovery Pending Resolution of the Underlying
      Proceedings ...................................................................................................20

     1.  Clear Blue Will Not Be Harmed By a Stay of Discovery .............................................21

     2.  The Insureds Would Suffer Grave Hardship if Discovery Were to Proceed .................21

     3.  The Orderly Administration of Justice Warrants a Stay ..............................................23

IV.   CONCLUSION ..................................................................................................23

# TABLE OF AUTHORITIES

*Accord Federal Ins., Co. v. Kozlowski,*
   18 A.D.3d 33 (N.Y. App. Div. 2005) ................................................................... 17

*AIU Ins. Co. v. McKesson Corp.,*
   No. 20-CV-07469-JSC, 2021 WL 3565440 (N.D. Cal. Aug. 12, 2021) ................. 21, 22, 23

*Am. Motorists Ins. Co. v. Superior Ct.,*
   68 Cal. App. 4th 864 (Cal. Ct. App. 1998) ............................................................. 20

*Atain Specialty Ins. Co. v. 20 Parkridge, LLC,*
   No. 15-CV-00212-MEJ, 2015 WL 2226356 (N.D. Cal. May 11, 2015) ............................. 21

*Braden Partners, LP v. Twin City Fire Ins. Co.,*
   No. 14-cv-01689-JST 2017 WL 63019 (N.D. Cal. Jan. 5, 2017) ................... 3, 14, 16, 19, 20

*Buss v. Superior Ct.,*
   16 Cal. 4th 35 (Cal. 1997) .................................................................................... 16

*Eichler v. Twin City Fire Ins. Co.,*
   No. CV 13-9295 DSF (EX), 2014 WL 12572922 (C.D. Cal. Feb. 18, 2014) ...................... 14

*Farris v. Seabrook*
   677 F.3d 858 (9th Cir. 2012) ................................................................................ 14

*Gon v. First State Ins. Co.,*
   871 F.2d 863 (9th Cir. 1989) ........................................................................ 2, 10, 17

*Gray v. Zurich Ins. Co.,*
   65 Cal. 2d 263 (Cal. 1966) ................................................................................... 16

*Great Am. Ins. Co. v. Superior Ct.,*
   178 Cal. App. 4th 221 (Cal. Ct. App. 2009) ........................................................... 22

*Haskel, Inc. v. Superior Ct.,*
   33 Cal. App. 4th 963 (Cal. Ct. App. 1995) ...................................................... 16, 22

*Heideman v. S. Salt Lake City,*
   348 F.3d 1182 (10th Cir. 2003) ............................................................................ 19

*Homestore, Inc. v. Tafeen*
   888 A.2d 204 (Del. 2005) ..................................................................................... 20

*WorldCom Inc. Sec. Litig.,*
   354 F. Supp. 2d 455 (S.D.N.Y. 2005) ............................................................ 14, 18. 20

*Tracy v. U.S. Specialty Ins. Co.,,*
   636 F. Supp. 2d 995 (C.D. Cal S. Div. 2009).......................................................... 20

*Landis v. North Am. Co.*,
   299 U.S. 248 (1936) ........................................................................ 21, 22, 23

*Leyva v. Certified Grocers, Ltd.*,
   593 F.2d 857 (9th Cir. 1979) ...................................................................... 23

*McGraw v. W. Serv. Cont. Corp*,
   *No. 13-CV-05129-JST*, 2014 WL 12573519 (N.D. Cal. Apr. 14, 2014) ........................ 15, 21

*Montrose Chem. Corp. v. Am. Motorists Ins. Co.*,
   16 Cal. Rptr. 2d 516 (Cal. Ct. App. 1993) ............................................................ 18

*Montrose Chem. Corp. v. Superior Ct.*,
   6 Cal. 4th 287 (Cal. 1993) ........................................................................ 16

*MS Amlin Corp., Ltd. v. Bottini*,
   No. 20cv687-GPC(LL), 2020 WL 5966612 (S.D. Cal. Oct. 8, 2020) ................................ 21

*Mt. Hawley Ins. Co. v. Lopez*,
   215 Cal. App. 4th 1385 (Cal. Ct. App. 2013) ...................................................... 20

*Petersen v. Columbia Cas. Co.*,
   *No. SACV 12-00183 JVS*, 2012 WL 5316352 (C.D. Cal. Aug. 21, 2012) ........................ 15

*Riddell, Inc. v. Superior Ct.*,
   14 Cal. App. 5th 755 (Cal. Ct. App. 2017) ........................................................ 22

*RLI Ins. Co. v. ACE Am. Ins. Co.*,
   No. 19-CV-04180-LHK, 2020 WL 1322955 (N.D. Cal. Mar. 20, 2020) ............................ 21

*United Specialty Ins. Co. v. Meridian Mgmt. Grp., Inc.*,
   No. 15-CV-01039-HSG, 2016 WL 1534885 (N.D. Cal. Apr. 15, 2016) ............................ 23

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ................................................................................ 14

*Zurich Am. Ins. Co. v. Omnicell, Inc.*,
   No. 18-CV-05345-LHK, 2019 WL 570760 (N.D. Cal. Feb. 12, 2019) .............................. 19

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants and Counterclaim-Plaintiffs Ozy Media, Inc. ("Ozy") and Carlos Watson ("Mr. Watson") (together, the "Insureds"), submit the following Memorandum of Law, together with the Declarations of Kevin J. O'Brien ("O'Brien Decl.") and Bradley J. Nash ("Nash Decl.") in support of their motion for: (1) a preliminary injunction, or in the alternative, an award of partial summary judgment, directing Counterclaim-Defendant Clear Blue Specialty Insurance Company ("Clear Blue") to advance the Insureds' attorneys' fees and costs for defense of a pending civil suit in the North District of California (the "Civil Action"), and an order to advance defense costs in the Delaware Court of Chancery, and responding to an investigatory subpoena *duces tecum* from the Securities and Exchange Commission (the "SEC Subpoena"), and a grand jury subpoena *duces tecum* from the Eastern District of New York (the "EDNY Subpoena", and collectively with the SEC Subpoena and the Civil Action, the "Underlying Proceedings"); and (2) an order staying any discovery pending the resolution of the Underlying Proceedings.

