1
2
3
4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6                           SAN JOSE DIVISION

7

8    CLEAR BLUE SPECIALTY INSURANCE          Case No.   5:21-cv-08764-EJD
     COMPANY,
9                                            **ORDER GRANTING IN PART AND**
                    Plaintiff,               **DENYING IN PART MOTION FOR**
10                                           **PRELIMINARY INJUNCTION OR, IN**
            v.                               **THE ALTERNATIVE, PARTIAL**
11                                           **SUMMARY JUDGMENT, AND A STAY**
     OZY MEDIA, INC., et al.,                **OF DISCOVERY**
12
                    Defendants.              Re: ECF No. 51
13

14          Before this Court is Defendants and Counterclaimants Ozy Media Inc. and Carlos

15   Watson's Motion for Preliminary Injunction or, in the Alternative, Partial Summary Judgment,

16   and Order Granting a Stay ("Motion").  ECF No. 51.  The Court heard oral arguments on October

17   6, 2022.  For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN**

18   **PART** Defendants' requests for injunctive relief and a stay of discovery.

19   **I.      BACKGROUND**

20          The current dispute arises from an insurance policy issued by Plaintiff Clear Blue Specialty

21   Insurance Company ("Clear Blue") with Defendants Watson and Rao, and Defendant and

22   Counterclaimant Ozy Media, Inc. ("Ozy"), a small media company.[1]  Clear Blue initiated this

23   action on November 11, 2021 seeking declaratory relief that that Clear Blue owes no duty to

24   reimburse the costs of defense or indemnify Defendants under the policy.  Compl., ECF No. 1 ¶¶

25   _____

26   [1] The complaint also names Marc Lasry as a defendant.  On September 28, 2022, the parties
     stipulated that, to avoid the expense of litigating, Lasry is dismissed from the action and agrees to
27   be bound by any ruling entered by the Court.  ECF No. 70.
     Case No.: 5:21-cv-08764-EJD
28   ORDER GRANTING IN PART AND DENYING IN PART MOT. FOR PRELIM. INJ. OR, IN
     THE ALTERNATIVE, PARTIAL SUMM. J., AND A STAY OF DISCOVERY
                                              1

United States District Court
Northern District of California

1&2. Clear Blue alleges that it rescinded the policy on October 4, 2021 due to material misrepresentations or omissions made by Defendants in their application.

### A. The Renewal and Embroker Applications

On August 5, 2021, Ozy submitted an application for insurance to Clear Blue's Managing General Agent, Embroker Insurance Services LLC ("Embroker"), seeking a Directors & Officers ("D&O") Employment Practices Liability and Fiduciary Liability policy to replace their expiring policy issued by QBE Insurance. *Id.* ¶ 24. In support of its application for insurance renewal, Ozy submitted a copy of the QBE insurance Renewal Application signed by Samir Rao (Ozy's Chief Operating Officer, "COO") and dated August 3, 2021. *Id.* ¶¶ 25–26. It included a financial statement containing current and total assets, current and total liabilities, revenue, net income, and cash flow from operations. *Id.* ¶ 27. The application requires that the applicant inform the insurer in writing of any material changes in the answers to the questions in the application before the policy inception date. *Id.* ¶ 28.

Ozy also submitted a "Management Liability Application" signed by Rao to Embroker acting as Clear Blue's insurance agency. *Id.* ¶¶ 31–32. Clear Blue alleges that the 2020 total revenue and 2021 total revenue reported by Ozy in the Embroker Application materially differed from the investment amounts actually raised those years. *Id.* ¶¶ 33–35. Ozy answered "no" to application questions regarding whether Ozy or any person within the company has been involved in state or federal anti-trust litigation, has filed for bankruptcy (or anticipates initiating bankruptcy proceedings), or has been involved in any civil, criminal, or administrative proceeding alleging violation of any federal or state securities laws within the last three years. *Id.* ¶¶ 36–37. The Embroker Application provides that the policy will be voided in the event of any material misrepresentation or omission in the application or the submitted materials. *Id.* ¶ 39. It also states that facts or situations not disclosed in the Embroker Application shall be excluded from coverage, and the undersigned must notify the insurer of any changes to the information provided therein up until the effective date. *Id.*

Case No.: 5:21-cv-08764-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOT. FOR PRELIM. INJ. OR, IN THE ALTERNATIVE, PARTIAL SUMM. J., AND A STAY OF DISCOVERY

2

United States District Court
Northern District of California

1    Clear Blue quoted D&O insurance coverage to Ozy based on the responses in the

2    Embroker Application and the information provided in the Renewal Application as underwritten

3    by Embroker.  *Id.* ¶¶ 39–40.  It contains a proviso that it is subject to withdrawal or modification

4    should Embroker or its representatives become aware of any "new, corrected or updated

5    information."  *Id.* ¶ 41.  Clear Blue subsequently issued a D&O policy effective from August 25,

6    2021 until August 25, 2022.  *Id.* ¶ 42.

7        **B.    The Insurance Policy**

8        The policy covers loss as a result of a claim during the policy period from a "Wrongful

9    Act," defined as "any actual or alleged act, error, omission, misstatement, misleading statement,

10   neglect or breach of duty."  Decl. of Bradley J. Nash in Supp. of Mot. for Prelim. Inj. ("Nash

11   Decl."), ECF No. 52-1 Ex. 1 § II(T).  A "loss" encompasses "the amount that an Insured is legally

12   obligated to pay."  *Id.* § II(N).  The policy provides a $1 million D&O coverage limit for each of

13   the three separate insuring agreements: A. Non-Indemnifiable D&O Liability Coverage, B.

14   Indemnifiable D&O Coverage, and C. Entity Liability Coverage, "subject to a $25,000 per claim

15   retention under Coverages B and C."  Compl. ¶ 44.  It states the following:

16       A. Non-Indemnifiable Directors & Officers Liability
         We will pay Non-Indemnifiable Loss on behalf of the Insured
17       resulting from a Claim first made against the Insured during the
         Policy Period or any applicable Extended Reporting Period and
18       reported to Us pursuant to the terms of this Policy, for a Wrongful Act
         by the Insured.

19       B. Indemnifiable Directors & Officers
20       We will pay Loss on behalf of the Insured that such Insured has
         indemnified the Team Members resulting from a Claim first made
21       against the Team Members during the Policy Period or any applicable
         Extended Reporting Period and reported to Us pursuant to the term of
22       this Policy, for a Wrongful Act by the Team Members.

         C. Entity Liability
23       We will pay Loss on behalf of the Insured resulting from a Claim first
         made against such Insured during the Policy Period or any applicable
24       Extended Reporting Period and reported to Us pursuant to the term of
         this Policy, for a Wrongful Act.

25   Nash Decl. § I(A)–(C).  Clear Blue does not assume any duty to defend any claim under the

26   policy.  *Id.* § VIII(A).  However, Clear Blue is obligated to advance defense costs "on a quarterly

27   Case No.: 5:21-cv-08764-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART MOT. FOR PRELIM. INJ. OR, IN
     THE ALTERNATIVE, PARTIAL SUMM. J., AND A STAY OF DISCOVERY

3

United States District Court
Northern District of California

basis" that "have [been] incurred in connection with Claims made against the Insured and covered Venture Capital Sponsor, prior to disposition of the claim."  *Id.* § VIII(C).

Section XIV of the policy further provides that Ozy "represent[s] and acknowledge[s] that the statements and information contained in the Application are true, accurate, and complete, and are the basis of this policy and are to be considered incorporated into and constituting a part of this policy."   Pursuant to Sections XVII and XIV, Clear Blue has the right to rescind the policy where "the Application contains misrepresentations or omissions that materially affect the acceptance of the risk or the hazard assumed by [the insurer]," in which case:

> [The] [p]olicy shall be void ab initio and shall not afford coverage for any Insured who knew on the inception date of this Policy the facts that were not truthfully disclosed in the Application, whether or not the Insured knew the Application contained such misrepresentation or omission.

Nash Decl. § XIV.  However, "[f]or the purpose of determining coverage, knowledge possessed by. . . the Insured Organization's Chief Executive Officer, functionally equivalent, or anyone signing the Application shall be imputed" to the insured organization, Ozy, but not to any "Team members," meaning executives and employees.  *Id.* §§ I (Coverage Part), II(M), II(S) (General Terms & Conditions).

