1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

CLEAR BLUE SPECIALTY INSURANCE
COMPANY,

Plaintiff,

v.

OZY MEDIA, INC., et al.,

Defendants.

Case No.   5:21-cv-08764-EJD

**ORDER GRANTING MOTION TO
INTERVENE**

Re: ECF No. 108

Before the Court is Ford O'Brien Landy LLP's ("Ford O'Brien") motion to intervene in

this action to enforce a charging lien under New York Judiciary Law § 475 against the proceeds of

the Directors & Officers Employment Practices Liability and Fiduciary Liability Policy ("D&O

Policy") issued by Plaintiff Clear Blue Insurance Company ("Clear Blue") to Defendant Ozy

Media Inc. ("Ozy Media" or the "Company").  ECF No. 109 ("Mot.").

On October 25, 2023, the Court heard oral arguments from the parties and the prospective

intervenor.  For the reasons discussed below, the Court GRANTS the motion to intervene.

I.      **BACKGROUND**

On October 25, 2021, Ford O'Brien, a law firm located in New York, executed a retainer

agreement with Ozy Media.  Mot. at 3.  As the CEO of the Company, Defendant Carlos Watson

executed the retainer agreement on behalf of Ozy Media.  *Id.* The retainer agreement is governed

under New York law.  *Id.*

The Company engaged Ford O'Brien to represent it in connection with parallel

government investigations and related civil lawsuits: (i) a criminal investigation by the U.S.

Attorneys' Office for the E.D.N.Y.; (ii) a civil enforcement investigation by the SEC; (iii) a civil

securities fraud action filed by an Ozy Media investor in the N.D. Cal. (*LifeLine Legacy Holdings, LLC v. Ozy Media, et al.*, 21 Civ. 07751-BLF) (the "LifeLine Lawsuit"); and (iv) the present action (the "Clear Blue Lawsuit") (collectively, "Underlying Proceedings"). *Id.* at 3. Ford O'Brien purportedly retained principal responsibility for the LifeLine Lawsuit and the Clear Blue Lawsuit, both of which arose from the government investigations and public disclosures that prompted the investigations. *Id.* at 3–4. Ford O'Brien managed a unified defense strategy on behalf of Ozy Media in connection with the government investigations, conducted witness interviews, and produced document discovery responsive to two government subpoenas, including over 27,000 documents. ECF No. 108-1 ¶ 8 ("O'Brien Decl."). During the instant motion hearing, Ford O'Brien explained that it had an informal strategic partnership with Deckert LLC, the firm that represented Carlos Watson in the Underlying Proceedings. Although there was no formal joint defense agreement between the firms, Deckert and Ford O'Brien purportedly worked on a joint defense for Watson and Ozy Media since Watson was the authorized actor of the company and their interests were closely aligned.[1]

With respect to the LifeLine Lawsuit, Ford O'Brien briefed and argued two motions to dismiss and ultimately secured dismissal of all claims. Mot. at 4. After Clear Blue initiated the present action seeking to rescind the D&O Policy based on material misrepresentations, Ford O'Brien recommended that Defendants engage with Bradley Nash of Hoguet Newman Regal & Kenney, LLP ("Hoguet Newman"), an expert in insurance coverage law, to represent them in pursuing a counterclaim for advancement of defense costs. *Id.* at 4. Because the interests of Ozy Media and Watson were aligned at that time, Nash agreed to represent both Defendants. *Id.* Although Ford O'Brien were not counsel of record in this action, the firm purportedly "oversaw" the firms handling the Clear Blue Lawsuit. *Id.*

On July 12, 2022, Nash moved for injunctive relief on behalf of Watson and Ozy Media. *Id.* The motion for injunctive relief was supported by a Declaration prepared and signed by Kevin

---

[1] At the hearing, Ford O'Brien explained that Ozy Media was a closely held corporation run by Watson, and that the defense interests of the company and Watson were "virtually identical."

1  O'Brien as counsel to Ozy Media. *Id.* On November 15, 2022, before the Court ruled on the

2  motion, Ford O'Brien resigned its representation of Ozy Media. On April 20, 2023, the Court

3  granted injunctive relief as to Watson and denied injunctive relief as to Ozy Media. ECF No. 82

4  ("Injunctive Relief Order") at 26–27. The Court ordered Clear Blue to advance defense cost as to

5  Watson pursuant to the D&O policy, which included up to $2 million available under Side A

6  coverage. *Id.* at 27.

