UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CLEAR BLUE SPECIALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>OZY MEDIA, INC., et al.,<br><br>Defendants. | Case No. 21-cv-08764-EJD<br><br>**ORDER REGARDING DISTRIBUTION OF INSURANCE PROCEEDS**<br><br>Re: ECF Nos. 108, 140, 141 |

On November 3, 2023, the Court granted Ford O'Brien Landy LLP's ("Ford O'Brien" or "FOBL") motion to intervene in this action to enforce a charging lien under New York Judiciary Law § 475 against the proceeds of the Directors & Officers Employment Practices Liability and Fiduciary Liability Policy ("D&O Policy") issued by Plaintiff Clear Blue Insurance Company ("Clear Blue") to Defendant Ozy Media Inc. ("Ozy Media" or the "Company"). *See* Order Granting Mot. to Intervene ("Intervention Order"), ECF No. 121. The Court had previously ordered Clear Blue to advance the insurance proceeds for Defendant Carlos Watson's ("Mr. Watson and, with the Company, "Defendants") legal fees in a related criminal action. *See* Prelim. Inj. Order, ECF No. 82. In the Intervention Order, the Court found Ford O'Brien to hold a valid charging lien, but requested additional information from the parties prior to determining the amount of the lien. *See* Intervention Order 15–17. Having received additional submissions from Ford O'Brien and the parties, the Court now determines the value of Ford O'Brien's charging lien.

I.     **BACKGROUND**

       A.     **Underlying Proceedings and Order to Advance Defense Costs**

In recent years, Ozy Media has faced four parallel legal proceedings (the "Underlying

Proceedings"): (i) a criminal investigation by the U.S. Attorney's Office for the Eastern District of New York (the "E.D.N.Y. Criminal Action"); (ii) a civil enforcement investigation by the U.S. Securities and Exchange Commission (the "SEC Investigation"); (iii) a civil securities fraud action filed by an Ozy Media investor in the N.D. Cal. (*LifeLine Legacy Holdings, LLC v. Ozy Media, et al.*, No. 21-cv-07751-BLF, N.D. Cal.) (the "LifeLine Lawsuit"); and (iv) the present action. *See* Intervention Order 1–2. Clear Blue initiated the present action on November 11, 2021, seeking to rescind the D&O Policy based on material misrepresentations. *See* Compl., ECF No. 1. On July 12, 2022, Defendants moved for injunctive relief. *See* Mot. for Prelim. Inj., ECF No. 51. In an order dated April 20, 2023 (the "Preliminary Injunction Order"), the Court granted injunctive relief as to Mr. Watson only, and accordingly ordered Clear Blue to advance Mr. Watson's defense costs in the E.D.N.Y. Criminal Action. *See* Prelim. Inj. Order. The D&O Policy limit as to Mr. Watson's defense costs is $2,000,000. *See* Joint Status Report 4, ECF No. 129.

### B. Work Performed by Ford O'Brien

Ford O'Brien, a New York law firm, represented Ozy Media in the Underlying Proceedings from approximately October 25, 2021 until November 15, 2022. *See* Decl. of Kevin O'Brien in Supp. of Mot. to Intervene ("O'Brien Intervention Decl.") ¶ 5, ECF No. 108-1. The retainer agreement between Ford O'Brien and Ozy Media is governed by New York law. *See* Intervention Order 1. Ford O'Brien has $1,255,871.87 in unpaid invoices to Ozy Media for fees and related expenses. *See* O'Brien Intervention Decl. ¶ 5; *see also* Joint Status Report 3, ECF No. 129; Decl. of Kevin J. O'Brien in Supp. of Charging Lien ("O'Brien Lien Decl."), Exh. A ("Verified N.Y. Compl.") ¶¶ 17–39, ECF No. 141-1. Ford O'Brien has further calculated, to the best of its ability in light of its practice of block billing, that the time value of the work performed to acquire the benefit in this action—*i.e.*, the advancement of defense costs from Clear Blue—is $233,945. *See* FOBL Letter Brief 1, ECF No. 152. The time value of Ford O'Brien's work as an intervenor in this action was $227,410 as of January 16, 2024. *See id.* at 1–2. However, after counsel for Defendants sent a substantive email to the Court without leave, *see* ECF No. 151, Ford O'Brien spent an additional 29.8 hours valued at $26,550 in crafting its response. *See* FOBL