## I.   PRELIMINARY STATEMENT

The Insureds seek a preliminary injunction, directing Clear Blue to comply with its obligation to advance the Insureds' Defense Costs—*i.e.*, their "expenses, including attorneys' fees and experts' fees, incurred in the investigation, defense or appeal of a Claim"—"prior to the disposition" of the Underlying Proceedings against them.  Absent such relief, the Insureds will suffer the immediate and irreparable injury of being unable adequately to fund their defense of an ongoing Civil Action and related SEC and grand jury investigations, potentially putting Ozy's business, as well as the livelihoods, and even the liberty, of its officers at stake.

The Insureds are covered under a liability insurance policy (including a Directors and Officers ("D&O") Coverage Part), issued by Clear Blue to Ozy, for the policy period August 25, 2021 to August 25, 2022 ("the Policy").  On October 4, 2021, an investor filed a federal securities fraud lawsuit, in this Court against Ozy and its former Chief Operating Officer, Samir Rao ("Mr. Rao"). At around the same time, Ozy received the SEC and EDNY Subpoenas, both of which were confidential

government investigations, relating to the same alleged incidents as the Civil Action.  On October 6, 2021, Clear Blue sought to dodge its obligation under the Policy to advance the Insureds' Defense Costs by issuing a Notice of Cancelation of the Policy, citing an alleged "material omission/misrepresentation in the application" for the Policy.  Clear Blue then filed this action, purporting to seek the inconsistent remedy of rescission on the same grounds.

Clear Blue's rescission action improperly seeks to establish the truth of the allegations against the Insureds in the Underlying Proceedings as a basis for avoiding coverage, even though these matters remain pending and unresolved, and the very purpose of the Policy is to fund the Insureds' defense of the allegations against them.  Well-established law, and the plain language of the Policy, do not permit Clear Blue to avoid its advancement obligation in this way.  Rather, Clear Blue must advance the Insureds' defense costs as they are incurred, with the ultimate determination of any coverage defenses deferred until after the resolution of the Underlying Proceedings.

In a seminal decision, *Gon v. First State Insurance Company*, 871 F.2d 863 (9th Cir. 1989), the Ninth Circuit affirmed a district court order staying an insurer's rescission action, while directing the insurer to advance the insureds' defense costs, subject to a potential claim for recoupment "after settlement or judgment in the underlying [] action." *Id.* at 869.  Here, the express language of the Policy mandates the same result.  The Policy's "Advancement of Defense Costs" provision requires Clear Blue to advance the Insureds' Defense Costs, "prior to the disposition" of the underlying Claims, subject to potential recoupment "if and to the extent that Insured[s] shall not be entitled to coverage for such Defense Costs under the terms and conditions of th[e] Policy."  Thus, as in *Gon*, Clear Blue must advance the Insureds' defense costs now and resolve its coverage defenses after the Underlying Proceedings have concluded.  Indeed, were the law otherwise, D&O coverage would be a dead letter for corporate directors and officers accused of wrongdoing:  the insurer would always be able to avoid advancement by the simple expedient of assuming the truth of the allegations against the insureds, and then purporting to rescind the policy based on the insureds' failure to disclose in the application the alleged (but unproven) wrongful conduct.  The law does not permit such

gamesmanship, but instead recognizes that "the duty to advance defense costs would be illusory if the insured had to wait for a determination of actual coverage to obtain the necessary funding for its defense." *Braden Partners, LP v. Twin City Fire Ins. Co.*, No.14-cv-01689-JST, 2017 WL 63019, at *11 (N.D. Cal. Jan. 5, 2017).

The Insureds easily satisfy the requirements for preliminary injunctive relief directing Clear Blue to comply with its advancement obligation under the Policy:

*First*, the Insureds have a clear likelihood of success on the merits of their claim for advancement of Defense Costs, since the Underlying Proceedings plainly fall within the basic scope of coverage, and Clear Blue's purported coverage defenses are inextricably intertwined with merits of the Underlying Proceedings, and therefore cannot be determined in a collateral coverage action.

*Second*, the Insureds face irreparable harm if Clear Blue continues to flout its duty to advance Defense Costs. Absent immediate relief, the Insureds' ability to mount an adequate defense as they fend off four related claims—a private securities lawsuit, an advancement action, and related SEC and federal grand jury investigations—will be undermined. These complex and costly proceedings are precisely the type of matters for which D&O insurance is intended to provide coverage for defense costs. The Insureds' entitlement to the benefits promised to them under the Policy's advancement provision is not contingent on a showing that they lack independent means to pay for their defense. However, as set forth in the accompanying declarations of Ozy's defense counsel, the company is, in fact, hard pressed to fund the defense of the Underlying Proceedings, including paying the company's own counsel and advancing officer and director defense costs—all amounts that ought to be defrayed by Clear Blue under the plain language of the Policy.

*Finally,* there is no question that the balance of the equities weighs in favor of the Insureds— and decidedly so. Unless Clear Blue is immediately ordered to advance the Insureds' Defense Costs, the Insureds will be left without sufficient financial support as they face serious civil and criminal proceedings with the potential to have adverse effects on Ozy's business and the individual insureds' reputations, and livelihoods. In stark contrast, if an injunction is granted, Clear Blue will merely be

compelled to shoulder the economic burden it expressly agreed to undertake and for which it was paid the Policy premium:  *i.e.*, advancing the Insureds' Defense Costs, with the possibility of later seeking recoupment should the facts determined in the Underlying Proceedings ultimately establish that the Insureds were not entitled to coverage under the Policy.  The irremediable harm that the Insureds will suffer from being unable to adequately defend themselves in the Underlying Proceedings indisputably outweighs any possible economic loss to Clear Blue.  Accordingly, the Court should grant the requested injunctive relief and compel Clear Blue to advance the Insureds' Defense Costs.  Alternatively, the Court should grant partial summary judgment to on the issue of advancement of Defense Costs, as Courts have done in comparable cases at the outset of a coverage action.