### A.       The Underlying Proceedings

Approximately two months after the insurance became effective, on October 4, 2021, Defendant LifeLine Legacy Holdings, LLC ("LifeLine") filed a complaint in the Northern District of California against Defendants Ozy and Rao alleging violations of federal securities laws, violation of the California Corporations Code, and fraud by concealment arising from a stock purchase agreement between LifeLine and Ozy.  *Id.* ¶¶ 18, 45–46; *see Lifeline Legacy Holdings, LLC v. Ozy Media, Inc. et al.*, No. 5:21-cv-07751 (N.D. Cal. 2021).  LifeLine alleges that at the time of entering into the investment agreement, Ozy and Rao were aware of an unlawful incident whereby Rao fraudulently impersonated an executive of YouTube in a phone meeting with Goldman Sachs. *Id.* ¶ 46.  The complaint alleges that on February 2, 2021, Carlos Watson (Ozy's Chief Executive Officer, "CEO") and Rao, who held himself out as a YouTube executive, had a

United States District Court
Northern District of California

1  conference call with representatives of Goldman Sachs. *Id.* ¶¶ 17–18. During this meeting,

2  Watson and Rao allegedly reported that Ozy has been successful on the YouTube platform in

3  order to convince Goldman Sachs to invest in Ozy. *Id.* The complaint alleges that Goldman

4  Sachs discovered that Rao was impersonating a YouTube executive during the call and refused to

5  proceed with its investment. *Id.* ¶ 46.

6      Around the same time as the initiation of the LifeLine litigation, Ozy received an

7  investigatory subpoena *duces tecum* and a grand jury subpoena *duces tecum* from the Securities

8  Exchange Commission ("SEC") and the Eastern District of New York ("EDNY") (collectively the

9  "Underlying Proceedings") relating to the same alleged incident with Goldman Sachs and

10  potential investors.[2] Compl. ¶¶ 48–49; Mot at 2. Ozy and Rao provided notice of the claims

11  asserted in the Lifeline litigation and the investigative subpoenas on October 30, 2021. Compl. ¶

12  50.

13      **B.      The "Notice of Cancellation" Letter**

14      On September 25, 2021, the New York Times published an article about the Goldman

15  Sachs incident. Compl. ¶ 23. After learning about the Goldman Sachs incident, on October 6,

16  2021—approximately two days after the LifeLine litigation was initiated—Clear Blue tendered a

17  letter entitled "Notice of Cancellation of the Policy" through Embroker purporting to rescind the

18  policy and returning the paid premiums to Ozy. *Id.* ¶ 52. Clear Blue bases its rescission on its

19  belief that Ozy and its executives concealed material facts arising from the alleged attempt to

20  defraud investors (the Goldman Sachs incident) and governmental investigations arising from that

21  incident. *Id.* ¶¶ 56–58. Clear Blue alleges that Ozy misrepresented the total revenue and

22  fundraising in its application. *Id.* ¶¶ 33–36, 55. Clear Blue also alleges that "Ozy misrepresented

23  that it had not been the subject of any civil, criminal, or administrative proceedings alleging

24  violation of federal or state securities laws in the prior 3 years," and that Ozy "had no intention of

25

26  [2] The *Lifeline* litigation was voluntarily dismissed by plaintiff after the filing of the instant motion.
*See Lifeline Legacy Holdings, LLC v. Ozy Media, Inc. et al.*, No. 5:21-CV-07751, ECF No. 81

27  (N.D. Cal. 2021).

Case No.: 5:21-cv-08764-EJD

28  ORDER GRANTING IN PART AND DENYING IN PART MOT. FOR PRELIM. INJ. OR, IN
THE ALTERNATIVE, PARTIAL SUMM. J., AND A STAY OF DISCOVERY

1    filing for bankruptcy in the next year." *Id.* ¶ 55.

2    　　　On October 7, 2021, Marc Lasry, Ozy's former Chairman of its Board of Directors, sought

3    coverage under the policy for his individual defense costs incurred for his participation in the

4    governmental investigations into Ozy. *Id.* ¶ 51. Shortly after, on October 21, 2021, Ozy and Rao

5    noticed Clear Blue with the claims asserted by LifeLine and the investigative subpoenas. *Id.* ¶ 50.

6    　　　**C.**　　**The Rescission Action & Procedural Background**

7    　　　Plaintiff-insurer Clear Blue initiated action on November 11, 2021 seeking a declaration

8    that the insurance contract between the parties is rescinded or otherwise void *ab initio* based on

9    Ozy's alleged material misrepresentations in its application for insurance. In the alternative, Clear

10   Blue seeks a declaration that it owes no duty to indemnify or to reimburse the legal defense costs

11   to Defendants' beneficiaries of the insurance policy. *Id.* ¶¶ 60–62, 63–65. Ozy counterclaimed

12   for specific performance, breach of contract, preliminary, and permanent injunction, asserting that

13   Clear Blue breached the policy by refusing to advance defense costs for the underlying

14   proceedings. Answer with Counterclaims, ECF No. 49 ¶¶ 38–58.

15   　　　On January 31, 2022, Defendants Ozy and Watson (together, the "Insureds") joined by

16   Rao filed a motion to dismiss, which the Court denied. *See* ECF Nos. 24, 32, 64. On July 12,

17   2022, the Insureds filed the instant motion requesting a court order directing Clear Blue to advance

18   defense costs and stay discovery pending the resolution of the underlying proceedings. Rao joined

19   in the motion to stay discovery. ECF No. 60. Clear Blue initially opposed the Insureds' request.

20   Pl. Clear Blue Specialty Ins. Co.'s Opp'n to Ozy Media, Inc. and Carlos Watson's Mot. for

21   Prelim. Inj., Partial Summ. J., and to Stay Discovery ("Opp'n"), ECF No. 65. After briefing and

22   oral arguments were complete, Clear Blue withdrew its opposition to Defendants' request to stay

23   discovery in light of recent developments. Clear Blue Specialty Ins. Co.'s Notice of Withdrawal

24   of Opp'n to Request for Stay of Discovery Only ("Notice of Non-Opp'n"), ECF No. 79.

25   　　　Since the filing of this motion, the SEC filed a securities fraud complaint against the

26   Insureds and federal criminal actions have been filed against Ozy and its executives, including

27

28

Case No.: 5:21-cv-08764-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOT. FOR PRELIM. INJ. OR, IN
THE ALTERNATIVE, PARTIAL SUMM. J., AND A STAY OF DISCOVERY
6

United States District Court
Northern District of California

United States District Court
Northern District of California

Rao and Watson, in EDNY.  *See* Notice of Non-Opp'n.  [3]  In its notice of non-opposition, Clear Blue notes that on February 21, 2023, Rao pleaded guilty to conspiracy to commit securities fraud, conspiracy to commit wire fraud, and aggravated identity theft.  *Id.* at 4.  Watson and Ozy were also indicted on February 22, 2023 and charged with conspiracy to commit securities fraud and conspiracy to commit wire fraud, and Watson was also charged with aggravated identity theft.  *Id.* at 5.  In addition, the SEC filed a securities fraud complaint against Ozy, Rao, and Watson asserting claims of violation of Securities Act, violation of Exchange Act, as well as aiding and abetting.  *Id.* at 5–6.

## II.      LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  To secure a preliminary injunction, a movant must make a clear showing that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest.  *Winter*, 555 U.S. at 20–22; Fed. R. Civ. P. 65.  The moving party bears the burden of proving these elements.  *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009).  A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter*, 129 S.Ct. at 376.  This "clear showing" requires plaintiff to "demonstrate that irreparable injury is *likely* in the absence of an injunction."  *Id.* at 375 (emphasis in original).  The Ninth Circuit has held that courts may balance "the elements of the preliminary injunction test . . . so that a stronger showing of one element may offset a weaker showing of another."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (internal quotation marks omitted).

Awarding a preliminary injunction is a matter within the court's discretion. *See Miss*

---

[3] Specifically, Ozy and its executives, Watson, Rao, and Suzee Han have been named as defendants in three separate federal criminal actions in New York, as well as a civil action filed by the SEC.  Han is Ozy's Chief of Staff who is not a named defendant in this action.

1    *Universe, Inc. v. Flesher*, 605 F.2d 1130, 1132–33 (9th Cir. 1979). "In deciding a motion for a

2    preliminary injunction, the district court is not bound to decide doubtful and difficult questions of

3    law or disputed questions of fact. *Nelson*, 799 F.2d at 551 (quotations and citations omitted). Any

4    order of an injunction only binds a party who has received actual notice. Fed. R. Civ. P. 65(d)(2).