7         On April 25, Kevin O'Brien of Ford O'Brien sent a "notice of charging lien" to the parties

8  under New York Judiciary Law § 475. *See generally* ECF No. 84. The notice asserts a "charging

9  lien on all claims for advancement" in this action "which lien attaches to the full amount of any

10 advancement of insurance benefits ordered and paid." ECF no. 84-2, Ex. B. As a result, Clear

11 Blue moved for leave to file an amended complaint to assert a claim in the nature of interpleader.

12 ECF No. 84. The Court heard oral arguments from the parties and Ford O'Brien. Based on the

13 facts before the Court, at that time the Court denied the motion, in part because Plaintiff and Ford

14 O'Brien had failed to satisfy the requirements of statutory interpleader—namely, whether Ford

15 O'Brien had a "colorable claim" to the insurance proceeds. ECF No. 105 ("June 30 Order") at 5–

16 7.

17        Eleven days later, Ford O'Brien moved to intervene. *See generally*, Mot. Watson opposes

18 the motion. ECF No. 108 ("Opp'n").

19 **II.     LEGAL STANDARD**

20        **A.     Intervention as of Right**

21        In general, Rule 24 has been "liberal[ly] constru[ed] in favor of applicants for

22 intervention," *Arakaki v. Cayetano*, 324 F.3d 1078, 1082–83 (9th Cir. 2003), because it usually

23 "prevent[s] or simplif[ies] future litigation" and supports the "efficient resolution of issues."

24 *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 397–98 (9th Cir. 2002).

25        Intervention as a matter of right under Fed. R. Civ. P. 24(a)(2) requires that: "(1) the

26 application for intervention must be timely; (2) the applicant must have a significantly protectable

27 interest relating to the property or transaction that is the subject of the transaction; (3) the applicant

28 Case No.: 5:21-cv-08764-EJD
ORDER GRANTING MOT. TO INTERVENE

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court<br>Northern District of California

must be so situated that disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the existing parties in the lawsuit." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996), *as amended on denial of reh'g* (May 30, 1996). The putative intervenor bears the burden of establishing a right to intervene. *California Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1086 (9th Cir. 2022).

### B.    Permissive Intervention

A court may grant permissive intervention of a party under Rule 24(b) if three requirements are satisfied: "(1) the movant [] show[s] an independent ground for jurisdiction; (2) the motion must be timely; and (3) the movant's claim or defense and the main action must have a question of law and fact in common." *Venegas v. Skaggs*, 867 F.2d 527, 529 (9th Cir. 1989), *aff'd sub nom. Venegas v. Mitchell*, 495 U.S. 82 (1990). Even if a prospective intervenor satisfies the threshold requirements, a district court has discretion to deny permissive intervention. *See Orange v. Air Cal.,* 799 F.2d 535, 539 (9th Cir.1986) ("Permissive intervention is committed to the broad discretion of the district court.").

## III.    DISCUSSION

Ford O'Brien alleges that Clear Blue became obligated to advance insurance proceeds to Watson after the Court granted the preliminary injunction motion in part and Ford O'Brien had sent all parties a Notice of Charging Lien. O'Brien Decl. ¶ 11. As a result, Ford O'Brien seeks to intervene as a matter of right under Fed. R. Civ. Proc. 24(a), or in the alternative, permission to intervene under Fed. R. Civ. Proc. 24(b), for the limited purpose of enforcing their charging lien.

The Court addresses each intervention requirement in turn. In reaching its decision, the Court notes that it is "guided primarily by practical and equitable considerations" and "interpret[s] the requirements broadly in favor of intervention." *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).

### A.    Intervention as of Right

#### 1.    Timeliness

Timeliness is a "threshold requirement" for intervention. *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990). "Timeliness is to be determined from all the circumstances," *NAACP v. New York*, 413 U.S. 345, 366 (1973), and it "is to be construed broadly in favor of the party seeking intervention." *United States v. Andrews*, No. MISC–95–280, 1996 WL 442730, at *1 (E.D. Cal. May 24, 1996). There are three criteria to assess timeliness: "(1) the stage of the proceedings; (2) whether the parties would be prejudiced; and (3) the reason for any delay in moving to intervene." *Nw. Forest Res. Council*, 82 F.3d at 836. Whether intervention is timely is left to the discretion of the trial court. *Alaniz v. Tillie Lewis Foods*, 572 F.2d 657, 659 (9th Cir. 1978).

Watson argues he will be prejudiced by any delay caused by intervention. Opp'n at 2. Watson contends that Ford O'Brien knew about the lawsuit since its inception and could have moved to intervene months ago. *Id.* "A[]dditional delay is not alone decisive" because "admission as a party will have the inevitable effect of prolonging the litigation to some degree," although it may counsel against granting intervention. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1304 (9th Cir. 1997). While Ford O'Brien was aware of litigation since its inception, "[t]he focus is on the date the entity attempting to intervene *should have been aware its interests would no longer be protected adequately by the parties*, rather than the date it learned of the litigation." *Nat. Res. Def. Council v. Locke*, No. 01-CV-0421 JL, 2009 WL 10681122, at *6 (N.D. Cal. July 31, 2009) (emphasis added).