Case No.: 21-cv-08764-EJD
ORDER RE DISTRIBUTION OF INSURANCE PROCEEDS
2

Suppl. Mem. in Supp. of Charging Lien ("FOBL Suppl. Mem.") 1 n.1, ECF No. 154.

### C. Insurance Proceeds and Defense Costs

To date, Clear Blue has advanced $1,045,160.42 in fees and costs for Mr. Watson's defense in the E.D.N.Y. Criminal Action, which is set for trial in about three months. *See* Defs.' Mem. Re Charging Lien ("Defs.' Mem.") 1–2, ECF No. 140 (citing Decl. of Ronald S. Sullivan ("Sullivan Decl.") ¶¶ 16–17, ECF No. 127-5); *id.* at 6. A temporary stay on payments from Clear Blue has been in effect since October 25, 2023, and expires on February 16, 2024. *See* ECF Nos. 120, 121, 130, 137, 144, 147, 150. Mr. Watson's defense team has also submitted to Clear Blue—but not yet received payment for—$556,393.16 in invoices for work undertaken in reliance of the availability of insurance proceeds. *See* Sullivan Decl. ¶ 17. All but one of the outstanding bills was invoiced before the Court entered the temporary stay; the last bill was issued on November 6, 2023 for services performed in October 2023. *See* Defs. Mem 1–2.

## II. LEGAL STANDARD

New York law provides that an attorney "has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come." N.Y. Jud. Law § 475. This "charging lien was created by the common-law courts as a device to protect an attorney by 'disabling clients from receiving the fruits of recoveries without paying for the valuable services by which the recoveries were obtained.'" *LMWT Realty Corp. v. Davis Agency*, 649 N.E.2d 1183, 1187 (N.Y. 1995) (quoting *Goodrich v. McDonald*, 112 N.Y. 157, 163 (N.Y. 1889)). "[A]lthough originating at common law . . . [a charging lien] is equitable in nature." *Sutton v. N.Y.C. Transit Auth.*, 462 F.3d 157, 161 (2d Cir. 2006) (internal citations omitted). Thus, "[a]bsent an express attorney-client agreement to the contrary, the amount of a charging lien may be computed 'on a *quantum meruit* basis, ascertaining the reasonable value of the legal services rendered up to the date of' counsel's withdrawal or discharge." *Margolies v. County of Putnum N.Y.*, No. 09 Civ.2061, 2011 WL 721698, at *1 (S.D.N.Y. Feb. 23, 2011) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 148 (2d Cir. 1998)).

1    A trial court has discretion to determine the reasonable value of the services at issue. *See*
2    *id.* at *1 (citing *Sequa Corp.*, 156 F.3d at 149). Relevant factors include "the difficulty of the
3    matter, the nature and extent of the services rendered, the time reasonably expended on those
4    services, the quality of performance by counsel, the qualifications of counsel, the amount at issue,
5    and the results obtained (to the extent known)." *Sequa Corp.*, 156 F.3d at 148. Courts generally
6    award fees using the lodestar method, under which a reasonable hourly rate—*i.e.*, the appropriate
7    market rate for counsel—is multiplied by the reasonable number of hours expended, as supported
8    by materials such as billing records and affidavits, to arrive at a presumptively reasonable fee.
9    *See, e.g.*, *Margolies*, 2011 WL 721698, at *1; *Arbor Hill Concerned Citizens Neighborhood Ass'n*
10   *v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008); *see also, e.g.*, *Moreno v. City of*
11   *Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). However, "the overriding criterion for
12   determining the amount of a charging lien is that it be fair." *Sutton*, 462 F.3d at 161 (internal
13   quotation marks and citation omitted).