Finally, the Court should stay all discovery in this action pending the resolution of the Underlying Proceedings.  Clear Blue's attempt to use a declaratory judgment action to establish the truth of the allegations asserted against the Insureds in the Civil Action—allegations that are also under investigation by the SEC and a federal grand jury—is improper.  The discovery demands Clear Blue has recently served are directed to the merits of those Underlying Proceedings, and would prejudice the Insureds' defense in those proceedings.  Not only would conducting this discovery further tax the Insureds' already-strained resources (potentially compromising Ozy's ability to continue as a going concern), but the Insureds' participation in such discovery (including providing sworn interrogatory responses, and the eventual depositions of Ozy and its officers) could potentially compromise their Fifth Amendment rights in the context of an ongoing criminal investigation.  Moreover, if this case were to move forward in tandem with the Underlying Proceedings, the Court's resources would be wasted by duplicative proceedings, and any adverse findings by this Court could potentially have collateral estoppel effect in the Civil Action, further prejudicing the Insureds.  For all these reasons, discovery in this action should be stayed, until the resolution of the Underlying Proceedings.

In sum, by attempting to withhold Defense Costs until after judgment in this action, Clear Blue improperly seeks to force the Insureds to fight a multi-front war and essentially prove their innocence twice (once in the Underlying Proceedings and again in this action), while simultaneously depriving the Insureds of the very resources needed to mount their defense—a defense that Clear Blue is required to fund under the Policy. The law does not permit this, and, in fact, requires Clear Blue to advance Defense Costs pending the outcome of the Underlying Proceedings, precisely so that the Insureds can mount a full-throated defense to the allegations against them.

For these reasons, and others explained below, the Insureds' motion for (1) a preliminary injunction, or alternatively an award of partial summary judgment, directing Clear Blue to advance the Insureds' Defense Costs for the Underlying Proceedings, and (2) a stay of discovery in this action pending the resolution of the Underlying Proceedings, should be granted.

## II.   FACTUAL BACKGROUND

### A.   Ozy's D&O Policy

Effective August 25, 2021, Plaintiff Clear Blue issued to Ozy a liability insurance policy providing Directors & Officers Coverage, as well as Employment Practices and Fiduciary Liability Coverage ("the Policy"). Nash Decl., Ex. 1 (Policy) at 2.[1]

---

[1] The Policy provides an aggregate limit of $3 million. *Id*., Policy (General Terms and Conditions) at 5, § III(A) (Limits of Liability) & Declarations at 1. The Limits of Liability provision states that "[s]ubject to this Policy Limit of Liability, any Coverage Part Aggregate Limit of Liability stated in the Declarations is the most We will pay under each respective Coverage Part." However, the Declarations for the D&O Coverage Part do not reference any amount that is denominated a "Coverage Part Aggregate Limit of Liability". Instead, there are separate $1 million coverage limits for each of the three principal Insuring Agreements (Non-Indemnifiable Directors & Officers Liability ("Side A"); Indemnifiable Directors & Officers ("Side B"); and Entity Liability ("Side C")), and lower sublimits of liability for additional coverages (Derivative Costs; Crisis Costs). The Policy

The Directors & Officers coverage part contains, in relevant part, three separate Insuring Agreements:

A. Non-Indemnifiable Directors & Officers Liability
We will pay **Non-Indemnifiable Loss** on behalf of the **Insured** resulting from a **Claim** first made against the **Insured** during the **Policy Period** or any applicable Extended Reporting Period and reported to Us pursuant to the terms of this **Policy**, for a **Wrongful Act** by the **Insured**.

B. Indemnifiable Directors & Officers
We will pay **Loss** on behalf of the **Insured** that such Insured has indemnified the **Team Members** resulting from a **Claim** first made against the **Team Members** during the **Policy Period** or any applicable Extended Reporting Period and reported to Us pursuant to the terms of this **Policy**, for a **Wrongful Act** by the **Team Members**.

C. Entity Liability
We will pay **Loss** on behalf of the **Insured** resulting from a **Claim** first made against such **Insured** during the **Policy Period** or any applicable Extended Reporting Period and reported to Us pursuant to the terms of this **Policy**, for a **Wrongful Act**.

*Id.*, Policy (D&O Coverage Part) at 2, § I (A-C).

The Policy defines a "Claim" to include, *inter alia*, any "[w]ritten demand against the Insured for monetary damages or non-monetary or injunctive relief," and "[c]ivil, criminal, administrative or regulatory investigation of an **Insured** by a government regulatory authority or agency, which is commenced by . . . an **Insured's** receipt of a subpoena." *Id.*, Policy (D&O Coverage Part) at 3, § II(A)(1), (5).

"Wrongful Act" is broadly defined to include "any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty." *Id.* at 7, § II(T).

"Loss" is defined as "the amount that an **Insured** is legally obligated to pay resulting from a **Claim**, including damages, settlements, judgments, pre- and post-judgment interest, **Defense Costs**,

---

also potentially provides an additional $1 million in "Side A" coverage, which is not subject to the Policy Limit of Liability. *Id.*, Policy (D&O Coverge Part) at 13, § 5 (Additional Limit of Liability).

and investigation Costs." *Id.* at 5, § II(N). "Defense Costs" are "expenses, including attorneys' fees and experts' fees, incurred in the investigation, defense or appeal of a Claim." *Id.* at 4, § II(E).

The Policy's "Advancement of Defense Costs" provisions states:

> **We shall, on a quarterly basis, advance on your behalf of covered Defense Costs**, which You have incurred in connection with Claims made against the Insured and covered Venture Capital Sponsor, **prior to disposition of such Claim**. Any advancement of Defense Costs shall be subject to the condition **that such advanced amounts shall be repaid to Us** by the Insured severally according to each party's respective interests **if and to the extent the Insured shall not be entitled to coverage for such Defense Costs under the terms and conditions of this Policy.**

Policy (General Terms and Conditions) at 9, § VIII(C)  (emphasis added). Thus, the Policy expressly requires Clear Blue to advance the Insureds' Defense Costs "prior to the disposition" of a Claim, subject to a potential right of recoupment after the Claim is resolved, should it then be determined, based on facts established in the underlying matters, that the Insured is not entitled to coverage.

In addition, the Policy requires the Insureds to give written notice of any Claim "as soon as practicable after the Chief **Executive** Officer or functionally equivalent first learns of such **Claim**, but in no event later than (i) ninety (90) days after the expiration of the **Policy Period**." *Id.* at 9, § IX(A).