5    **III.    DISCUSSION**

6    In the present motion for preliminary injunction, the Insureds seek an order directing Clear

7    Blue to "comply with its obligation to advance the Insured's Defense Costs" which includes

8    attorney's fees and expenses under the policy. Mot. at 2; ECF No. 1-1 § II(E). Insureds argue

9    that, notwithstanding Clear Blue's recission of the policy, Clear Blue must advance defense costs

10   as they are incurred under the policy's "Advancement of Defense Costs" provision and defer

11   coverage defenses in this action until after the resolution of the Underlying Proceedings subject to

12   a potential claim for recoupment after settlement of judgment. In the alternative, Insureds ask the

13   Court to award partial summary judgment on the issue of advancement of defense costs.

14   Defendants also seek a stay of discovery pending resolution of the Underlying Proceedings.

15   **A.    Preliminary Injunction to Advance Defense Costs**

16   **1.    Likelihood of Success on the Merits**

17   To satisfy the first prong of a preliminary injunction, "Plaintiffs need not show positively

18   that they will prevail on the merits. They need only prove a 'fair chance of success on the

19   merits.'" *Bolbol v. Ringling Bros. & Barnum & Bailey Circus*, No. 04-CV-00082-JW, 2004 WL

20   7338786, at *3 (N.D. Cal. Aug. 24, 2004) (quoting *Johnson v. Cal. State Bd. of Acct.*, 72 F.3d

21   1427, 1429 (9th Cir. 1995)). "[W]here there are only 'serious questions going to the merits'—that

22   is, less than a 'likelihood of success on the merits'—a preliminary injunction may still issue so

23   long as 'the balance of hardships tips sharply in the plaintiff's favor' and the other two factors are

24   satisfied." *Dixon v. Partida*, No. 22-CV-04461-JST, 2022 WL 18956527, at *4 (N.D. Cal. Dec. 2,

25   2022) (quoting *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018)).

26

27

28

1

2

3

United States District Court
Northern District of California

### a.     Waiver of the Right to Rescind

As an initial matter, the Insureds challenge whether Clear Blue rescinded the policy. Referring to Clear Blue's "Notice of Cancellation of the Policy" letter, the Insureds assert that Clear Blue waived its right to rescission by electing to "cancel" the policy.[4]  Defs. Ozy Media, Inc. and Carlos Watson's Mot. to Dismiss ("Mot. to Dismiss"), ECF No. 24 at 13.  "In general, to constitute a waiver [in the context of insurance contracts], there must be an existing right, a knowledge of its existence, an actual intention to relinquish it, or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished."  *Klotz v. Old Line Life Ins. Co. of Am.*, 955 F. Supp. 1183, 1186 (N.D. Cal. 1996), *aff'd*, No. 97-CV-15280, 1998 WL 391421 (9th Cir. June 11, 1998).

The Insureds argue that Clear Blue elected to cancel the policy on October 6, 2021.  They rely on the fact that the title of the letter references "cancellation" of the policy as proof that Clear Blue intended to cancel the policy rather than rescind it.  The Insureds contend that Clear Blue was aware of the distinction between rescission and cancellation since Clear Blue's own policy treats cancellation and recission differently.  *Compare* ECF No. 1-2, Section XVII ("Rescission") *and* Section XIX ("Cancellation").  According to the Insureds, Clear Blue's cancellation nevertheless fails because Section XIX of the policy limits cancellation to non-payment of the premium, and Clear Blue does not allege the Insureds have failed to make any premium payments.

Notwithstanding the letter's title, Clear Blue asserts that the letter is substantively a rescission because it informs the Insureds that the policy is voided based on material

---

[4] The Insureds previously raised this argument in their motion to dismiss, which was decided after the Insureds filed the instant motion.  *See* ECF No. 24.  In the motion to dismiss the Insureds argue that Clear Blue's letter was a cancellation of the policy and not a rescission, and in cancelling the policy Clear Blue had waived its right to rescind.  The Court denied the motion to dismiss, stating that "[i]nsofar as Clear Blue has pled factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, the Court finds that Clear Blue states a plausible claim for declaratory relief that the contract has been rescinded." Order Den. Defs. Ozy Media, Inc. and Carlos Watson's Mot. to Dismiss, ECF No. 64 at 7 (quotations omitted).  In the motion for preliminary injunction briefing, the parties incorporate their waiver arguments.  Because the Court did not make any findings on the merits as to whether Clear Blue elected to cancel or rescind the policy, the Court will consider the parties arguments in assessing the likelihood of success on the merits.

1    misrepresentations or omissions in the application and all paid premiums were returned to the

2    Insureds pursuant to Cal. Civ. Code § 1691.  Compl. ¶¶ 52–59.  To the extent the title caused any

3    confusion, Clear Blue contends that the filing of this action one month later seeking declaratory

4    relief that the policy is rescinded resolved any doubt regarding its intentions.  It also asserts that

5    the filing of the complaint alone would be sufficient to exercise Clear Blue's right to rescind.

6           The content of the letter complies with Cal. Civ. Code § 1691; it informs the Insureds of

7    the facts which entitle it to rescind (i.e., misrepresentations or omissions in the application) and

8    restores the benefits received under the contract (i.e., the premiums).[5]  The Insureds cite to

9    *DuBeck* in support of their argument that Clear Blue elected to cancel the policy, but the case

10   supports a finding that Clear Blue rescinded the policy.  *DuBeck v. Cal. Physicians' Serv.*, 234

11   Cal. App. 4th 1254 (2015).  In *DuBeck*, the appellate court concluded that the insurer had elected

12   to cancel the policy.  The insurer sent a letter notifying appellant that "rather than rescind[ing] the

13   coverage completely, your coverage was terminated prospectively and ended effective today" and

14   informed her that she had the right to have any claims covered for services incurred before the

15   date of termination.  *Id.* at 1259–60.  The trial court concluded that the insurer rescinded the

16   policy.  *Id.* at 1263.  The appellate court reversed, however, finding that the insurer had elected to

17   cancel the policy and that the insurer's actions were "wholly inconsistent with the assertion of its

18   known right to rescind."  *Id.* at 1265–66.  The appellate court further noted that the insurer had not

19   returned the paid premiums, and "[h]ad Blue Shield rescinded the policy, it would have been

20   required to return to appellant the premiums she had paid."  *Id.* at 1267.

21          Here, Clear Blue's letter and subsequent conduct are distinguishable.  Frist, while the letter

22   is in fact entitled "notice of cancellation," the Insureds do not allege that it contains language

23   expressly stating that it is not a rescission like in *DuBeck*.  The Insureds do not dispute that the

24   letter informs the Insureds that the policy is voided based on material misrepresentations or

25

26   _____

27   [5] Neither party has exhibited the letter for the Court's review, but there appears to be no
     disagreement as to the letter's contents.

28   Case No.: 5:21-cv-08764-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOT. FOR PRELIM. INJ. OR, IN
     THE ALTERNATIVE, PARTIAL SUMM. J., AND A STAY OF DISCOVERY

United States District Court
Northern District of California

1    omissions.  Second, and unlike *DuBeck*, Clear Blue's return of the paid premiums is a clear

2    indication of its intent to rescind the policy and complies with California law.  Furthermore, Clear

3    Blue does not allege that the Insureds failed to make premium payments—a precursor to canceling

4    the policy pursuant to Section XIX, which provides that cancellation results in the return of

5    *unearned* premiums.  Clear Blue subsequently filed this action to rescind the policy effectively

6    notifying the Insureds of the rescission.  *Resure, Inc. v. Superior Ct.*, 42 Cal. App. 4th 156, 49 Cal.

7    Rptr. 2d 354 (2d Dist. 1996); *see also Wong v. Stoler*, 237 Cal. App. 4th 1375, 1387 (2015)

8    (finding that the rescinding party served notice of rescission upon serving the complaint), *as*

9    *modified on denial of reh'g* (June 23, 2015).

10        Accordingly, it is unlikely that the Insureds will successfully assert that Clear Blue waived

11    its right to rescind the policy.

12                              **b.      Rescission of the Policy**

13        The pertinent legal question before this Court is whether an insurer is contractually

14    obligated to advance defense costs after the insurer has rescinded the policy based on alleged

15    material misrepresentations or omissions before a court has determined the propriety of the

16    rescission.  The parties reach different conclusions: Clear Blue asserts that all obligations are

17    extinguished under the policy upon an insurer's unilateral rescission and the Insureds contend that

18    an insurer must carry out their contractual obligations under the policy until a court conclusively

19    establishes the insurer's right to rescind.