Here, Ford O'Brien moved to intervene once the "litigation [] entered a new stage, where the would-be intervenor's rights would be jeopardized." In this case, Ford O'Brien's rights were jeopardized well after this litigation commenced in November 2021. Ford O'Brien resigned representation in November 2022, and it wasn't until the following events occurred that Ford O'Brien realized enforcement of a charging lien as to the insurance proceeds was the last remaining viable avenue to protect their interests: (1) Ford O'Brien obtained a judgment against

Watson from an New York state court, which remains unpaid, and (2) Defendants moved for injunctive relief of advancement of defense costs under the D&O Policy.  *Nat. Res. Def. Council v. Locke*, No. C 01-0421 JL, 2009 WL 10681122, at *7 (N.D. Cal. July 31, 2009) ("One good reason for delay is changed circumstances.").  Ford O'Brien informed Clear Blue of the charging lien within two weeks of the Court's Order granting injunctive relief as to Watson and ordering the advancement of Watson's defense costs under the D&O Policy.  Clear Blue moved for leave to amend to assert an action in the nature of interpleader shortly after Ford O'Brien informed Clear Blue of the charging lien, which the Court denied on June 30, 2023.  Ford O'Brien subsequently moved to intervene less than two weeks after the Court entered the June 30 Order.  Given these circumstances, Ford O'Brien's motion is timely.

Additionally, the lapse in time under these circumstances is not as substantial as in other cases.  For one thing, no discovery or depositions have taken place.  In general, California federal courts have found that the timeliness factor weighs against intervention where the parties have completed extensive discovery.  *Genesis 1 Oil Servs., LLC v. Wismann Grp., LLC*, No. 820-CV-02114-SSS-ADSX, 2023 WL 355149, at *2 (C.D. Cal. Jan. 6, 2023) (motion not timely where the parties completed substantial discovery, including expert discovery); *Sawyer v. Bill Me Later, Inc.*, No. 10-cv-04461-SJO-JCGX, 2011 WL 13217238, at *3 (C.D. Cal. Aug. 8, 2011) (finding that the prospective intervenor's motion was timely where "[n]o depositions have been noticed or taken, document discovery has only recently begun, and the discovery has been narrowly focused on two limited issues.").  There has been no such activity in this case.

The Court recognizes that Watson's criminal trial in E.D.N.Y. begins in approximately six months' time and intervention could delay or impact payment of remaining defense costs under the Policy.  Opp'n at 3.  But because some degree of delay is inevitable—"otherwise *every* intervention motion would be denied out of hand because it carried with it, almost be definition, the prospect of prolonging the litigation"—the Ninth Circuit has generally assessed timeliness based on "the length of and the reason for its delay."  *League of United Latin Am. Citizens*, 131 F.3d at 1304.  Viewing the motion in the full context of this litigation, the prejudice caused by a

United States District Court
Northern District of California

1    short delay in the proceedings does not counsel against allowing Ford O'Brien to intervene.  *See,*

2    *e.g.*, *Orange Cnty. v. Air Cal.*, 799 F.2d 535, 537 (9th Cir. 1986) ("Mere lapse of time alone is not

3    determinative."); *Alturas Indian Rancheria v. Salazar*, No. 10-CV-1997 LKK, 2011 WL 587588,

4    at *3 (E.D. Cal. Feb. 9, 2011) (finding that a short delay will not cause undue prejudice); *Delano*

5    *Farms Co. v. Cal. Table Grape Comm'n*, No. 1:07-CV-1610, 2010 WL 2942754, at *1 (E.D. Cal.

6    July 23, 2010) (finding that intervention was timely even though the case had progressed for

7    approximately three years).

8         Second, there are no prior applicant intervenors in this action.  *See, e.g.*, *League of United*

9    *Latin Am. Citizens*, 131 F.3d at 1301 (motion not timely where four different parties had already

10   intervened); *Am. Small Bus. League v. United States Dep't of Def.*, No. C 18-01979 WHA, 2019

11   WL 2579200, at *2 (N.D. Cal. June 24, 2019) (motion timely where there where no prior applicant

12   interveners).

13        Third, whether a court has entered substantive rulings in an action also weighs against

14   permitting intervention.  *See Genesis 1 Oil Servs., LLC*, 2023 WL 355149, at *2 (motion not

15   timely where the parties have completed their motion and cross-motion for summary judgment

16   briefing).  The primary question is whether "a lot of water had already passed underneath [] [the]

17   litigation bridge."  *League of United Latin Am. Citizens*, 131 F.3d at 1303.  Although a substantive

18   ruling has been entered in this action—namely, the Injunctive Relief Order—this is the sole

19   substantive ruling entered in this action.  *Am. Small Bus. League*, 2019 WL 2579200, at *2

20   (motion timely where the litigation was in the early stages of discovery and "only one substantive

21   ruling has been issued"); *cf. League of United Latin Am. Citizens*, 131 F.3d at 1302–03 (finding

22   that "the fact that the district court [had] substantively—and substantially—engaged the issues in

23   [the] case" weighed against intervention where the district court has issued a preliminary

24   injunction, which had been appealed, and a motion for summary judgment).  Moreover, the

25   Injunctive Relief Order created Ford O'Brien's legal interest in this action such that the firm could

26   move to enforce its charging lien against the insurance proceeds.