## III.   DISCUSSION

Ford O'Brien argues that it is entitled to a charging lien in the full amount it is owed by Ozy Media[1]—although it is "willing to forego 24% of its total fees and expenses and seek recovery only from the undistributed balance of the [] D&O Policy"—as well as an award for the fees it has spent on its intervention efforts in this action. FOBL Mem. in Supp. of Charging Lien ("FOBL Mem.") 1, ECF No. 141; *see also* FOBL Suppl. Mem. 3. Ford O'Brien argues that the charging lien should include the value of its services in all four Underlying Proceedings because each of the Underlying Proceedings should be considered "as aspects of the same 'cause of action,'" and the New York Court of Appeals has recognized that a recovery on a cause of action may arise "in an action different from the one in which the services were rendered." FOBL Mem. 2 (quoting *Cohen v. Grainger, Tesoriero & Bell*, 622 N.E.2d 288, 289 (N.Y. 1993) (citations omitted)). Defendants counter that § 475 does not apply to the D&O Policy proceeds because the

---

[1] The Court previously found that Ford O'Brien has "appeared" for Mr. Watson for the purposes of the charging lien statute. *See* Intervention Order 15–17.

Case No.: 21-cv-08764-EJD
ORDER RE DISTRIBUTION OF INSURANCE PROCEEDS
4

preliminary injunction requiring Clear Blue to advance defense costs is not a final determination, so that Mr. Watson may eventually have to return the disbursements to Clear Blue; that the amounts invoiced to Clear Blue but not yet paid should not be considered available to Ford O'Brien; that Ford O'Brien is at most entitled to the *quantum meruit* value of its services in connection with its services in this action; and that the interests of equity require that the limited insurance funds be advanced towards Mr. Watson's criminal defense. *See* Defs.' Mem. 3–8.

### A. Applicability of § 475

Turning first to Defendants' threshold argument that § 475 does not apply to the D&O Policy proceeds paid pursuant to the Preliminary Injunction Order because the order was not sufficiently final, *see* Defs.' Mem. 3–4, the Court notes that this argument concerns the existence of the charging lien, rather than the subject of the Court's request for the briefing, which was the value of such a lien, *see* ECF No. 137. The Court has already found, following briefing—where the issue of finality was raised, *see* ECF No. 111, at 4—and oral argument, that Ford O'Brien has an enforceable charging lien on the advanced defense funds. *See* Intervention Order. The Court thus finds that Defendants' finality argument is in essence a motion for the Court to reconsider its order finding the existence of a charging lien. A motion for reconsideration may not be filed without leave, and requires a showing of "reasonable diligence in bringing the motion" and one of three grounds for reconsideration. *See* Civ. L.R. 7-9(a)–(b). Defendants have not requested leave to file this argument for reconsideration, and—given that they previously requested leave to file a motion for reconsideration that did not raise the present finality argument, *see* ECF No. 127-1—have not shown reasonable diligence in bringing the motion; nor have they shown that any of the three grounds for reconsideration apply here. The Court accordingly denies Defendants' implicit motion for reconsideration and does not consider the finality argument to be properly raised.

### B. Relevant Work Performed by Ford O'Brien

The Court next considers the scope of work performed by Ford O'Brien that should inform the value of the charging lien. Ford O'Brien argues that the Underlying Proceedings constitute a single cause of action, so that its charging lien on the D&O Policy proceeds in this action should

be valued by considering all of the work Ford O'Brien has performed throughout the Underlying Proceedings. *See* FOBL Mem. 2. Defendants counter that Ford O'Brien cannot recover "the full face amount of its bills to Ozy Media" because the relevant *quantum meruit* value of Ford O'Brien's services is limited to the work leading to the recovery to which the lien attaches, *i.e.*, the advance payment of the insurance proceeds. *See* Defs.' Mem. 4–5.