Finally, Clear Blue waives any statutory or common law right to rescind the Policy, (*id.* at 13, § XVII), and instead limits itself to a narrower contractual remedy specified in Section XIV (Application).  That provision states that, if the Policy "**Application** contains misrepresentations or omissions that materially affect the acceptance of the risk or hazard assumed by [Clear Blue]," the Policy "shall be avoid ab initio and shall not afford coverage," but *only* "for any **Insured** who knew on the inception date of this Policy the facts that were not truthfully disclosed in the **Application**." *Id.* at 12, § XIV. Furthermore, for purposes of this provision, the knowledge of one "Team Member" (*i.e.*, the individual insureds) is not to be "imputed to any other **Team Member**" (although the knowledge of the Chief Executive Officer, or anyone signing the Application, is  "imputed to all **Insureds** other than **Team Members**") (i.e., to the Named Insured Ozy, but not individual insureds).

*Id.* at (1-2).  Thus, the contractual rescission remedy does *not* void the Policy in toto, but rather functions more like an exclusion, potentially limiting coverage for certain Insureds depending on each such Insureds' individual knowledge, on the Policy's "inception date," that "the facts were not truthfully disclosed in the Application."

### B.      The Underlying Proceedings

On October 4, 2021, Ozy, and its Chief Operating Officer, Mr. Rao, were sued by LifeLine Legacy Holdings, LLC ("LifeLine"), in the United States District Court for the Northern District of California, alleging violations of federal securities laws, violations of the California Corporations Code, and fraud.  Nash Decl., Ex. 2 (LifeLine Complaint).  LifeLine's Complaint alleged that the Defendants failed to disclose alleged misconduct by Mr. Rao during an investor presentation to Goldman Sachs, and that, as a result of this misconduct, Goldman had declined to make an investment in Ozy.  *Id.* ¶¶ 6, 22-26.

LifeLine filed its First Amended Complaint on October 26, 2021, adding Carlos Watson as a defendant.  *Id.*, Ex. 3 (LifeLine First Amended Complaint).  On June 13, 2022, the First Amended Complaint was dismissed with leave to amend.  The Second Amended Complaint against Ozy and Watson was filed on June 29, 2022.  *Id.*, Ex. 4.

At around the same time the first LifeLine Complaint was filed, Ozy was served with the SEC and EDNY Subpoenas seeking documents relating to the same alleged incidents, as well as Ozy's actual and potential investments and financial statements.  Dkt. No. 1 (Clear Blue Complaint) ¶¶ 48-49; Nash Decl. Ex. 5 and 6.  Subsequently, the SEC served the Company with additional subpoenas for discrete books and records, most recently in June 2022.  Mr. Watson also has received additional EDNY document subpoenas regarding his books and records.  Both investigations are ongoing.  O'Brien Decl. ¶ 11.

The SEC Subpoena, issued on September 29, 2021, sought, *inter alia*, documents concerning:

████████   Nash Decl., Ex. 5 at 4 ¶¶ 1, 2, 17.  The EDNY Subpoena, issued on October 11, 2021,

similarly sought, *inter alia*, documents concerning: ██████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████   *Id.*, Ex. 6 at ¶¶ 3, 2, 8.

Ozy provided Clear Blue a Notice of Claims and associated documents on October 20, 2021,

well within the 90-day period provided by the Policy.  Clear Blue Complaint ¶ 50.

**C.      Clear Blue Purports to Cancel the Policy and Then Files This Action Seeking The
Inconsistent Remedy of Rescission**

On October 6, 2021 (two days after the filing of the Civil Action), Clear Blue sent Ozy a

Notice of Cancellation of the Policy.  *Id.* ¶ 52.  A month later, on November 11, 2021, Clear Blue

filed this action seeking a declaration that "the Policy is rescinded, voided in full, or otherwise *void

ab initio*."[2]  *Id.* ¶ 59.  In its complaint, Clear Blue alleged that Ozy failed to disclose "the facts

surrounding Rao's deception in the conference call with Goldman Sachs, the lack of full disclosure to

potential and actual investors, and the ensuring governmental investigations."  *Id.*  Clear Blue further

alleged that Ozy misrepresented "certain material facts," including "prior year and current year

revenue", "the timing and amount of fundraising and investment", and "that it had no intention of

filing for bankruptcy in the next year."  *Id.* ¶ 55.

Clear Blue's rescission claim relies principally on the allegations at the center of the Civil

Action (*i.e.*, the purported non-disclosure of alleged misconduct by Mr. Rao, and the effect of that

---

[2] As set forth more fully, in the Insureds' motion to dismiss, Dkt. No. 24, Clear Blue waived any right
to rescind the Policy, when it elected to serve a Notice of Cancellation—an inconsistent form of relief
that terminates the coverage prospectively, but not retroactively.  In addition, as explained above, the
Policy terms do not permit any such wholesale rescission, but instead require an individual
assessment of each Insureds' knowledge that "the facts that were not truthfully disclosed in the
Application."

misconduct on a potential investment by Goldman Sachs), which had been filed more than a month earlier  Furthermore, as shown by the following side-by-side comparison, Clear Blue's allegations also closely track matters currently under investigation by the SEC and the EDNY, as reflected in the itemized document requests in their respective subpoenas:

| Clear Blue's Allegations | EDNY Investigation | SEC Investigation |
|---|---|---|
| Upon information and belief, Ozy, Watson, and Rao failed to disclose either Rao's fraudulent deception of Goldman Sachs or the subsequent government investigations to prospective investors. Complaint ¶ 22. | | |
| On or about September 25, 2021, the New York Times published an article disclosing details of the Goldman Sachs conference call. Complaint ¶ 23. | | |
| In the "Company Profile" Section of the Embroker Application, the 2020 total revenue and 2021 total revenue Ozy reported was materially different than its actual revenues for those years. Complaint ¶ 33. | | |



| | | |
|---|---|---|
| Under the Section of the Embroker Application entitled "Your Business," Ozy reported the total amount of funding raised to date (including debt) that was materially different than the amount actually raised. In the Embroker Application, Ozy identified three separate investment fund-raising rounds that did not reflect the amounts actually raised. Complaint ¶¶ 34-35. | | |
| When applying for coverage under the Policy, Ozy concealed certain material facts from Clear Blue that it knew or should have known it was required to disclose, including but not limited to information relating to the deception and attempt to defraud investors by Rao's impersonation of a YouTube executive and its failure to advise other potential investors of the deception and subsequent governmental investigations. Complaint ¶ 56. | | |

**D.     Clear Blue's Discovery Demands**

On June 22, 2022, Clear Blue served an initial set of document requests and interrogatories on Ozy, followed by initial requests on the individual defendants on June 24.  Nash Decl., Ex. 7 (Requests to Ozy), Ex. 8 (Requests to Individuals) (collectively, the "Clear Blue Requests").