20        Under California law insurers are permitted to rescind a policy when an insured has

21    concealed or misrepresented material facts in its application for insurance.  Cal. Ins. Code §§ 331,

22    359; *TIG Ins. Co. of Mich. v. Homestore, Inc.*, 137 Cal. App. 4th 749, 755–56 (2006).  Under Civil

23    Code § 1691, a contracting party effectuates unilateral rescission of a policy "upon discovering the

24    facts which entitled him to rescind" once the rescinding party gives notice of the recission of the

25    policy and either restores or offers to restore any value (i.e., premiums) received.  Cal. Civil Code

26    § 1691(a)–(b).  Accordingly, "[w]here grounds for rescission exist and the insurer *properly*

1    exercises its right to rescind, the insured's contract rights are extinguished *ab initio* (as if the

2    policy had never existed)."  *Atmel Corp. v. St. Paul Fire & Marine*, 426 F. Supp. 2d 1039, 1044

3    (N.D. Cal. 2005) (emphasis added); *accord Harrison v. Conn. Mut. Life Ins. Co.*, 771 F. Supp.

4    1053, 1056 (N.D. Cal. 1991), *aff'd*, 977 F.2d 589 (9th Cir. 1992) ("Where the procedural

5    prerequisites of section 1691 are met, and there is a valid substantive ground for rescission,

6    unilateral rescission occurs.  It is not necessary to follow with a lawsuit in order to effectuate the

7    rescission.").  "When a party gives notice of rescission, it has effected the rescission, and any

8    subsequent judicial proceedings are for the purpose of confirming and enforcing that rescission."

9    *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1322 (9th Cir. 1998), *as amended on denial of*

10   *reh'g and reh'g en banc* (June 15, 1998).  A rescinded policy is deemed void *ab initio* as of the

11   date of filing of the rescission action and the rescission will avoid liability even on pending claims.

12   *Sogomonian*, 198 Cal. App. 3d at 182.  The rescinding party bears the burden of proving the

13   misrepresentation by clear and convincing evidence.  *Thompson v Occidental Life Ins. Co.*, 9 Cal

14   3d 904, 919 (1973).

15          According to the Insureds, Clear Blue must advance defense costs prior to the disposition

16   of the Underlying Proceedings, subject to potential recoupment at the conclusion of the

17   proceedings if Clear Blue can prove a valid basis for rescission, i.e., establish that the Insureds had

18   knowledge of misrepresentations or omissions in the insurance application.  Mot. at 15–16.  The

19   Insureds assert that they have a clear likelihood of success on the merits for their claim for

20   advancement of defense costs because, notwithstanding the rescission, California law requires an

21   insurer to cover all "potentially" covered claims and here the Underlying Proceedings fall squarely

22   within the scope of coverage.  Mot. at 3; *see Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643,

23   658, 665–66 (2005).

24          Clear Blue does not dispute that the policy provides for the advancement of defense costs

25   in the Underlying Proceedings prior to their disposition.  However, Clear Blue disagrees with the

26   Insureds' interpretation of California law; Clear Blue argues that case law is instructive that an

27

28

1    insurer is not obligated to advance defense costs "unless and until" the rescission is set aside, in

2    which case the court may determine that the insurer is obligated to pay defense costs under the

3    policy.  Opp'n at 14 (citing to *Atmel*, 426 F. Supp. 2d at 1044).

4         It is undisputed that Clear Blue sent Ozy a letter through its agent Embroker entitled

5    "Notice of Cancellation of the Policy."  Compl. ¶ 52.  Clear Blue alleges that the letter rescinded

6    the Policy and that it subsequently returned the paid premiums on October 6, 2021, effecting the

7    rescission.  *Id.*  Clear Blue then initiated this action for rescission and declaratory relief.  Clear

8    Blue therefore asserts that it cannot be liable to pay defense costs because the recission renders the

9    policy unenforceable from the outset.  Opp'n at 14, 16.  Clear Blue suggests *Sogomonian* and

10   *Atmel* are instructive as to this issue.  *Imperial Cas. & Indem. Co. v. Sogomonian*, 198 Cal. App.

11   3d 169 (Ct. App. 1988); *Atmel*, 426 F. Supp. 2d at 1044.  The Court addresses each case in turn.

12        Clear Blue argues that *Sogomonian* requires a court to address the rescission before

13   considering contractual obligations.  198 Cal. App. 3d 169.  In *Sogomonian*, an insurer filed an

14   action seeking recission of an insurance policy based on misrepresentations in the insurance

15   application.  *Id.* at 174.  Defendants, the insureds, cross-complained for damages, alleging that the

16   insurer breached the insurance policy and the covenant of good faith and fair dealing and violated

17   the provisions of Insurance Code § 790.03(h).  *Id.*  Defendants conceded that certain statements in

18   their application were untrue or incorrect but disputed whether the misrepresentations were

19   material.  *Id.* at 176.  The trial court found that the insurer was entitled to rescission, entering

20   summary judgment in favor of the insurer and granting judgment against defendants on their

21   cross-complaint.  *Id.*  On appeal, the California Court of Appeals affirmed the trial court's

22   conclusion that defendants made false material statements in their application before considering

23   defendants claim under § 790.03.  *Id.* at 182.  The appellate court rejected defendants' argument

24   that their right to recover damages for violation of § 790.03 "transcends rescission of the policy."

25   *Id.* at 183.  The appellate court noted the difference between disputes over coverage, where "there

26   still remains viable the underlying relationship of the insurer-insured" from which the court can

27

28   ORDER GRANTING IN PART AND DENYING IN PART MOT. FOR PRELIM. INJ. OR, IN
     THE ALTERNATIVE, PARTIAL SUMM. J., AND A STAY OF DISCOVERY

determine what duties are owed, i.e., that an insurer could still owe a duty to the insured under §

790.03, unlike with a rescission where the parties are restored to their former positions. *Id.* at 184.

Thus, the court held that "upon rescission of a policy of insurance, based upon concealment or

misrepresentation, all rights of the insured thereunder . . . are extinguished, including the right or

standing to prosecute a claim against the insurer for violation of Insurance Code section 790.03,

subdivision (h)." *Id.* at 184–85.  Consequently, the *Sogomonian* defendants could not assert a

claim for violation of § 790.03. *Id.* at 185.

The facts in *Atmel* more closely resemble this action.  *Atmel* specifically addressed whether

an insurer has a duty to defend after recission of the policy where the insured disputed the

propriety of the rescission.[6] *Id.*  After the conclusion of the underlying lawsuit, the insureds filed

the action in *Atmel* seeking declaratory relief against the insurer for breach of contract, breach of

the implied covenant of good faith and fair dealing, and damages. *Id.* at 1042.  The insurer

counterclaimed, alleging in part misrepresentation and concealment and raising rescission as an

affirmative defense. *Id.*  The insured moved for partial summary judgment on the issue of whether

the insurer violated its duty to defend the insured in the underlying litigation. *Id.* at 1043.  The

Honorable Judge Illston distinguished California cases where disputes arose over the scope of

coverage versus disputes regarding the underlying validity of the policy. *Id.*  The cases in the

former category presumed the existence of a valid contract, in which case the courts have found a

duty to defend "even if coverage is ultimately found lacking." *Id.* at 1043–44.  In *Atmel*, however,

the insurer unilaterally rescinded the agreement which would render the contract unenforceable

from the outset. *Id.* at 1043.  Plaintiff argued that the insurer was nonetheless obligated to assume

---

[6] The policy at issue does not impose a duty to defend, it imposes a duty to pay the costs of
defending covered claims.  Courts recognize that these duties are "conceptually distinct."  *United
Farm Workers of Am. v. Hudson Ins. Co.*, No. 1:18-CV-0134-JLT, 2019 WL 1517568, at *10–11
(E.D. Cal. Apr. 8, 2019); *see also Olympic Club v. Underwriters at Lloyd's London*, 991 F.2d 497,
502 (9th Cir. 1993); *Braden Partners, LP v. Twin City Fire Ins. Co.*, No. 14-CV-01689-JST, 2017
WL 63019, at *11 (N.D. Cal. Jan. 5, 2017).  In this case, however, an insurer's rescission of the
policy would presumably have the same effect on the duty to defend and the duty to advance
litigation costs—both would be extinguished.

United States District Court
Northern District of California

United States District Court
Northern District of California

defense costs "until it could conclusively establish its right to rescind." *Id.* The court, however, disagreed. Judge Illston concluded that "case law, Civil Code § 1691, and the Insurance Code suggest that there is no duty to defend if an insurer has unilaterally rescinded a policy *unless and until the rescission has been set aside*." *Id.* at 1044 (emphasis added).