27        In sum, the circumstances of this litigation support finding that the proceedings in the case

28   Case No.: 5:21-cv-08764-EJD
     ORDER GRANTING MOT. TO INTERVENE

1  have not advanced to the point where intervention in inappropriate.  Accordingly, Ford O'Brien's

2  motion is timely.

3  **2.  Legally Protectable Interest**

4  Next, Ford O'Brien asserts that it has a "significantly protectable interest" in the lawsuit

5  because the firm "has a property interest created by New York statute" which, if recognized and

6  enforced, "would attach by operation of law to the proceeds of the Ozy Media Policy, the property

7  that is the subject of this action."  Mot. at 7.

8  Whether a putative intervenor can intervene as of right "turns on whether they have an

9  "interest" under Rule 24(a)(2)."  *Cal. Dep't of Toxic Substances Control*, 54 F.4th at 1086; *Greene*

10  *v. United States,* 996 F.2d 973, 976 (9th Cir. 1993) (Generally, the significant interest requirement

11  is a "practical, threshold inquiry").  However, "[t]he Supreme Court has yet to provide any clear

12  definition of the nature of the interest relating to the property or transaction which is the subject of

13  the action."  *Arakaki v. Cayetano*, 324 F.3d 1078, 1084 (9th Cir. 2003) (quotations omitted and

14  citation omitted).  In the Ninth Circuit, a movant has a "significant protectable interest in an action

15  if (1) it asserts an interest that is protected under some law, and (2) there is a relationship between

16  its legally protected interest and the plaintiff's claims."  *Donnelly*, 159 F.3d at 409 (quotations and

17  citation omitted).

18  The main issue before the Court concerns the second prong: whether Ford O'Brien has

19  relationship between the interest, meaning, an interest "in the merits of this action."  *City of Los*

20  *Angeles*, 288 F.3d at 398.  A prospective intervenor "generally satisfies the 'relationship'

21  requirement only if the resolution of the plaintiff's claims actually will affect the applicant."

22  *Donnelly*, 159 F.3d at 410.  Critically, the Ninth Circuit does not require "that a prospective

23  intervenor's asserted interest [] be protected by the statute under which the litigation is brought to

24  qualify as significantly protectable under Rule 24(a)(2)."  *Wilderness Soc. v. U.S. Forest Serv.*,

25  630 F.3d 1173, 1179 (9th Cir. 2011) (quotation omitted).  Furthermore, "[p]roposed intervenors

26  need not have an interest in every aspect of the litigation," rather, they may intervene "as to

27  specific issues so long as their interest in those issues is significantly protectable."  *Mountain Top*

28  Case No.: 5:21-cv-08764-EJD

*Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 321, 72 F.3d 361, 368 (3d Cir. 1995).

In general, in this circuit "[a]n economic stake in the outcome of the litigation, even if significant, is not enough." *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993). Some federal courts have recognized that a prospective intervenor can establish a legally cognizable interest to a "fund" under Rule 24. *See, e.g.*, *Gen. Star Indem. Co. v. Virgin Islands Port Auth.*, 46 V.I. 351, 355 (D.V.I. 2004) (noting that "identification of an interest in a specific fund has been determined sufficient to allow intervention."); *United States v. Lauer*, 242 F.R.D. 184, 186 (D. Conn. 2007). However, courts have reached different conclusions with respect to whether a charging lien is merely an economic interest or whether it attaches to a fund such that it is sufficient to establish intervention as of right.

In *Scarpone*, a New Jersey district court found that the prospective intervenor, Lum, had an interest in a specific fund held by the trustee, "i.e., the proceeds from the . . . property" based on Lum's charging lien. *Scarpone v. Laura Nelson Props., Inc.*, No. 04-CV-3140 (SRC), 2007 WL 9782936, at *5 (D.N.J. Aug. 9, 2007). The court noted that the charging lien attaches to the judgment of the court, or in other words, "the proceeds of the property at issue in this litigation." *Id.* Thus, the court concluded that "[w]here an intervenor holds an interest in a specific fund, . . . such an interest is sufficient to justify intervention in an action affecting that fund." *Id.* (citing *Mountain Top Condo. Ass'n*, 72 F.3d at 366). Under this interpretation, Ford O'Brien's charging lien, if recognized and enforced, would attach to the proceeds of this action such that the firm would have a legally cognizable interest in the litigation.