A charging lien is intended to ensure attorneys are paid for their services in obtaining a recovery for a client based on a client's "cause of action, claim or counterclaim." N.Y. Jud. § 475; *see LMWT Realty Corp.*, 649 N.E.2d at 1187 (The "charging lien was created . . . to protect an attorney by 'disabling clients from receiving the fruits of recoveries without paying for the valuable services by which the recoveries were obtained.'") (citation omitted). As the Court has previously noted, the recovery at issue here is Clear Blue's advancement of defense costs to Mr. Watson pursuant to the D&O Policy. *See* Intervention Order 17. Accordingly, the charging lien here is intended to ensure Ford O'Brien is paid for its services related to Mr. Watson's receipt of the advanced funds for defense costs, rather than all of Ford O'Brien's outstanding bills. *See First Nat. Bank & Tr. Co. of Ellenville v. Hyman Novick Realty Corp.*, 72 A.D.2d 858, 859 (3d Dep't 1979) ("[T]he statutory lien does not cover all the services rendered by respondent . . ., but only those services which produced the [recovered] funds."). The Court will therefore consider only Ford O'Brien's work in this action in furtherance of obtaining the Preliminary Injunction Order requiring Clear Blue's advancement of defense costs to Mr. Watson.

Pursuant to the invoice records provided by Ford O'Brien, its "billings specific to the work completed to acquire the benefit in this matter, that is, the advancement of defense costs from Clear Blue Specialty Insurance Company to [Mr.] Watson" have a time value of $233,945. *See* FOBL Letter Brief 1. The Court need not and does not consider Defendants' argument that their submitted but unpaid invoices should be excluded from the potential funds available for Ford O'Brien's recovery, as Defendants' proposal would leave $398,446.42 in insurance proceeds, which is greater than the time value of Ford O'Brien's work spent on obtaining the recovery.

The Court has reviewed Ford O'Brien's billing statements, which Ford O'Brien has

submitted as invoices with highlighted entries relevant to the work performed to acquire the recovery for Mr. Watson. *See* ECF No. 153-2. In considering the importance of the funds obtained for Mr. Watson's defense, the complexity and urgency of the preliminary injunction at issue, the quality of performance by counsel in obtaining the results, and the $2,000,000 recovery, the Court finds the requested $233,945 to be a reasonable value for the services at issue.

### C. Remaining Equities

Defendants argue that the entirety of the remaining insurance proceeds should be paid to Defendants' counsel for their work defending Mr. Watson in the E.D.N.Y. Criminal Action. *See* Defs.' Mem. 6–8. The Court acknowledges the importance of the work performed in advance of trial, but finds that the equities demand that Ford O'Brien receive the benefit of its work performed in obtaining these funds for Mr. Watson.

The Court will additionally award Ford O'Brien the value of its work performed in response to the unrequested and inappropriately submitted email argument following the Court's request for billing statements from Ford O'Brien. *See* ECF No. 151. Ford O'Brien spent 29.8 hours crafting its response to the email, with a time value of $26,550. *See* FOBL Suppl. Mem. 1 n.1. The Court accordingly finds that the total value of Ford O'Brien's charging lien is the sum of $233,945 and $26,550, which equals $260,495.

## IV. ORDER

For the foregoing reasons, the Court hereby ORDERS as follows:

1. The value of Ford O'Brien's charging lien on the insurance proceeds paid by Clear Blue for Mr. Watson's defense is $260,495.
2. Clear Blue shall distribute to $260,495 of the proceeds from the D&O Policy to Ford O'Brien.

**IT IS SO ORDERED.**

Dated: February 16, 2024

EDWARD J. DAVILA
United States District Judge

Case No.: 21-cv-08764-EJD
ORDER RE DISTRIBUTION OF INSURANCE PROCEEDS
7