The Clear Blue Requests seek discovery on the matters at issue in the Underlying Proceedings, including "revenue and revenue projections", "fundraising and investment amounts received by [Ozy]", and "fundraising and investment amounts", as well as documents relating to the SEC and EDNY investigations themselves.

Clear Blue should not be permitted to tax the Insureds' (or the Court's) resources with duplicative litigation—the matters at issue in the Underlying Proceedings must be resolved in those proceedings and not in a collateral coverage action.  This is especially so because the discovery Clear Blue seeks to take in this action (discovery that is plainly calculated to prove the very allegations against the Insureds for which Clear Blue is obligated under the Policy to advance Defense Costs) would severely prejudice the Insureds, who would risk potentially compromising their Fifth Amendment rights by producing records or offering testimony in this action.

**E.      The Insureds' Mounting Defense Costs and the Status of the Underlying Proceedings**

In defending themselves in the Underlying Proceedings, the Insureds have already incurred legal fees and other expenses well in excess of the separate $1 million limits available under the "Side B" coverage (Loss incurred by individual insureds indemnified by Ozy), and "Side C" (loss incurred by Ozy for Claims against the company).  O'Brien Decl. ¶ 10.  A sizeable portion of these already-incurred costs remain unpaid to date.  *Id.* At the same time, future Defense Costs in the Underlying Proceedings are both inevitable and likely to be substantial.  *Id.*  The SEC and EDNY investigations are continuing, with additional document subpoenas issued only last month.  *Id.* ¶ 11. And in the Civil Action, the Insureds' defense counsel must now begin work on briefing another motion to dismiss—this time directed to a 37-page, 133-paragraph Second Amended Complaint that was filed on June 29, 2022.  *Id.* ¶ 13.

As Ozy's defense counsel, Kevin J. O'Brien, attests in a declaration submitted in connection with the accompanying motion for an order of advancement and a stay of discovery, "***unless Clear***

***Blue is immediately ordered to comply with its advancement obligation, there is no question that the Insureds' defense of the Underlying Proceedings will be seriously compromised.***" *Id.* ¶ 7.

Indeed, the Insureds' already-urgent need for the advancement to which they are entitled under the Policy recently became even more exigent, when the Delaware Chancery Court issued an order that will require Ozy to pay within the next few weeks an amount that could approach $500,000 in defense costs incurred by its former officer, Mr. Rao, in addition to substantial "fees and fees." Nash Decl., Ex. 9 (Order).  That payment will further drain the limited resources Ozy has to fund its other mounting legal expenses for the Underlying Proceedings.  *Id.* ¶¶ 4, 14.

As Mr. O'Brien further explains, the "Underlying Proceedings have created exigent cash flow issues that are severely inhibiting the Company's ability to fund its operations (as well as to meet its obligations for legal and other services)."  *Id.* ¶ 16.  "[A]bsent an immediate order directing Clear Blue to comply with its clear obligation to advance defense costs for the Underlying Proceedings, Ozy's ability to continue as a viable going concern will be significantly at risk."  *Id.* ¶ 18.

## III.   ARGUMENT

### A.   <u>The Court Should Issue a Preliminary Injunction Ordering Clear Blue To Advance Defense Costs As They Are Incurred</u>

The Court should not countenance Clear Blue's attempt to use this declaratory judgment action to escape its express contractual duty to advance Defense Costs to the Insureds.  Allowing Clear Blue to do so would bleed the Insureds dry as the Defense Costs continue to accrue in the Underlying Proceedings or, even worse, prevent the Insureds from mounting a vigorous legal defense, unfairly exposing the Insureds to civil and criminal liability.  To avoid this unjust result, which would render Policy's express advancement obligation illusory, Clear Blue should be ordered to immediately pay the Insured's Defense Costs.

To obtain a preliminary injunction under Federal Rule of Procedure 65, a movant must demonstrate (1) a "likelihood of success on the merits," (2) a "likelihood of irreparable harm that would result if an injunction were not issued," (3) "the balance of equities tips in favor of the

plaintiff," and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20-22 (2008).  The irreparable injury must be both likely and immediate. *Id*.  The Ninth Circuit "articulated an alternate formulation of the *Winter* test, under which serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury, and that the injunction is in the public interest." *Eichler v. Twin City Fire Ins. Co.*, No. CV 13-9295 DSF (EX), 2014 WL 12572922, at *1 (C.D. Cal. Feb. 18, 2014) (*quoting Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012)).  All four of the *Winter* factors are easily met here.

### 1.    The Insureds Are Likely to Succeed on the Merits of Their Claim for Advancement

The Insureds have a high likelihood of success on their claim for advancement of defense costs.  Importantly, the relevant "merits" here concern the likelihood of success on the Insureds' claim for advancement of Defense Costs, which is "independent of the ultimate success of [Clear Blue's] suit against the [I]nsured[s]."  *In re WorldCom Inc Sec. Litig.*, 354 F. Supp. 2d 455, 464 (S.D.N.Y. 2005) (granting preliminary injunction directing D&O insurer to advance defense costs).  A D&O insurer's "duty to advance defense costs [] exists independently of the duty to indemnify" and "extends to claims that are **potentially covered** under the policy."  *Braden Partners, LP*, 2017 WL 63019, at *10, *8 (emphasis added).[3]

---

[3] For the reasons set forth in the Insureds' motion to dismiss, which is fully briefed and scheduled for a hearing on July 28, 2022, Clear Blue's complaint is fatally defective and fails to state a claim for relief for multiple reasons, including: (1) Clear Blue waived the right to seek the remedy of rescission under the policy when it elected to serve a notice of cancellation on Ozy; (2) the principal ground for rescission concerns matters about which Clear Blue did not inquire in the Application, and the Insureds therefore had no duty of disclosure; and (3) Clear Blue's other claims are not pled with sufficient particularity.