Judge Illston then turned to plaintiff's claim that the insurer breached its obligation to defend plaintiff in the underlying litigation. The insurer allegedly rescinded the policy based on misrepresentation and concealment of material facts where plaintiff failed to disclose any "claims or occurrences that may give rise to claims for the prior 5 years" in plaintiff's general liability application. *Atmel*, 426 F.Supp. 2d at 1041–42. The court reasoned that "[u]nless and until the Court concludes that defendant's recission was improper, it is premature to evaluate whether defendant breached any obligations under the policy." *Id.* at 1046. The court specifically addressed *Sogomonian*, noting that "[t]he court rejected the defendants' argument, similar to plaintiff's position here, that the insurance policy had statutory obligations notwithstanding a rescission." *Id.* at 1044. *Atmel* held that the disputed facts surrounding the propriety of the recission precluded summary judgment in favor of the insured on a claim that insurer violated its duty to defend. *Id.* at 1046.

Like in *Atmel*, the Insureds here have challenged the validity of the insurer's rescission and contend that their claims are otherwise covered by the policy but-for a valid rescission, and therefore Clear Blue must pay defense costs as incurred until this rescission action can be resolved (after the conclusion of the Underlying Proceedings). The Insureds attempt to distinguish *Atmel* from the instant action based on the procedural posture of the underlying actions, arguing that *Atmel* involved a settled lawsuit while the Underlying Proceedings in this action are still pending. Reply at 6. This argument is unavailing. *Atmel* did not premise its decision on the fact that the underlying litigation had concluded. Both *Atmel* and *Sogomonian* suggest that where an insurer rescinds an insurance policy based on alleged material misrepresentations or omissions, a finding as to the propriety of the rescission is a precursor to determining whether there has been a breach

1    of contractual duties.  Here, it is undisputed that the parties' policy requires the advancement of

2    defense costs "on a quarterly basis" and "prior to the disposition of such a claim."  Nash Decl. §

3    VIII(C).  However, this duty depends on the existence of a valid insurance policy.  Clear Blue

4    asserts to have rescinded the policy.  Following *Atmel*, "[i]f this is true, and [the insurer] was

5    entitled to rescission, then the legal duty to defend"—or in this case, the duty to advance defense

6    costs—"was never triggered."  *Atmel*, 426 F.Supp. 2d at 1046.

7           The Insureds contend that the Court should not allow Clear Blue to "escape its express

8    contractual duty" to pay defense costs and that doing so would render the duty "illusory" if

9    insureds must wait for a determination on coverage before obtaining payment under a policy.[7]

10   Mot. at 16.  The *Sogomonian* court addressed this very argument—later echoed in *Atmel*—

11   reasoning that recission of a policy does not mean that insurance policies "can, with impunity, be

12   avoided or delayed by assertion of a claim for rescission. . . . Where no valid ground for rescission

13   exists, the threat or attempt to seek such relief may itself constitute (1) a breach of the covenant of

14   good faith and fair dealing which is implied in the policy and/or (2) the commission of one or

15   more of the unfair claims settlement practices proscribed by Insurance Code section 790.03,

16   subdivision (h)."  198 Cal. App. 3d at 185 n.16 (citation omitted).

17          The Insureds also direct the Court to follow *Gon*.  *Gon v. First State Ins. Co.*, 871 F.2d 863

18   (9th Cir. 1989).  However, *Gon* does not compel a different result.  *Gon* addresses (1) whether a

19   policy imposed a duty to defend or duty to advance fees as incurred and (2) apportionment of legal

20   expenses between covered and uncovered claims at the time the costs were incurred or at the

21   conclusion of the underlying action.  In *Gon*, the insurer refused to defend or pay legal expenses of

22   former officers and directors under the D&O liability policy and subsequently notified the

23   insureds that it was rescinding the policy based on misrepresentations in the application.  *Id.* at

24

25   _____

26   [7] Citing to *Braden*, the Insureds argue "the duty to advance defense costs would be illusory if the insured had to wait for a determination of actual coverage to obtain the necessary funding for its defense."  *Braden*, 2017 WL 63019, at *11.  However, *Braden* involved a coverage dispute where the validity of the policy was not at issue.

27   Case No.: 5:21-cv-08764-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART MOT. FOR PRELIM. INJ. OR, IN THE ALTERNATIVE, PARTIAL SUMM. J., AND A STAY OF DISCOVERY

16

United States District Court
Northern District of California

864.  The insurer filed a complaint for recission seeking declaratory and injunctive relief, and the insureds subsequently filed an action seeking declaratory and injunctive relief as well as damages arising from the insurer's breach of the contract.  *Id.* at 864–65.  The district court held the rescission action in abeyance and proceeded with the insureds' case.  *Id.*  On the insureds' motion for summary judgment, the district court granted the insured's request and found that the insurer had a duty to defend and a duty to advance defense costs as incurred in an ongoing litigation with the Federal Savings and Loan Insurance Company.  *Id.* at 865.  On appeal the Ninth Circuit affirmed in part and reversed in part, finding that the district court erred in concluding that the insurance policy imposed a duty to defend but held that the insurers were obligated to pay defense costs as incurred, subject to apportionment and reimbursement for defense of uncovered claims or persons after settlement or judgment in the underlying litigation.  *Id.* at 867–68.  Absent from the Ninth Circuit's opinion is any discussion of the insurer's rescission.

The Insureds suggest that, in electing to hold the rescission action in abeyance while proceeding with the Insured's action for declaratory and injunctive relief, *Gon* contemplates contemporaneous payment of defense costs pursuant to the policy notwithstanding the rescission.  However, *Gon* does not discuss or analyze the rescission; its holding focuses on allocation of defense costs according to covered and uncovered claims.  The Ninth Circuit found that where the allocation of covered and uncovered claims could not be easily distinguished, the insurer must pay legal expenses as incurred pursuant to the policy.  *Gon* does not compel the advancement of defense costs under a rescinded policy.

Accordingly, following *Atmel*, where insureds challenge the propriety of a unilateral rescission of a policy and the rescission appears facially proper, the insurer has no duty to advance defense costs pursuant to the policy unless and until the rescission is set aside as improper.

### c.    Imputation of Knowledge

The Insureds argue that Clear Blue has contractually limited rescission such that knowledge of the misrepresentations or omissions does not impute to all parties.  Mot. at 7.

Section 650 of the California Insurance Code, which applies to D&O policies, states a "rescission shall apply to all insureds under the contract, including additional insureds, *unless the contract provides otherwise*."  Clear Blue may only rescind the policy pursuant to Section XIV of the General Terms & Conditions.  Nash. Decl. Ex. 1 § XVII.  The Insureds argue that this section voids the policy only as to certain individuals with knowledge of the concealed or misrepresented information.  They assert that Clear Blue must therefore establish each Insureds' knowledge of the alleged misrepresentations or omissions in the application.  Mot. at 15.

Turning to the policy, Section XIV relies on the truthfulness of the responses to the application and reads:

> If the Application contains misrepresentations or omissions that materially affect the acceptance of the risk or the hazard assumed by Us, this Policy *shall be void ab initio* and shall not afford coverage for *any* Insured who knew on the inception date of this Policy the facts that were not truthfully disclosed in the Application, whether or not the Insured knew the Application contained such misrepresentation or omission.
>
> For the purposes of determining coverage, knowledge possessed by:
>
> > 1. Any Team Member shall *not* be imputed to any other Team Member; and
> >
> > 2. the Insured Organization's Chief Executive Officer, functionally equivalent, or anyone signing the Application shall be imputed to all Insureds *other than Team Members*.

Nash. Decl. § XIV (emphasis added).[8]  A "Team Member" refers to any executive or employee.  *Id.* § II(S).  In other words, any executive or employee cannot impute knowledge to another executive or employee.  Only the CEO, functional equivalent, or signatory may impute knowledge to the insured organization or its subsidiaries with respect to insuring agreements B and C (indemnifiable D&O Liability and Entity Liability Coverage).  Nash. Decl. §§ I (Coverage Part), II(M), II(S) (General Terms & Conditions).

According to the Insureds, rescission based on misrepresentations or omissions contained

---

[8] Pursuant to the policy, "Insured" is defined as: "1. With respect to Insuring Agreement A and E, Team Members [and] 2. [w]ith respect to all other Insuring Agreements B, C, D, and F, the Insured Organization."  Nash Decl. § II(M).  "Team Member" refers to any executive or employee.  *Id.* § II(S).

Case No.: 5:21-cv-08764-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOT. FOR PRELIM. INJ. OR, IN THE ALTERNATIVE, PARTIAL SUMM. J., AND A STAY OF DISCOVERY

18

United States District Court
Northern District of California

in the application functions like an exclusion that limits coverage for certain insureds based on knowledge of the misrepresentation or omission at the time of the insurance application such that Clear Blue must make a showing separately as to each insured.  Mot. at 8.  Clear Blue does not contest the Insureds' interpretation of Section XIV.