In contrast, a Delaware district court found that a law firm asserting a charging lien against its former clients did not have a "sufficient interest in the litigation," in part, because the firms' interests were "mere economic interests in receiving payment for work already performed, which are insufficient to support intervention." *Luster v. Puracap Lab'ys, LLC*, No. 18-CV-503-MN-JLH, 2023 WL 157638, at *3 (D. Del. Jan. 11, 2023).

Similarly, in *Butler*, the Second Circuit considered whether a charging lien held by a discharged law firm on its former client's cause of action constituted an interest in the action

1    within the meaning of Rule 24. *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171 (2d Cir.

2    2000). Under the charging lien, the discharged firm was to automatically recover a portion of the

3    award if its former client prevailed in the suit. The Second Circuit held that, "[d]espite the

4    substantial value of the charging lien, and its potential impairment by an adverse judgment, it is

5    not certain whether this lien qualifies as an interest sufficient to justify Butler's intervention as of

6    right" because Rule 24(a) provides "that the putative intervenor must claim an interest relating to

7    the property or transaction *which is the subject of the action*." *Butler*, 250 F.3d at 177 (emphasis

8    in original). In contrast to the *Scarpone* court, the *Butler* court found that "[t]he interest of

9    discharged counsel seemingly is not in the subject of the underlying action, *i.e.*, the contract

10   dispute that precipitated the litigation, but is rather an interest in recovering delinquent attorney's

11   fees following an award in favor of its former client." *Id.* The Second Circuit expressed concern

12   about potential public policy consequences that could arise "when discharged counsel is permitted

13   to intervene as of right in his former client's action to protect an interest in legal fees." *Id.* at 177.

14       In the absence of clear guidance, the Court need not reach a decision whether Ford O'Brien

15   has a legally protectable interest in the insurance proceeds based on its asserted charging lien to

16   warrant intervention as matter of right under Rule 24(a)(2) because, for the reasons discussed

17   below, the Court finds that permissive intervention is appropriate and warranted in this case. *See*

18   *Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977) ("Where a party may

19   not intervene as a matter of right, the trial court may consider whether permissive intervention is

20   appropriate.").

21       **B.    Permissive Intervention**

22          **1.    Prospective Intervenor's Ability to Protect its Interest**

23       "[A] prospective intervenor 'has a sufficient interest for intervention purposes if it will

24   suffer a practical impairment of its interests as a result of the pending litigation.'" *Wilderness Soc.*

25   *v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (quoting *Cal. ex rel. Lockyer v. United*

26   *States*, 450 F.3d 436, 441 (9th Cir. 2006)). However, a prospective intervenor need not have

27   "absolute certainty" that a prospective intervenor's rights will be impaired; the inquiry is whether

28   Case No.: 5:21-cv-08764-EJD
     ORDER GRANTING MOT. TO INTERVENE
     10

United States District Court
Northern District of California

United States District Court
Northern District of California

1    "disposition of the action 'may' practically impair a party's ability to protect their interest in the

2    subject matter of the litigation."  *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647

3    F.3d 893, 900 (9th Cir. 2011).

4          Ford O'Brien asserts that they have an interest in this action based on the firm's asserted

5    charging lien under New York Judiciary Law § 475 for the services rendered on behalf of their

6    former client, Ozy Media, and Watson, whom Ford O'Brien's services benefited.  "Under New

7    York law, an attorney who is discharged is statutorily entitled to a charging lien on any monetary

8    recoveries obtained by the former client in the proceedings in which the attorney had rendered

9    legal services."  *Melnick v. Press*, No. 06-CV-6686 (JFB) (ARL), 2009 WL 2824586, at *2

10   (E.D.N.Y. Aug. 28, 2009) (citing N.Y. Judiciary Law § 475).  A Section 475 charging lien has

11   been described by New York courts as "a device to protect counsel against 'the knavery of his

12   client,' whereby through his effort, the attorney acquires an interest in the client's cause of action."

13   *Butler*, 250 F.3d at 177 (quoting *In re City of New York*, 5 N.Y.2d 300, 307 (1959)).  A Section

14   475 lien is enforceable in federal courts in accordance with New York courts' interpretation of the

15   statute.  *Melnick*, 2009 WL 2824586, at *2.

16         Ford O'Brien arguably has adequate ability to protect its interest—namely, compensation

17   for legal services rendered—under New York law by pursuing a suit against its former client in

18   state court.  *See e.g.*, *Butler*, 250 F.3d at 179 ("[A]n attorney's charging lien is not the only

19   potential source of remuneration for terminated counsel . . . . Under New York law, the attorney

20   still has an avenue to recover legal fees owed via a plenary action in quantum meruit for the

21   reasonable value of services rendered."); *Luster*, 2023 WL 157638, at *3 (finding that the putative

22   intervenors, the unpaid attorneys asserting a charging lien, "have adequate alternative means of

23   asserting their rights in the form of separate breach of contract actions").