Thus, to succeed on their claim for advancement of Defense Costs, the insured need only show "that the underlying claims are within the basic scope of coverage." *Petersen v. Columbia Cas. Co.*, No. SACV 12-00183 JVS, 2012 WL 5316352, at *10 (C.D. Cal. Aug. 21, 2012) (*quoting Tracy v. U.S. Specialty Ins. Co.*, 636 F. Supp. 2d 995, 1004 (C.D. Cal. S. Div. 2009)).  In *McGraw v. Western Service Contract Corp.*, for example, the Court found that an indemnified party was likely to succeed on the merits of a claim for advancement of legal fees and defense costs where "[t]he agreement include[d] an advancement provision subject to a written request and undertaking," and he "made such a request, and executed an undertaking." No. 13-CV-05129-JST, 2014 WL 12573519, at *1 (N.D. Cal. Apr. 14, 2014).

Here, the Policy covers loss as a result of a claim during the policy period, from a wrongful act.  "Wrongful Act" is defined expansively as "any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty."  Furthermore, the Policy expressly requires advancement of defense costs.  As a condition precedent, Ozy is required to notify Clear Blue of any claims within a 90-day period.  Clear Blue properly notified Clear Blue of the Lifeline, SEC and grand jury actions, each of which alleges conduct that falls within the broad definition of "Wrongful Act."  Because the claims are within the basic scope of coverage, and the Insureds met all conditions precedent, the Insureds are entitled to advancement of the Defense Costs under the Policy.

The fact that Clear Blue disputes coverage does not negate its duty to advance defense costs.  To establish its rescission claim, Clear Blue has the burden of demonstrating the Insureds' knowledge of "misrepresentations or omissions" in the Application—and must make this showing separately as to each Insured, since the knowledge of one is not to be imputed to another.  Yet such a showing necessarily turns on the very matters at issue in the Underlying Proceedings—*e.g.*, the circumstances surrounding the Goldman Sachs call, the accuracy of Ozy's financials, and its fundraising and investor activity.

It is well established that where, as here, an insurer's coverage defenses turn on the same issues as the Underlying Proceedings, "the insurer, who is supposed to be on the side of the insured

and with whom there is a special relationship," is not permitted to "attack[] its insured and thus give[] aid and comfort to the claimant in the underlying suit." *Haskel, Inc. v. Superior Ct.*, 33 Cal. App. 4th 963, 979 (Cal. Ct. App. 1995); *see also* Alan D. Windt, 2 Insurance Claims and Disputes § 8:4 (6th ed.) ("To the extent the declaratory judgment might resolve an issue adversely to the insured, it would be inherently unfair to force the insured to litigate against the insurance company; under those circumstances, rather than obtaining the benefit of the company's resources and expertise in defending against the plaintiff, those resources, for which the insured had bargained, would be turned against the insured and used to help establish his or her liability."). Thus, the factual issues on which Clear Blue disputes coverage must be determined in the Underlying Proceedings, and not in this coverage action.

The California courts have long acknowledged that in many cases, "[t]he carrier's obligation to indemnify inevitably will not be defined until the adjudication of the [Underlying Proceedings]," *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 2772 (Cal. 1966). Yet "the duty to advance defense costs would be illusory if the insured had to wait for a determination of actual coverage to obtain the necessary funding for its defense." *Braden Partners, L.P.*, 2017 WL 63019, at *11. "[T]he entire purpose of the duty to advance defense costs is to ensure that a policyholder has the insurance proceeds available to defend against an underlying action." *Id.* Stated another way, "[t]o defend meaningfully, the insurer must defend immediately." *Buss v. Superior Ct.*, 16 Cal. 4th 35, 49 (Cal. 1997); *see also Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287, 295 (Cal. 1993) ("Imposition of an immediate duty to defend is necessary to afford the insured what it is entitled to: the full protection of a defense on its behalf."). Indeed, permitting Clear Blue to withhold advancement until after the Underlying Proceedings are resolved would contravene the express language of the Policy's Advancement provision, which requires advancement "***prior*** to disposition" of the Claim.

In an important and closely-analogous case, the Ninth Circuit affirmed an order of Judge Thelton Henderson of this Court, which awarded the very relief the Insureds seek here. In *Gon v. First State Insuranc Company*, 871 F.2d 863 (9th Cir. 1989), a federal agency "filed suit against the

former officers and directors of [a bank], alleging that they had engaged in unsafe, unsound, and imprudent banking practices." *Id.* at 864.  After the officers and directors gave notice of this claim, the insurer "notified the insureds that it was rescinding the insurance contract because it believed that misrepresentations were made in the original application for insurance." *Id.*  The insurer then "filed a complaint for rescission," and the insureds filed their own action, seeking, *inter alia*, injunctive relief, directing the insurer to advance defense costs.  Judge Thelton Henderson of this Court "elected to proceed with the case brought by the insureds, and to hold the recission action in abeyance." *Id.* at 865.  The Ninth Circuit affirmed Judge Henderson's order "requiring [the insurer] to pay all defense costs as incurred, subject to apportionment after judgment" in the underlying proceeding.  *Id.* 866. The same result is required here.

Indeed, in *Gon* the Ninth Circuit ordered the insurer to advance defense costs, even though the policy at issue  did *not* include an advancement provision, but defined "Loss" to include "defense of legal actions." *Id.*  In this case, where the Policy explicitly provides for advancement of defense costs, subject to a potential recoupment right at the conclusion of the Underlying Proceedings, it is even clearer that contemporaneous payment of defense costs is required, **even when coverage is disputed**.  As in *Gon*, Clear Blue can pursue a recoupment claim it is ultimately determined, after the conclusion of the Underlying Proceedings, that certain Insureds are not covered under the terms of the Policy, but it must advance the Insureds' defense costs now, as required by the advancement provision.  *Accord Federal Ins. Co. v. Kozlowski*, 18 A.D.3d 33, 42 (N.Y. App. Div. 2005) (citing *Gon* with approval for the proposition that "insurers are required to make contemporaneous interim advances of defense expenses when coverage is disputed, subject to recoupment in the event it is ultimately determined no coverage was afforded").