Here, the first part of the first sentence provides that the policy will be void as to certain insureds if the application or the materials submitted with the application contain misrepresentations or omissions that materially affect the risk assumed by Clear Blue.  It includes "any Insured"—defined as named insured or its subsidiaries with indemnifiable losses and entity liability excluding executive officers or employees—who knew the facts were not truthfully disclosed as well as the "Insureds" who had no knowledge of the misrepresentations within the application materials.  The result is a severability of application whereby innocent executives and employees retain coverage even where the CEO or application's signor knows of a misrepresentation within the application, in which case only the insured organization, Ozy, and any subsidiaries lose coverage.  *See Wilkinson v. Standard Acc. Ins. Co. of Detroit, Mich.*, 180 Cal. 252, 259–60 (1919); *see also* Gary Lockwood, Law of Corp. Officers & Dir.: Indemn. & Ins. § 4:44 (2d ed. 2022) ("As a result of [severability of application], rescission may be limited to only those insureds who knowingly made misrepresentations in the policy application or who otherwise had knowledge of fraud.").

Consequently, to the extent that Clear Blue can show knowledge of the CEO or signatory, such knowledge is imputed to the insured organization.  Otherwise Clear Blue must prove knowledge of the alleged misrepresentations or omissions as to each Defendant to rescind coverage for "innocent" Insureds.

### d.    Material Misrepresentation

"An insurer has the right to rescind a policy when the insured has misrepresented or concealed material information in its application to obtain insurance."  *Nieto v. Blue Shield of Cal. Life & Health Ins. Co.*, 181 Cal. App. 4th 60, 75 (2010).  "While there may be some situations in

United States District Court
Northern District of California

1     which the answers to questions on the application are not material misrepresentations for

2     rescission, 'the test for materiality is whether the information would have caused the underwriter

3     to reject the application, charge a higher premium, or amend the policy terms, had the underwriter

4     known the true facts.'"  *Warkentin v. Federated Life Ins. Co.*, No. 10-CV-00221-SAB, 2015 WL

5     2358174, at *9 (E.D. Cal. May 15, 2015), *aff'd*, 690 F. App'x 559, at *9 (9th Cir. 2017) (quoting

6     *Mitchell v. United Nat. Ins. Co.*, 127 Cal.App.4th 457, 474–75 (2005)).  "The fact that the insurer

7     has demanded answers to specific questions in an application for insurance is in itself usually

8     sufficient to establish materiality as a matter of law."  *Thompson* 9 Cal.3d at 916 (citations

9     omitted).

10            Clear Blue alleges that Ozy misrepresented or omitted certain material facts in its

11    application.  Specifically, it contends that the Insureds misreported certain financial information

12    and that "Ozy misrepresented that it had not been the subject of any civil, criminal, or

13    administrative proceedings alleging violation of federal or state securities laws in the prior 3

14    years" in failing to disclose the SEC subpoenas and the LifeLine securities litigation.  Compl. ¶

15    55.  Clear Blue alleges that these omissions affected Clear Blue's underwriting decision.  *Id.* ¶¶

16    57–58.  The application asks for the company's total revenue and amount of funding raised to

17    date, including debt.  *Id.* ¶¶ 33–35.  According to Clear Blue, the Insureds reported three

18    investment fundraising rounds that "did not reflect the amounts actually raised.  *Id.* ¶ 35.  It also

19    asks whether "your company or any person proposed for coverage [has] been the subject of or

20    been involved in any of the following . . . Anti-trust litigation[;] Civil, criminal or administrative

21    proceeding alleging violation of any federal or state securities laws[;] [or] Initiated a bankruptcy or

22    anticipates going bankrupt in the next year."  ECF No. 1-1 at 4.

23            Clear Blue bases its rescission, in part, on the fact that the Insureds answered "no" to the

24    application question inquiring whether the company or a covered individual "[has] been the

25    subject of or been involved in any . . . [c]ivil, criminal or administrative proceedings alleging

26    violation of any federal or state securities laws."  The LifeLine litigation was initiated October 4,

27    Case No.: 5:21-cv-08764-EJD

28    ORDER GRANTING IN PART AND DENYING IN PART MOT. FOR PRELIM. INJ. OR, IN
      THE ALTERNATIVE, PARTIAL SUMM. J., AND A STAY OF DISCOVERY

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

2021, more than two months after the Insureds' policy had become effective. The subpoenas were issued around the same time. Based on the language of the application question, the Insureds cannot be said to have provided a false statement in answering "no" from the date it applied for insurance, August 5, 2021, to the date the policy became effective, August 25, 2023, because there is no indication that any proceedings alleging violations of security laws had been brought against the Insureds at this point in time or within the three years prior—which is all that the application inquires. The mere possibility that the Insureds may have gotten wind of impending securities proceedings via an informal investigation, for example, is insufficient. *See Home Ins. Co. v. Spectrum Info. Techs.*, 930 F. Supp. 825, 837–38 (concluding that the word "proceeding" used in the context of the insurance policy asking whether any directors or officers had been involved "in any civil or criminal action or proceeding investigating or charging a violation of any federal or state security law or regulation" is a word that "suggests something more formal than an 'informal inquiry'"). Clear Blue does not allege that any of the Underlying Proceedings were initiated before the Insureds applied for coverage or had a policy effectuated.

Clear Blue and Embroker could have drafted more specific questions to elicit responses inquiring into an applicant's knowledge of potential informal or formal proceedings that may arise a result of securities violations. Nor does it appear the Insureds failed to disclose facts giving rise to the LifeLine litigation or subpoenas. "[R]ecission is permitted only when the insured conceals facts he [or she] is under a duty to disclose. Absent such a duty there can be no actionable concealment." *Fed. Ins. Co.*, 1986 WL 2699, at *2. Based on the information before the court it appears unlikely that Clear Blue can establish a material misrepresentation warranting rescission as to this application question.

In terms of the Insureds' answers to application questions about the company's total revenue or reported fundraising amounts, misrepresenting information pertaining to the "financial health" of a company is indeed "material to an insurer's decision to issue a directors and officers' liability policy." *Jaunich v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 647 F. Supp. 209, 211

1    (N.D. Cal. 1986).  Clear Blue alleges that Ozy's total revenue reported for 2020 and 2021

2    materially differs from Ozy's actual revenue those years and also that the total amount of funds

3    raised to date, including debt, materially differs in the application from the amount that was

4    actually raised.  Compl. ¶¶ 33–35.

5         The Insureds have not admitted to misrepresenting or omitting information in the

6    application, and they challenge whether they had "knowledge" of the facts constituting the

7    misrepresentation or omission.  According to the Insureds, Clear Blue cannot demonstrate each of

8    the Insureds' knowledge at this stage in the proceedings because "such a showing necessarily turns

9    on the very matters at issue in the Underlying Proceedings," or in other words, the circumstances

10   surrounding the alleged Goldman Sachs call and the proceedings arising from it and the accuracy

11   of Ozy's reported financials in its application.  Mot. at 15.

12        According to Clear Blue's notice of non-opposition to the discovery stay, Rao recently

13   pled guilty to conspiracy to commit securities fraud, conspiracy to commit wire fraud, and

14   aggravated identity theft in *USA v. Samir Rao*, No. 1:23-cr-00047-EK.  Notice of Non-Opp'n at 4.

15   The Criminal Information alleges that, in furtherance of the conspiracy, Rao falsely stated Ozy's

16   revenue to potential investors from 2018 through 2020, altered contracts to make terms appear

17   more favorable to Ozy, created a "falsified version of Ozy's general ledger . . . that aligned with

18   fabricated financial figures" presented to potential investors, and misrepresented his identity and

19   the business relationship of Ozy and an unnamed video service on a call with a potential investor.

20   ECF No. 79-1 ("Ex. A").  Watson and Ozy were also indicted on February 22, 2023 and charged

21   with conspiracy to commit securities fraud and wire fraud conspiracy.  The basis for the

22   Indictment is the same scheme asserted in the Rao case.  ECF No. 79-1 ("Ex. C").  Watson has

23   pled not guilty and Ozy has not yet appeared.  Notice of Non-Opp'n at 5.  In addition, the SEC

24   filed a securities fraud complaint against Ozy, Rao, and Watson asserting claims of violation of

25   Securities Act, violation of Exchange Act, as well as aiding and abetting.  ECF No. 79-1 ("Ex.

26   D").

27

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Given the fact that Rao has pled guilty to conspiracy to commit securities fraud in the

2  EDNY criminal case, Clear Blue will likely be able to establish that Rao misrepresented or

3  omitted material information in the insurance application.  As the CEO and signatory to the

4  insurance application, Rao's knowledge will be imputed to Ozy as well.  Given the likelihood that

5  Clear Blue could establish proper rescission as to Rao and therefore Ozy, the Insureds have not

6  shown likelihood of success on the merits as to their claim for advancement of defense costs as to

7  Ozy.  However, it is much less clear whether Watson had knowledge of misrepresentations or

8  omissions in the application.  Without more evidence, this factor weighs neutral as to Watson at

9  this early stage in the proceedings.