24          However, Ford O'Brien's situation is distinguishable.  During the hearing, counsel

25   informed the Court that Ford O'Brien had sought and obtained a judgment against Carlos Watson

26   in a separate state action to recover unpaid attorneys' fees.  Despite this judgment, Ford O'Brien

27   has been unable to recover any fees from Watson.  Ford O'Brien contends that it has not sued Ozy

28

Media because, while attempting to execute the judgment against Watson, the firm learned that Ozy Media has effectively ceased operations and has little to no assets remaining.  In effect, Ford O'Brien has exhausted their state remedies and have no other source of recoupment for the services rendered except the advancements of the insurance proceeds in this action.[2]

In light of these new facts, and in balancing the equitable considerations, the Court finds that Ford O'Brien has sufficiently established that their rights may be practically impaired or impeded if they are excluded from participating in this action.

### 2.    Common Question of Law and Facts

Next, the Court must consider whether the "claim or defense and the main action have a question of law or fact in common."  Fed. R. Civ. P. 24(b)(2).  "The existence of a common question of law or fact does not automatically entitle an applicant to intervene."  *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989), *aff'd sub nom. Venegas v. Mitchell*, 495 U.S. 82 (1990).  A court may deny intervention where "the proposed intervenor's claims and plaintiffs' claims share no common factual proof."  *Donnelly*, 159 F.3d at 412 (citing *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 525 (5th Cir. 1994) ("The intervention rule is . . . not intended to allow the creation of whole new lawsuits by the intervenors.")).

On its face, there is seemingly little overlap between Ford O'Brien's asserted charging lien—which would presumably arise from a breach of contract between counsel and its former client—and Clear Blue's underlying action for declaratory relief arising from the insurance policy. However, "[p]ermissive intervention may be permitted when the intervenor has an economic interest in the outcome of the suit."  7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1911 (3d ed. 1998) § 1911 Common Question of Law or Fact.  Indeed, various courts have recognized that economic interests may support a finding that there are common questions of law and facts between a prospective intervenor's interest and the litigation.  *See, e.g.*,

---

[2] At the hearing, Ford O'Brien acknowledged that restitution may be a possibility for recouping some of their fees if Watson were convicted, but at this point in time, recoupment via restitution is speculative because Watson has not plead guilty or been convicted.

United States District Court
Northern District of California

*Puget Soundkeeper All. v. Pruitt*, No. 15-cv-1342-JCC, 2018 WL 3569862, at *2 (W.D. Wash. July 25, 2018) (granting permissive intervention where proposed intervenors had a significant economic and litigation interests at stake); *Fisher Foods, Inc. v. Ohio Dep't of Liquor Control*, 555 F. Supp. 641, 650–51 (N.D. Ohio 1982) ("Permissive intervention has been allowed when an intervenor has an economic interest in the suit.") (citing *Chalmers v. United States*, 43 F.R.D. 286, 291 (D. Kan. 1967)); *Lauer*, 242 F.R.D. at 186 (finding that the receiver's claim to the net proceeds of the IRS's sale of the property has a common question of law or fact to the main action by the IRS to foreclose the federal tax liens encumbering the same property).

Here, where Defendants have counterclaimed seeking Plaintiff-insurer's advancement of defense costs under the D&O Policy, Ford O'Brien has an economic interest in the insurance proceeds in this action via their asserted charging lien against Defendants for unpaid legal fees in the Underlying Proceedings. The Court therefore finds that this requirement is satisfied.

### 3. Additional Considerations

The Ninth Circuit has also enumerated additional considerations a court must weigh in deciding whether to grant or deny permissive intervention, including: (i) "whether the intervention will 'unduly delay or prejudice the adjudication of the rights of the original parties,'" *Venegas*, 867 F.2d at 530 (quoting Rule 24(b)); (ii) whether the movant's "interests are adequately represented by existing parties," *State of Cal. v. Tahoe Reg'l Plan. Agency*, 792 F.2d 775, 779 (9th Cir. 1986); and (iii) judicial economy, *Venegas*, 867 F.2d at 531. In exercising its discretion, the Court must determine whether permitting intervention will unduly delay the action or prejudice the parties.

Although intervention would result in some delay to the litigation, any prejudice resulting from the delay would be minimal. Watson argues that intervention would prejudice him by delaying payment of his insurance proceeds thereby impacting his underlying criminal case. However, the relevant inquiry for the purposes of permissive intervention is whether Watson (or Clear Blue) would be prejudiced *in this action* by intervention. *See Lilith Games (Shanghai) Co. v. uCool, Inc.*, No. 15-CV-01267-SC, 2015 WL 4914694, at *4 (N.D. Cal. Aug. 17, 2015) (finding

1    that "intervention will unduly delay and prejudice the adjudication of the original parties' case.")