For all these reasons, the Insureds have easily established a likelihood of success on their claim for advancement of defense costs.

2.   **Clear Blue's Failure to Advance Defense Costs Will Cause the Insureds Irreparable Harm**

"The failure to receive defense costs when they are incurred constitutes an immediate and direct injury," warranting a grant of injunctive relief. *WorldCom*, 354 F. Supp. 2d at 469 (granting preliminary injunction directing D&O insurers to advance defense costs). The negative impact on the Insureds' defense of the Underlying Proceedings cannot later be remedied by a money judgment against Clear Blue. "It is impossible to predict or quantify the impact on a litigant of a failure to have adequate representation" in defending a civil securities fraud action, or responding to an investigation by the SEC and a federal grand jury. *Id.* At stake is not simply a potential adverse judgment, but also possible "damage to reputation, the stress of litigation, and the risk of financial ruin—each of which is an intangible but very real burden." *Id.*

Importantly, California courts have observed that "proof of an insured's insufficient means should not be a prerequisite for obtaining an immediate defense against suits which potentially seek damages within the coverage of the policy." *Montrose Chem. Corp. v. Am. Motorists Ins. Co.*, 16 Cal. Rptr. 2d 516, 533 (Cal. Ct. App. 1993). While the Insureds need not establish penury to obtain injunctive relief, as explained in the Declaration of Ozy's defense counsel, they are, in fact, hard pressed to fund the ongoing and mounting costs of defending themselves on multiple fronts. Absent preliminary injunctive relief for specific performance of Clear Blue obligation to advance the Insureds' Defense Costs, the Insureds will suffer irreparable harm, including but not limited to the risk of an adverse outcome in the Underlying Proceedings (both civil and criminal) insofar as the Insureds' ability to mount an adequate defense of those proceedings is compromised. O'Brien Decl. ¶ 3, 10.

Moreover, the diversion of funds to legal expenses that ought to be covered by the Policy, has placed a severe strain on Ozy, and, in the absence of an order directing Clear Blue to honor its advancement obligation, "Ozy's ability to continue as a viable going concern will be significantly at risk." *Id.* ¶¶ 16-18.

### 3.     The Balance of Equities Tips Overwhelmingly in Favor of Insureds

There is no doubt that the equities tip overwhelmingly in favor of the Insureds.  "[T]he entire purpose of the duty to advance defense costs is to ensure that a policyholder has the insurance proceeds available to defend against an underlying action." *Braden Partners, LP v. Twin City Fire Ins. Co.*, No. 14-CV-01689-JST, 2017 WL 63019, at *3.  Absent a preliminary injunction, the Insured's contractual right to advancement is irretrievably lost, and their defense of serious civil and criminal proceedings would be irreparably hampered.

In the starkest possible contrast, the only possible harm or inconvenience to Clear Blue is economic.  "Courts have found that any prejudice to the insurer in having to pay defense costs while the underlying case is pending is outweighed by prejudice to the insured in having to fight a 'two-front war.'" *Zurich Am. Ins. Co. v. Omnicell, Inc.*, No. 18-CV-05345-LHK, 2019 WL 570760, at *6 (N.D. Cal. Feb. 12, 2019).  The Insureds in this case face not only civil but potentially criminal exposure.  A harm involving basic constitutional rights (such as the right to be represented by federal counsel in a criminal investigation) clearly outweighs purely economic consequences. *See, e.g.*, *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003).  Moreover, whatever economic harm Clear Blue could possibly suffer is only temporary. If facts established in the Underlying Proceedings ultimately support an argument that some or all of the Insureds are not entitled to coverage under the Policy, Clear Blue can pursue a claim for recoupment of the advanced funds.  Indeed, this is precisely the terms Clear Blue agreed to in the Policy's advancement provision.  In short, the potential economic harm to Clear Blue pales in comparison with the grave and irreparable harm faced by the Insureds in the absence of a preliminary injunction.

### 4.     An Injunction Is In The Public Interest

Finally, an injunction is necessary because it is against the public interest to allow insurers to abandon directors and officers faced with potential civil or criminal liability.  Providing defense costs "enhances the ability of for-profit and non-profit organizations to attract directors, trustees, and volunteers who otherwise might hesitate or decline to serve because of a fear of lawsuits and criminal

prosecutions." *Mt. Hawley Ins. Co. v. Lopez*, 215 Cal. App. 4th 1385, 1422 (Cal. Ct. App. 2013) (*citing WorldCom,* 354 F. Supp. 2d at 469); *Homestore, Inc. v. Tafeen* 888 A.2d 204, 211 (Del. 2005); Griffith, "Uncovering a Gatekeeper: Why the SEC Should Mandate Disclosure of Details Concerning Directors' and Officers' Liability Insurance Policies" 154 U. Pa. L. Rev. 1147, 1171 (2006).  The ability of corporations to attract talented individuals to serve on their boards of directors would be seriously diminished if D&O insurers such as Clear Blue could easily avoid their duty to advance defense costs by disputing coverage.

**B.      In The Alternative, The Court Should Award Partial Summary Judgment to the Insureds on the Issue of Advancement of Defense Costs**

In the alternative, the Court should grant partial summary judgment to the Insureds on the issue of advancement of defense costs.  Courts have awarded such relief at the outset of a coverage action, while deferring consideration of the insurer's coverage defenses until after the conclusion of the underlying proceedings.  *See Am. Motorists Ins. Co. v. Superior Ct.*, 68 Cal. App. 4th 864, 869 (Cal. Ct. App. 1998) (affirming "trial court's order" on summary judgment, "imposing a duty to defend," and "approv[ing] its decision to defer consideration of [insurer's] coverage defenses until after the underlying contamination actions were resolved"); *Braden Partners*, 2017 WL 63019, at *12-13 (granting partial summary judgment directing insurer to advance defense costs); *cf. WorldCom*, 354 F. Supp. 2d at 467 n.14 ("In the unique circumstance of an ongoing duty to pay defense costs, there should be very little difference between the legal standard imposed on an insured to win a partial motion for summary judgment to obtain such benefits, and the burden it carries to succeed on a preliminary injunction to achieve the same end.").