10                              **2.      Irreparable Harm**

11    To prevail on this prong, the Insureds must show that they are faced with immediate and

12  irreparable injury that is not compensable with money damages.  *See Drakes Bay Oyster Co. v.*

13  *Salazar*, 921 F. Supp. 2d 972, 993 (N.D. Cal. 2013), *aff'd sub nom. Drakes Bay Oyster Co. v.*

14  *Jewell*, 747 F.3d 1073 (9th Cir. 2014); *see also Los Angeles Mem'l Coliseum Comm'n v. Nat'l*

15  *Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) ("It is well established, however, that such

16  monetary injury is not normally considered irreparable").  "[T]he threat must be actual and

17  imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of

18  the defendant; and it must be likely that a favorable judicial decision will prevent or redress the

19  injury." *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1171 (9th Cir. 2011) (quoting *Summers v.*

20  *Earth Island Inst.*, 555 U.S. 488 (2009)).  The Insureds argue that their legal rights are at stake

21  should Clear Blue fail to pay their defense costs in the Underlying Proceedings.

22    Here, the Insureds are defending multiple ongoing civil and criminal proceedings.  At the

23  time of filing the complaint, LifeLine initiated a securities action, a federal grand jury in EDNY

24  had issued an indictment against Ozy and Mr. Watson, and the SEC had initiated a parallel civil

25  enforcement action against Defendants.  Since then, the SEC filed a securities fraud complaint and

26  three separate criminal cases were filed against Ozy and its executives in EDNY.  As a result, the

27

28

Insureds contend that they have incurred substantial legal fees and expenses and are in "urgent need" of defense costs to adequately defund their defenses.  Mot. at 12–13; *see* Decl. of Kevin J. O'Brien in Supp. of Mot. for Prelim. Inj. and Stay ("O'Brien Decl."), ECF No. 51-2.  As of the date of filing, Insureds had already incurred legal fees and expenses in excess of their coverage limits.  O'Brien Decl. ¶ 10.

The Insureds cite to *WorldCom* in support, where a District Court for the Southern District of New York considered similar circumstances on a motion for summary judgment where a D&O policy required payment of defense costs as incurred.  *In re WorldCom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455 (S.D.N.Y. 2005).  The New York District Court concluded that insureds, who were facing securities litigation, have shown irreparable injury because "[t]he failure to receive defense costs when they are incurred constitutes an immediate and direct injury." *Id.* at *469 (quotations and citations omitted).  The court reasoned that "[i]t is impossible to predict or quantify the impact on a litigant of a failure to have adequate representation at this critical stage of litigation." *Id.*  The Court finds this argument persuasive particularly under these circumstances.  *McGraw v. W. Serv. Cont. Corp*, No. 13-CV-05129-JST, 2014 WL 12573519, at *1 (N.D. Cal. Apr. 14, 2014) (citing to *WorldCom* in finding that the requirements for the preliminary injunction have been met).

While "economic hardship" is generally insufficient, the ability to retain assistance of counsel raises the stakes beyond mere financial hardship, particularly for Watson who is facing criminal charges in addition to the other proceedings.  *See Bernhardt v. Los Angeles Cnty.*, 339 F.3d 920, 931 (9th Cir. 2003).  Accordingly, the Insureds have demonstrated irreparable harm.

### 3.   Balance of Equities & Public Interest

"[C]ourts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief . . . pay[ing] particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (internal quotations and citations omitted).

First, the Insureds argue that the balance of equities weigh in their favor because Clear

1   Blue faces only the possibility of economic harm while the Insureds face ongoing and substantial

2   civil and criminal exposure in addition to economic harm.  Mot. at 19.  Clear Blue contends, given

3   that the Insureds have suggested they are cash-strapped and cannot pay their debts, Clear Blue will

4   be unlikely to recover defense costs should the Court grant Insureds' request for preliminary

5   injunction.  Opp'n at 18–19.  While this may be true, an insurer such as Clear Blue is better

6   equipped financially to bear defense costs than an insured.  In the context of motions to stay,

7   "[c]ourts have found that any prejudice to the insurer in having to pay defense costs while the

8   underlying case is pending is outweighed by prejudice to the insured in having to fight a 'twofront

9   war.'"  *Zurich Am. Ins. Co. v. Omnicell, Inc.*, No. 18-CV-05345-LHK, 2019 WL 570760, at *6

10  (N.D. Cal. Feb. 12, 2019).  Accordingly, under these circumstances the balance of hardships "tips

11  sharply" in the Insureds' favor.

12      Second, courts "should pay particular regard for the public consequences in employing the

13  extraordinary remedy of injunction."  *Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero–*

14  *Barcelo*, 456 U.S. 305, 312 (1982)).  The Insureds contend an injunction is also in the public

15  interest because insurers should not be encouraged to "abandon" directors and officers the moment

16  that they are faced with potential civil or criminal liability.  This argument arguably cuts both

17  ways, as the same could be said for discouraging applicants from concealing information in

18  insurance applications in order to secure coverage.  Clear Blue argues that the reach of the

19  decision on the requested injunction is narrow, affecting only the parties to the dispute.

20      The Court finds, however, that there is a public interest in protecting policyholders facing

21  potential civil and criminal liability.  The Court is cognizant of the expectation of coverage and the

22  greater detriment an insured may face should an insurer refuse to fulfill its obligations under a

23  policy where the litigation of the covered claims is ongoing.  There is certainly some weight to the

24  Insureds' concern that an insurer could back out of its obligations to cover claims that would

25  otherwise be covered under a D&O policy based on suspicions of concealment arising from

26  underlying lawsuits.  In Watson's case—in contrast to Rao—there is little evidence supporting

27

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

rescission of the policy as to him at this stage in the litigation, and it is in the general interest of potentially innocent D&O policyholders to have some security that their policy will not be voided on a weak (at least at this stage) showing of concealment.  *Mt. Hawley Ins. Co. v. Lopez*, 215 Cal. App. 4th 1385, 1422 (Cal. Ct. App. 2013) (reasoning that providing defense costs "enhances the ability of for-profit and non-profit organizations to attract directors, trustees, and volunteers who otherwise might hesitate or decline to serve because of a fear of lawsuits and criminal prosecutions.").  Accordingly, while this factor weighs neutral with respect to Ozy, it is in the public's interest to grant the injunction with respect to Watson.

9

### 4.    Conclusion

10

11

12

13

14

15

In sum, the Insureds have failed to show a likelihood of success on the merits as to Defendant Ozy.  Even if the Insureds can show that Ozy will be irreparably harmed, irreparable harm on its own is generally insufficient to warrant the granting of a preliminary injunction.  *See Rivera v. BAC Home Loans Servicing, L.P.*, No. 10-CV-02439-RS, 2010 WL 2757041, at *2 (N.D. Cal. July 9, 2010) (finding that a preliminary injunction is not warranted where there is no likelihood of success on the merits even where movants establish irreparable harm).

16

17

18

19

20

21

22

23

24

25

26

Since the policy provides for severability such that rescission is limited to only those Insureds who knew of the alleged misrepresentations at the time of acquiring the insurance policy, it is possible that the policy is rescinded as to some Insureds but not others.  "[S]erious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted).  At this time, the Insureds have raised "serious questions going to the merits" regarding Watson's knowledge of the misrepresentations in the application at this preliminary stage of litigation, and the balance of the remaining factors tip sharply in Watson's favor.  *See Knight v. Richardson Bay Reg'l Agency*, No. 3:22-CV-06347-WHO, 2022 WL 15567657, at *5 (N.D. Cal. Oct. 27, 2022) (finding that a TRO

27

28

1    was warranted because there were "serious questions going to the merits" where the court lacked

2    sufficient at an early stage of litigation "to assess the veracity of either side's argument").