2    (citing Fed. R. Civ. P. 24(b)(3)).  With respect to the adjudication of this action, there are no

3    pending motions or proceedings that would be delayed by intervention.

4         To the extent that Watson would be prejudiced by a temporary stay on payments of

5    insurance proceeds ordered under the Preliminary Injunctive Order, the Court is not persuaded that

6    it warrants denial of intervention.  The Preliminary Injunctive Order is provisional relief; it is

7    subject to recoupment of Defendants' creditors.  Moreover, at the hearing, it was revealed that

8    Watson has spent approximately $1.2 to $1.3 million of the $2 million in insurance proceeds

9    towards his defense in the E.D.N.Y. criminal proceeding.  The Court has temporarily stayed

10   payments of the remaining proceeds under the D&O Policy pending a ruling on this motion.  The

11   prejudice to Watson caused by paused remaining payments is balanced—at least to some extent—

12   by the prejudice to Ford O'Brien, whom Defendants owe approximately 1.25 million in attorneys'

13   fees and expenses for the firm's work leading up to the indictments, and whom is responsible for

14   Defendants' bills to vendors in the Underlying Proceedings.  There is incentive to timely

15   adjudicate Ford O'Brien's interests so that neither party will be significantly prejudiced by delay.

16   *See Plan. & Conservation League v. United States Bureau of Reclamation*, No. 05-CV-3527 CW,

17   2006 WL 8459853, at *4 (N.D. Cal. Jan. 3, 2006) (granting permissive intervention where

18   "Proposed Intervenors' economic interests will be harmed by any delay").

19        Turning to the second consideration, Ford O'Brien argues that the parties cannot

20   adequately represent the firm's interests.  For example, Ford O'Brien points to the fact that

21   Watson's interests with respect to the insurance proceeds are "diametrically opposed" to Ford

22   O'Brien's because he solely seeks to use the proceeds for his own personal use.  Mot. at 8.  On the

23   other hand, Clear Blue is indifferent to whether Ford O'Brien's lien is enforced or not.  *Id.*  At

24   least one court in this district has recognized that a "proposed intervenor's unique 'economic

25   interests' may support a finding of inadequate representation."  *E&B Nat. Resources Management

26   Corp., et al., v. Cnty. of Alameda, et al.*, No. 18-CV-05857-YGR, 2019 WL 5697912, at *4 n.5

27   (N.D. Cal. Nov. 4, 2019) (citing *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir.

28   Case No.: 5:21-cv-08764-EJD
     ORDER GRANTING MOT. TO INTERVENE

United States District Court
Northern District of California

1983)*; Sierra Club v. United States E.P.A.*, No. 13-cv-02809-YGR, 2013 WL 5568253, at *3

(N.D. Cal. Oct. 9, 2013)).  To establish inadequate representation, the proposed intervenor's

economic interests must be "concrete" and "related to the underlying subject matter of an action."

*E&B Nat. Resources Management Corp.*, 2019 WL 5697912, at *4 (citing *Sierra Club*, 2013 WL

55668253, at *3).  Here, Ford O'Brien's economic interests are sufficiently concrete.

 The Court therefore finds that additional considerations also support a finding that

permissive intervention is appropriate in this case.

### C. Enforcement of the Charging Lien

 Ford O'Brien seeks enforcement of their charging lien and asks the Court to direct that

Clear Blue make Ford O'Brien whole on a *quantum meruit* basis before distributing the insurance

proceeds to any other party.  *See* Mot.  Taking into consideration the new facts before the Court,

the Court finds that Ford O'Brien's charging lien is enforceable.

 Section 475 "creates an equitable right and remedy cognizable in the federal courts."

*Markakis v. the S.S. Mparmpa Christos*, 267 F.2d 926, 927 (2d Cir. 1959).  The statute provides,

in relevant part, that:

> [T]he attorney who appears for a party has a lien upon his client's
> cause of action, claim or counterclaim, which attaches to a verdict,
> report, determination, decision, judgment or final order in his client's
> favor, and the proceeds thereof in whatever hands they may come.

N.Y. Judiciary Law § 475.  Federal and state courts interpreting the statute have concluded that

attorneys who have "defended or protected their client's interest" and retained an "affirmative

recovery to the benefit of [their] client" are entitled to a lien under Section 475 on property that

their client retains.  *See, e.g.*, *Ins. Corp. of Hannover v. Latino Americana de Reaseguros, S.A.*,

868 F. Supp. 520, 528 (S.D.N.Y. 1994); *Petition of Rosenman & Colin*, 850 F.2d 57 (2d Cir.

1988); *Desmond v. Socha, supra,* 38 A.D.2d at 24, 327 N.Y.S.2d at 180 ("Where the attorney's

services do not create any proceeds but consist solely of defending a title or interest already held

by the client, there is no lien on the [property retained]").