**C.      The Court Should Enter a Stay of Discovery Pending Resolution of the Underlying Proceedings**

This Court should grant a stay of discovery under the standard set forth in *Landis v. North American Co.*, 299 U.S. 248, 254 (1936), because the Insureds should not be required to fight a multi-front war against the parties to the Underlying Proceedings and their insurer. *See McGraw* 2014 WL 12573519, at *2  (granting a preliminary injunction for the advancement of defense costs and a stay

of discovery under *Landis* "because the resolution of the underlying litigation necessarily bears on the indemnification rights at issue in this action." Pursuant to *Landis*, courts considering a stay of discovery must weigh (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *See AIU Ins. Co. v. McKesson Corp.,* No. 20-CV-07469-JSC, 2021 WL 3565440, at *2-3 (N.D. Cal. Aug. 12, 2021). All factors weigh in favor of the Insured.

### 1. <u>Clear Blue Will Not Be Harmed By a Stay of Discovery</u>

The only potential harm to Clear Blue if a stay of discovery is granted is that it will be required to fulfill its contractual obligation to pay defense costs. As explained above, any prejudice to an insurer in having to pay defense costs while the underlying case is pending is outweighed by prejudice to the insured. "[D]elaying a determination of whether an insurer owes an insured party coverage does not substantially harm the insurer." *MS Amlin Corp. Member, Ltd. v. Bottini*, No. 20cv687-GPC(LL), 2020 WL 5966612, at *5 (S.D. Cal. Oct. 8, 2020).; *see also RLI Ins. Co. v. ACE Am. Ins. Co.*, No. 19-CV-04180-LHK, 2020 WL 1322955, at *4 (N.D. Cal. Mar. 20, 2020) (finding a stay of coverage litigation did not damage insurer because "advancing defense costs 'is part of an insurer's obligation and costs of doing business.'"). Furthermore, Clear Blue can seek reimbursement under the Policy in the event it is ultimately determined that the Insured's claims are not ultimately covered. *See Atain Specialty Ins. Co. v. 20 Parkridge, LLC,* No. 15-CV-00212-MEJ, 2015 WL 2226356, at *10 (N.D. Cal. May 11, 2015).

### 2. <u>The Insureds Would Suffer Grave Hardship if Discovery Were to Proceed</u>

The second *Landis* factor, concerning the hardship or inequity the insured may face, is informed by California law recognizing that litigation with the insurance company can prejudice the insured in the underlying proceedings for which it seeks coverage. *See AIU Ins. Co.,* 2021 WL 3565440, at *3. California law has recognized at least three such forms of prejudice: (1) the insurer

joining forces with underlying plaintiffs; (2) the insured being compelled to fight a two-front war; and (3) the insured being collaterally estopped from litigating adverse factual findings in the underlying action.  *See id.*, at *2–3.

The prejudice to insureds when insurers use discovery to ally themselves with underlying plaintiffs is so severe that the California courts mandate a stay of discovery where declaratory relief actions have overlapping factual issues with the underlying suit.  *See Great Am. Ins. Co. v. Superior Ct.*, 178 Cal. App. 4th 221, 235 (Cal. Ct. App. 2009); *see also Riddell, Inc. v. Superior Ct.*, 14 Cal. App. 5th 755, 765 (Cal. Ct. App. 2017); *Haskel, Inc. v. Superior Ct.*, 33 Cal App. 4th 963 (Cal. Ct. App. 1995) (imposing a stay of all discovery logically related to the underlying suit).  Here, the factual issues in the declaratory relief action and the Underlying Proceedings are not just overlapping but essentially coextensive.  Clear Blue grounds its rescission claim on the exact same factual allegations that are the subject of the Civil Action and the SEC and EDNY investigations.

Courts have recognized that "[a]nother sort of prejudice occurs when the insured is compelled to fight a two-front war, doing battle with the plaintiffs in the third party litigation while at the same time devoting its money and its human resources to litigating coverage issues with its carriers."  *AIU Ins. Co.*, 2021 WL 3565440, at *3.  Here, Clear Blue seeks to compel the Insured to fight a multi-front war against civil litigants, the SEC, a grand jury, and itself, all without its contractually assured Defense Costs.

And the Insureds would be prejudiced if they are "collaterally estopped from relitigating any adverse factual findings in the third party action."  *Bottini*, 2020 WL 5966612, at *7.  Given the extensive overlap between Clear Blue's allegations and the matters at issue in the Underlying Proceedings, the risk of prejudice from collateral estoppel is significant.  Moreover, because this case involves a federal criminal investigation, the Insureds face another serious form a prejudice:  they will not be able to participate in discovery, including giving sworn interrogatory responses and testifying at depositions, without potentially waiving their Fifth Amendment rights.

For all these reasons, the second Landis factor weighs heavily in favor of the Insureds.

**3.   The Orderly Administration of Justice Warrants a Stay**

Finally, "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law" mandates a stay.  *AIU Ins. Co.*, 2021 WL 3565440, at \*2.  A stay is warranted even where the factual and legal issues in the underlying proceeding and the coverage action are not exactly the same.  *See United Specialty Ins. Co. v. Meridian Mgmt. Grp., Inc*., No. 15-CV-01039-HSG, 2016 WL 1534885, at \*2 (N.D. Cal. Apr. 15, 2016) (*citing Leyva v. Certified Grocers, Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979) (holding the court's ability to enter a stay "does not require that the issues in such proceedings are necessarily controlling of the action before the court")).  Here, the Clear Blue action would burden this Court with litigating in this coverage action the factual allegations that are already at issue in the Civil Action.  A stay of discovery is warranted to avoid such duplicative litigation.

**IV.   CONCLUSION**

For the reasons explained above, the Court should enter a preliminary injunction, or alternatively grant partial summary judgment, directing Clear Blue to advance the Insureds' Defense Costs, and should also stay any discovery, including the Clear Blue Requests, pending the resolution of the Underlying Proceedings.

Respectfully Submitted,
HOGUET NEWMAN REGAL &
KENNY, LLP

/s/ *Bradley J. Nash*

_____
Bradley J. Nash
Emily Hogan-Long
Co-Counsel for Defendants, OZY
MEDIA, INC. and CARLOS WATSON