3            The Court therefore concludes that the Insureds' motion for preliminary injunction relief of

4    advancement of defense costs is denied as to Defendant Ozy but granted with respect to Defendant

5    Watson.  Accordingly, Clear Blue is ordered to pay Watson's unreimbursed defense costs for

6    losses and advance his defense costs pursuant to the policy.[9]

7            **B.      Partial Summary Judgment**

8            Alternatively, the Insureds request that the Court enter partial summary judgment on the

9    issue of payment of defense costs.

10           Pursuant to Rule 56, summary judgment is appropriate where "the pleadings, depositions,

11   answers to interrogatories, and admissions on file, together with affidavits, if any, show that there

12   is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

13   matter of law." Fed. R. Civ. P. 56(c).  A fact is "material" if it would affect the outcome of the

14   suit under the governing law, and a disputed issue is "genuine" if the "evidence is such that a

15   reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*,

16   477 U.S. 242, 248–49 (1986).  In considering a motion for summary judgment, the Court must

17   view the evidence in the light most favorable to the non-moving party.  *See Tolan v. Cotton*, 572

18   U.S. 650, 655 (2014).  The Court may not weigh conflicting evidence as to a disputed fact nor

19   may it make credibility determinations; any disputed factual issues must be resolved in favor of

20   the non-moving party.  *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626,

21   630–31 (9th Cir. 1987).

22           Clear Blue asks the Court to deny the Insured's request because the litigation is premature

23   and the material facts surrounding Clear Blue's rescission of the policy are in dispute.  The Court

24   agrees.  The parties disagree whether the Insureds misrepresented material information in their

25

26   _____

27   [9] Should the policy later be adjudicated rescinded, Clear Blue has the right to pursue a claim for
     recoupment of advanced funds.

Case No.: 5:21-cv-08764-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART MOT. FOR PRELIM. INJ. OR, IN
     THE ALTERNATIVE, PARTIAL SUMM. J., AND A STAY OF DISCOVERY

United States District Court
Northern District of California

application for insurance—the basis for Clear Blue's rescission.  *See* ECF No. 66; *Fed. Ins. Co. v. Oak Indus., Inc.*, No. 85-CV-985, 1986 WL 2699, at *4 (S.D. Cal. Feb. 3, 1986) ("Summary judgment is appropriate where the only dispute concerns the legal effect of language in the [insurance] policy.") (citing *Edison v. Reliable Life Ins. Co.*, 664 F.2d 1130 (9th Cir. 1981)).  In light of the ongoing factual dispute as to the validity of Clear Blue's rescission and the little evidence before the Court, the Court finds that summary judgment is inappropriate at this time.

     **C.**     **Stay of Discovery**

     Defendants also seek a stay of discovery pending resolution of the Underlying Proceedings.  *Id.* at 20–23.  Clear Blue initially opposed this request but has since filed a notice of withdrawal of opposition to Defendants' request for a discovery stay.  Because Clear Blue no longer opposes Defendants' request for a stay, the Court briefly addresses the relevant *Landis* considerations.[10]  *Landis v. N. Am. Co.*, 299 U.S. 248 (1936).

     The Court has "discretionary power to stay proceedings in its own court."  *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005).  Pursuant to *Landis*, courts must weigh competing interests which will be affected by the granting or refusal to grant a stay.  *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).  "In weighing the competing interests, courts consider the three *Landis* factors: (1) 'the possible damage which may result from the granting of a stay,' (2) 'the hardship or inequity which a party may suffer in being required to go forward,' and (3) 'the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.'"  *AIU Ins. Co. v. McKesson Corp.*, No. 20-CV-07469-JSC, 2021 WL 3565440, at *2 (N.D. Cal. Aug. 12, 2021) (quoting *Landis*, 299 U.S. at 255).  For the reasons discussed below, the Court finds that all factors weigh in favor of the Insureds' request for a stay.

     First, the Insureds assert that Clear Blue will not be harmed by entry of a stay.  The

---

[10] Clear Blue's withdrawal of its opposition to a stay of discovery is based on "the overlap between the factual basis of the newly filed criminal and SEC cases against Ozy and its executives with Clear Blues rescission action."  Notice of Non-Opp'n at 7.

United States District Court
Northern District of California

1    Insureds reiterate that, in the event the Court orders Clear Blue to advance defense costs, Clear

2    Blue faces the possibility of economic harm should the Court grant the stay.  Otherwise, a stay

3    will only delay a ruling on Clear Blue's declaratory relief.  *MS Amlin Corp. Member, Ltd. v.*

4    *Bottini*, No. 20-CV-687-GPC, 2020 WL 5966612, at *5 (S.D. Cal. Oct. 8, 2020) ("[D]elaying a

5    determination of whether an insurer owes an insured party coverage does not substantially harm

6    the insurer.").  Neither harm is substantial such that it outweighs granting the stay.

7            Second, the Insureds contend that they would face significant hardship by litigating against

8    their insurer while also defending themselves in the Underlying Proceedings.  A district court

9    concluded that denying an insureds' request for a stay would cause hardship and prejudice by

10   forcing them "to fight a 'two-front war.'"  *RLI Ins. Co. v. ACE Am. Ins. Co.*, No. 19-CV-04180-

11   LHK, 2020 WL 1322955, at *5 (N.D. Cal. Mar. 20, 2020).  Moreover, California courts have

12   found that the prejudice to insureds can be severe where declaratory relief actions have

13   overlapping factual issues with the underlying suit.  *See e.g.*, *Great Am. Ins. Co. v. Superior Ct.*,

14   178 Cal. App. 4th 221, 235 (Cal. Ct. App. 2009); *Riddell, Inc. v. Superior Ct.*, 14 Cal. App. 5th

15   755, 765 (Cal. Ct. App. 2017).  The Court agrees.

16          Finally, the Insureds argue that a stay of discovery is warranted to avoid duplicative

17   litigation and simplify the factual issues in this case.  A consideration of whether a stay will serve

18   the orderly course of justice is "measured in terms of the simplifying or complicating of issues,

19   proof, and questions of law which could be expected to result from a stay." *CMAX*, 300 F.2d at

20   268.  A stay promotes the orderly cause of justice where the underlying proceedings are likely to

21   decide or contribute to the issues before this Court.  *See McGraw v. W. Serv. Cont. Corp*, No. 13-

22   CV-05129-JST, 2014 WL 12573519, at *2 (N.D. Cal. Apr. 14, 2014) (granting a preliminary

23   injunction and staying discovery where "the resolution of the underlying litigation necessarily

24   bears on the indemnification rights at issue in this action."); *Lockyer v. Mirant Corp.*, 398 F.3d

25   1098, 1113 (9th Cir. 2005); *see also Fahmy v. Live Nation Ent., Inc.*, No. 2-15-CV-01158-CAS,

26   2015 WL 3617040, at *13 (C.D. Cal. June 8, 2015) ("Although the outcome of the [underlying

27

*United States District Court*
*Northern District of California*

1   case] will not necessarily be dispositive of this case, that outcome will certainly inform this

2   case.").  Clear Blue acknowledges that "the pending criminal and SEC cases allege factual issues

3   that bear directly upon those facts Clear Blue intends to prove and rely upon in its rescission

4   action."  Notice of Non-Opp'n at 3.  Clear Blue withdrew its opposition to staying discovery to

5   allow the criminal and SEC cases to proceed and simplify the issues of proof before this court.  *Id.*

6   at 9.  Based on the potential overlap in this rescission claim with the Underlying Proceedings, the

7   Court agrees that discovery should be stayed until the SEC and criminal cases are resolved.

8   **IV.    CONCLUSION**

9          Based on the foregoing reasons, Defendants Ozy and Watson's Motion for Preliminary

10   Injunction or, in the Alternative, Partial Summary Judgment, and Order Granting a Stay is

11   **GRANTED IN PART** and **DENIED IN PART**.

12          The Court **DENIES** the Insureds' request to advance defense costs as to Defendant Ozy

13   and **GRANTS** the request as to Defendant Watson.  The Court also **DENIES** the Insured's request

14   for partial summary judgment in the alternative.  Accordingly, Clear Blue is **ORDERED** to

15   advance Watson's defense costs as incurred pursuant to the D&O policy.  Finally, the Court

16   **GRANTS** Defendants' request for a stay.  Discovery is therefore **STAYED** pending resolution of

17   the underlying proceedings.

18          **IT IS SO ORDERED.**

19   Dated: April 20, 2023

20

21

22                                                                EDWARD J. DAVILA
                                                                  United States District Judge
23

24

25

26

27   Case No.: 5:21-cv-08764-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOT. FOR PRELIM. INJ. OR, IN
28   THE ALTERNATIVE, PARTIAL SUMM. J., AND A STAY OF DISCOVERY
                                              30