 First, "only the attorney of record in a particular action is entitled to a charging lien . . . .

Thus, before an attorney may be granted a charging lien, he or she must have appeared for the

United States District Court
Northern District of California

client." *Hoganwillig, PLLC v. Hendel*, 126 A.D.3d 1311, 1311 (2015) (quotation and citation omitted). Here, Ford O'Brien appeared for Watson in this action because Kevin O'Brien "participat[ed] in a legal proceeding on the client's behalf [] by having his name affixed to the pleadings, motions, records, briefs, or other papers submitted in the matter." *Ebert v. New York City Health & Hosps. Corp.*, 210 A.D.2d 292, 292–93 (1994). O'Brien submitted two declarations in support of Defendants' joint motion for preliminary injunctive relief that the Court granted, which created the fund of insurance proceeds at issue. *See* ECF Nos. 51-1, 67-1. In the June 30 Order, the Court concluded that Ford O'Brien failed to show that they appeared for Watson in the instant action.[3] This determination was based on the fact that Ford O'Brien did not represent Watson in the instant action nor in the Underlying Proceedings; rather, Ford O'Brien represented Ozy Media until November 2022.

In light of the new facts before the Court, however, it appears Ford O'Brien played a substantial, albeit informal, role in overseeing a *joint* defense on behalf of its client, Ozy Media, and Watson in the Underlying Proceedings and in assisting to secure Nash's counsel and strategizing in the instant action. Based on Ford O'Brien's representations of the firm's extensive role in defending—both formally and informally—the aligned interests of Ozy Media and Watson, and in remaining true to the spirit of Section 475, the Court concludes that Ford O'Brien has "appeared" for Watson in the instant action "which creates or is the source of funds against which the lien is asserted." *Chevron Corp. v. Donziger*, No. 11-CV-0691, 2011 WL 2150450, at *3 (S.D.N.Y. May 31, 2011); *see Goodrich v. McDonald*, 112 N.Y. 157, 163, 19 N.E. 649 (1889) (explaining that the charging lien is "a device invented by the courts for the protection of attorneys against the knavery of their clients, by disabling clients from receiving the fruits of recoveries

---

[3] In the Court's June 30 Order, the Court concluded that the mere fact that Ford O'Brien "participated" in this action by submitting two declarations in support of Defendants' preliminary injunction motion is insufficient for a § 475 charging lien to attach. This conclusion was based on the Court's understanding that the two declarations were filed in support of Ford O'Brien's client, Ozy Media, such that Ford O'Brien did not "appear for the client," Watson, "by participating in a legal proceeding on [his] behalf." *Cataldo v. Budget Rent A Car Corp.*, 226 A.D.2d 574, 574 (2d Dep't 1996) (internal quotations omitted); *see* Preliminary Injunction Order at 6.

Case No.: 5:21-cv-08764-EJD
ORDER GRANTING MOT. TO INTERVENE
16

1    without paying for the valuable services by which the recoveries were obtained.").

2           Second, attorneys who have "defended or protected their client's interest and property" but

3    have not "obtain[ed] an affirmative recovery" are not entitled to a lien.  *Ins. Corp. of Hannover*,

4    868 F. Supp. at 527 (citing *Ekelman v. Marano*, 251 N.Y. 173, 176, 167 N.E. 211, 212 (1929)).

5    This is because Section 475 does not permit a court to enforce a charging lien "upon any and all"

6    of the client's property.  *Ins. Corp. of Hannover*, 868 F. Supp. at 527.  Here, there is an

7    "affirmative recovery" in Watson's favor because the Injunctive Relief Order ordered Clear Blue

8    to advance defense costs as to Watson pursuant to the D&O policy.

9           Accordingly, Ford O'Brien is entitled to recover legal fees pursuant to the charging lien.

10   **IV.    CONCLUSION**

11          For the foregoing reasons, the Court GRANTS Ford O'Brien's motion to intervene and

12   enforces Ford O'Brien's charging lien.

13          The parties are ORDERED to meet and confer as to the distribution of the remaining

14   insurance proceeds, and to file a status report with any proposed resolution or briefing schedule no

15   later than **November 13, 2023**.  The stay on payments made by Clear Blue is extended until

16   **November 17, 2023**.

17          **IT IS SO ORDERED.**

18   Dated: November 3, 2023

19

20                                                                  _____

21                                                                  EDWARD J. DAVILA
                                                                    United States District Judge
22

23

24

25

26

27

28   Case No.: 5:21-cv-08764-EJD
     ORDER GRANTING MOT. TO INTERVENE
                                                 17